**EXHIBIT B**

CAUSE NO. 18,218

| | | |
|---|---|---|
| **PALEO OIL COMPANY LLC** | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | LEE COUNTY, TEXAS |
| | § | |
| **HB2 ORIGINATION, LLC and** | § | Lee County - 21st District Court |
| **IRONROC ENERGY PARTNERS, LLC** | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Paleo Oil Company LLC ("Plaintiff" or "Paleo") files this Original Petition complaining of Defendants HB2 Origination, LLC and Ironroc Energy Partners, LLC. For good cause of action against Defendants, Plaintiff would respectfully show the Court as follows:

### INTRODUCTION AND NATURE OF THE CAUSE OF ACTION

1. This lawsuit is an action to remove Defendants as operator of valuable oil and gas properties after they failed to pay vendors, allowed liens to be filed against the properties, failed to comply with contractual obligations, and generally mismanaged the properties. Defendants owe millions of dollars to vendors across the State and on these properties. Numerous mechanics and materialman's liens have been filed against the leases and wells. Defendants and their affiliates are reportedly on the verge of filing for bankruptcy. The parties' agreements contain specific requirements for Defendants to comply with as operator, but Defendants have shown utter disregard to the applicable agreements. Plaintiff worked hard to generate a very valuable oil and gas prospect and turned it over to be operated by Defendants. Through their misconduct, Defendants have endangered the fruits of Plaintiff's labor. Unwilling to allow Defendants' malfeasance to continue, Plaintiff seeks this Court's assistance in exercising Plaintiff's contractual right to remove Defendants as operator of the properties.

Filed 6/2/2023 1:43 PM
Lisa Teinert
District Clerk
Lee County, Texas
By Lisa Exner

**DISCOVERY CONTROL PLAN AND AMOUNT OF RELIEF SOUGHT**

2. Plaintiff intends for discovery to be conducted under Level 3 of Texas Rule of Civil Procedure 190. Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiff states that it seeks monetary relief in excess of $1,000,000 and non-monetary relief. This lawsuit is not governed by the expedited actions process in Tex. R. Civ. P. 169.

**PARTIES**

3. Plaintiff Paleo is a Texas limited liability company owning real property leasehold interests in Lee County and Fayette County.

4. Defendant HB2 Origination, LLC ("HB2") is a Delaware limited liability company and may be served through its registered agent Michael W. McCoy, 2445 Technology Forest Blvd., Suite 1010, The Woodlands, Texas 77381, or wherever else he may be found.

5. Defendant Ironroc Energy Partners, LLC ("Ironroc") is a Texas limited liability company and may be served through its registered agent Michael W. McCoy, 2445 Technology Forest Blvd., Suite 1010, The Woodlands, Texas 77381, or wherever else he may be found.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this action, because the amount in controversy exceeds the minimum jurisdictional limits of this Court and the real property involved is in the State of Texas. The Court has personal jurisdiction over the Defendants because they do business in Texas and/or they are formed under the laws of the State of Texas. Venue is proper in Lee County under Tex. Civ. Prac. & Rem. Code § 15.002 and/or § 15.011, because all or a substantial part of the events or omissions giving rise to the claim occurred in Lee County and/or part of the real property involved is located in Lee County.

FACTS

**The Contracts Between Paleo and Defendant HB2**

7. Paleo entered into a Participation Agreement (the "PA") and an Operating Agreement (the "JOA" or the "Operating Agreement"), both dated March 15, 2019, with Defendant HB2. There have been three amendments to the PA and the JOA. The PA, as amended, and the JOA, as amended, govern oil and gas leases (the "Leases") and wells (the "Wells") that are jointly owned by Paleo and HB2 in Lee and Fayette Counties in an area defined as the "Contract Area" in the JOA. The PA, JOA, and amendments are attached hereto as Exhibit B. The Leases and the Contract Area are described in Exhibit A attached to the JOA. Paleo, through extensive geologic, engineering, and land work, generated a very valuable oil and gas prospect and obtained leases in that prospect area. Those Leases now make up the Contract Area. Pursuant to the PA and the JOA, HB2 was designated as the initial Operator of the Contract Area and allowed it to contract out operations to its affiliate, Defendant Ironroc. The JOA gives Paleo the right to remove HB2, and its contract operator Ironroc, as Operator of the Contract Area, and Paleo elects to exercise that right to save the prospect it developed through much time, toil, effort, and money.

**The PA and the JOA Were Executed to Settle a Lawsuit Against Defendant HB2 and an Affiliate of Defendants that Arose from that Affiliate's Breach of Contract**

8. The PA and JOA arose from Defendant HB2's affiliate, HB2 Energy Inc. ("HB2EI"), failing to fulfill a $20 + million contract with Paleo. HB2EI agreed to pay Paleo for 75% of the working interests in the very same Leases that make up the Contract Area, enter into an operating agreement covering those Leases, and carry Paleo in the first two wells drilled on those Leases. These obligations were provided for in a Final Settlement Agreement (the "FSA"), to which Paleo, HB2EI, and Defendant Ironroc were parties. When HB2EI's final payment under the FSA was due in December 2018, it refused to pay what it owed to Paleo. HB2EI also refused

to execute an operating agreement and subsequently began lease exchange negotiations with a third-party. HB2EI excluded Paleo from those negotiations and told Paleo that the negotiations were none of its business. In an attempt to avoid its contractual obligations, HB2EI assigned interests in some of the Leases to Defendant HB2. These breaches of contract forced Paleo to file a lawsuit, Cause No. 2019V-037, *Paleo Oil Company LLC v. HB2 Energy Inc. and HB2 Origination LLC*, in the 155th Judicial District Court of Fayette County, Texas (the "2019 Lawsuit"). Paleo also recorded notices of lis pendens and applied for temporary injunctive relief in the 2019 Lawsuit. Only with the threat of potentially disastrous litigation hanging over them did HB2EI and Defendant HB2 agree, again, to honor the contract with Paleo. Paleo and Defendant HB2 executed the JOA and the PA to resolve the dispute.

**The PA and the JOA Are Amended After Defendants' Breach the Agreements Again and Paleo Has to Sue Defendants Again**

9. Having not learned their lesson, Defendants again breached the PA and JOA in 2020. They committed countless violations of the contracts. The breaches included committing multiple violations of Texas Railroad Commission ("RRC") regulations, falsely reducing Paleo's interests in certain wells, and failing to pay vendors (a common theme for Defendants). As a result, Paleo was again forced to sue Defendants.

10. Paleo filed Cause No. 2020-32607, *Paleo Oil Company LLC v. HB2 Origination LLC and Ironroc Energy Partners, LLC*, in the 295th Judicial District Court of Harris County, Texas (the "2020 Lawsuit"). Once again Paleo found itself needing to seek temporary injunctive relief against Defendants. In the 2020 Lawsuit, Defendant, knowing a temporary restraining order would be entered against them, agreed to a temporary restraining order. Before a temporary injunction hearing could occur, Defendants capitulated and settled the 2020 Lawsuit.

11. As part of the settlement of the 2020 Lawsuit, Paleo and Defendants entered into a Third Amendment to the PA and JOA. The Third Amendment dealt with many of the previous breaches committed by Defendants and was intended to prevent future violations. Disappointingly, and despite agreeing to not repeat their conduct, Defendants have again breached PA and JOA.

**Defendants, Their Corporate Parent, and Their Affiliates Do Not View Contracts as Binding**

12. Defendants and their affiliates consistently refuse to comply with contractual obligations. Defendant HB2, Defendant Ironroc, and HB2EI are financially and contractually affiliated and controlled, at least in part, by Alpine Summit Energy Partners, Inc. ("Alpine"). Alpine, Defendants, and HB2EI are under common management (including directly or indirectly being managed by CEO Craig Perry) and share offices in Tennessee. Breaching contracts is a frequent and common business practice for Alpine, Defendants, and their affiliates.

13. The 2019 and 2020 Lawsuits were not the only times Defendants or their affiliates were sued for breaching agreements. The FSA previously mentioned settled a dispute involving Paleo, Defendant Ironroc, HB2EI, and other parties. Paleo filed a lawsuit regarding that dispute, but the FSA was executed before Paleo served the defendants in that lawsuit with process. Two of Defendants' affiliates, Alpine Energy Capital LLC and Alpine Energy Acquisitions LLC, breached a contract to buy $192.5 million in oil and gas assets from a group of Chapter 11 bankruptcy debtors in 2020. And now Defendant Ironroc currently has eight lawsuits, seeking millions of dollars in damages, pending against it for failing to pay vendors.

14. As it appears they have done in the past, these Defendants have come up with excuses whenever they do not want to comply with a contract. This cavalier attitude toward agreements flows down from Alpine to its management and subsidiaries, including Defendants.

15. Paleo provides this backdrop to give context to the present lawsuit and emphasize Paleo's justifiable concerns that underly this action. Defendants' actions, which are part of a pattern of misconduct, threaten to irreparably damage, if not completely destroy, the prospect Paleo handed over to Defendants for operations.

**Defendants' Breaches of Contract, Mismanagement of the Contract Area, and Inability to Properly Operate Oil & Gas Properties**

16. Defendants' conduct, which violates the PA and/or the JOA, may not be limited to the following:

    i. HB2 and Ironroc have allowed multiple liens to be filed against the Contract Area.

    ii. HB2 and Ironroc allocate revenues to Paleo based on some unknown "internal allocation formula." There is no way to know whether Paleo is being paid the actual amount it is entitled to receive.

    iii. HB2 and Ironroc have not properly paid or accounted to Paleo its share of revenue from the Contract Area.

    iv. Instead of sending Paleo its share of the working interest revenue and a joint interest billing, HB2 and Ironroc simply net out expenses from the revenues they allocates to Paleo. Paleo should be paid its working interest revenues without deduction, with Paleo then sending payment for the undisputed portion of the month's joint interest billing.

    v. HB2 and Ironroc have conducted workover operations on multiple wells in the Contract Area without providing proposals, AFEs, or opportunities to elect to participate. HB2 and Ironroc simply come up with workover operations and then perform them without any notice to Paleo.

    vi. HB2 and Ironroc have conducted Reworking and/or Recompletion operations on wells that were then capable of producing in paying quantities without Paleo's consent.

    vii. HB2 and Ironroc have failed to pay vendors millions of dollars who provided goods and services in the Contract Area, which impairs Paleo's ability to finance its interest.

      viii.      HB2 and Ironroc are not financially capable of operating the Contract Area. They have millions of dollars in liens against their properties outside of the Contract Area and currently have eight lawsuits against them filed by unpaid vendors. HB2's parent company, Alpine Summit Energy Partners, Inc., admitted in its most recent SEC 10-Q report that it does not have sufficient funds to pay its present obligations.

Paleo gave Defendants notice of these violations in a letter (the "Notice Letter") dated June 1, 2023, a true and correct copy of which is attached hereto as Exhibit C.

17. The most immediate and disturbing breach of contract by Defendants is that they have allowed countless liens to be filed against the Contract Area. Just three examples of the numerous liens against wells in the Contract Area are attached hereto as Exhibit D.

18. Paleo's interests in real property, namely the Leases and wells drilled on those Leases, are threatened by Defendants' wrongful acts and omissions. Leases and wells are at risk as a result of being encumbered by liens, and Leases may be lost. As a result, Paleo is threatened with an irreparable injury for which it has no adequate remedy at law.

**Paleo Acts to Save the Prospect It Developed by Removing Defendants as Operator**

19. Paleo, facing the likely loss of most, if not all, of its investment of time and money in the Contract Area, elected to act rather than let Defendants continue with their pattern of neglect, mismanagement, incompetence, and disregard for legal obligations. The JOA does not leave a non-operating working interest owner, such as Paleo, without a remedy for the misconduct of an operator. Article V of the JOA contains a mechanism for removal of the Operator when good cause for removal. Specifically, Article V.B.1. of the JOA provides:

> Operator may be removed only for good cause by the affirmative vote of Non-Operators owning a majority interest based on ownership as shown on Exhibit "A" remaining after excluding the voting interest of Operator; such vote shall not be deemed effective until a written notice has been delivered to the Operator by a Non-Operator detailing the alleged default and Operator has failed to cure the default

> within thirty (30) days from its receipt of the notice or, if the default concerns an operation then being conducted, within forty-eight (48) hours of its receipt of the notice.  For purposes hereof, "good cause" shall mean not only gross negligence or willful misconduct but also the material breach of or inability to meet the standards of operation contained in Article V.A. or material failure or inability to perform its obligations under this agreement.

Pursuant to Article V.B.1., Paleo voted to remove Defendants as Operator.  As Paleo and HB2 are the only parties listed on Exhibit "A" to the JOA, Paleo was the only party entitled to vote on the question of removal.  Defendants' conduct constitutes good cause for removal.  Paleo sent the Notice Letter (Exhibit C attached hereto) required by Article V.B.1. on June 2, 2023, so the removal of Defendants will be effective on July 3, 2023, unless Defendants cure all the defaults listed in the notice letter.

20. When the Operator is removed under the JOA, a Successor Operator must be elected.  Article V.B.2. of the JOA provides the mechanism for electing a Successor Operator.  The parties listed on Exhibit "A" to the JOA, excluding an Operator that has been removed, elect a Successor Operator.  As Paleo and HB2 are the only parties listed on Exhibit "A" to the JOA, Paleo was the only party entitled to vote in the election of the Successor Operator.  Paleo voted to elect itself as Successor Operator, effective as of the effective date of the removal of Defendants as Operator.

21. In the interim between Paleo's notice to Defendants that they have been removed as Operator and the effective date of that removal, Defendants will continue to have the ability to do further damage to the Contract Area unless restrained from doing so.  They must be stopped from distributing revenue from the Contract Area, except to pay royalties, severance taxes, and vendors (excluding any of its affiliates).  It is reasonable to expect Defendants will refuse to handover operations to Paleo on the effective date of the removal and will interfere with Paleo's operations after the effective date of Defendants' removal unless they are enjoined from doing so.

Defendants must also account to Paleo for the monetary losses caused by Defendants' conduct. Paleo brings this suit to obtain temporary and permanent injunctive relief and judgment for the damages caused by Defendants' conduct.

## CAUSE OF ACTION:  BREACH OF CONTRACT

22. Plaintiff incorporates by reference and re-alleges each of the foregoing paragraphs as if the same had been set forth herein verbatim.

23. Paleo and Defendant HB2 entered into the PA and the JOA, which are valid and enforceable contracts.  Defendant Ironroc serves as Defendant HB2's contract operator, so Defendant Ironroc must comply with the PA and the JOA.  Paleo has performed its obligations under the PA and the JOA.  Defendants' conduct described above constitutes material breaches of the terms of the JOA, including but not limited to, the following provisions:

   V.A.
   V.D.2.
   V.D.3.
   V.D.4.
   VI.B.1.
   VI.B.8.
   VI.C.2.
   Exhibit C, I.2.

To the extent Defendants' conduct is subject to the exculpatory clause in Article V.A. of the JOA, Defendants are liable as a result of their gross negligence and/or willful misconduct.  Defendants' violations of the JOA also constitute material violations of the PA.  Defendants' material breaches of the PA and the JOA have caused Paleo to be damaged in an amount greatly exceeding the minimum jurisdictional limit of this Court.

24. Defendants' material breaches of the PA and the JOA have caused irreparable injury to Paleo's interests in the Contract Area, for which Paleo does not have an adequate remedy

at law.  Paleo is entitled to a temporary restraining order, a temporary injunction, and a permanent injunction to stop Defendants' wrongful conduct.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

25. Paleo incorporates by reference and re-alleges each of the foregoing paragraphs as if the same had been set forth herein verbatim and requests entry of a temporary restraining order against Defendants.

26. As alleged above, Paleo is entitled to a temporary restraining order. It is essential that the Court immediately and temporarily restrain the Defendants, their agents, members, managers, affiliates, owners, officers, directors, servants, employees, and attorneys, and those in active concert or participation with them who receive actual notice of the temporary restraining order from:

   a. Purporting to assign, attempting to assign, or assigning operation of the Contract Area to any person or entity other than Paleo;

   b. Purporting to assign, attempting to assign, or assigning any interest in the Leases or Contract Area to any other person or entity;

   c. Distributing, transferring, or paying any proceeds from the sale of production from any well located on the Leases or Contract Area, except to pay royalties (excluding overriding royalties payable to the persons and entities restrained by the temporary restraining order) owed on that production, severance taxes owed on that production, or vendors (excluding any affiliate of Defendants) who have provided goods or services in the Contract Area; and

  d. Destroying any documents (including but not limited to paper documents, electronic or magnetic data, or emails) relating to or regarding the Leases, the Contract Area, the wells in the Contract Area, and/or oil and gas operations in the Contract Area.

It is essential that Defendants be restrained from these acts in that:

  a. Plaintiff (i) has a probable right of recovery, (ii) will suffer imminent, irreparable harm in the interim if the temporary restraining order is denied, and (iii) has no adequate remedy at law;

  b. Plaintiff is entitled to the relief demanded, and all or part of the relief requires the restraint of an act prejudicial to Plaintiff, Tex. Civ. Prac. & Rem. Code § 65.011(1);

  c. Defendants have performed, are performing, and will continue to perform acts relating to the subject matter of this pending litigation, in violation of the rights of Plaintiff, and the acts will tend to render the judgment in this litigation ineffectual, Tex. Civ. Prac. & Rem. Code § 65.011(2);

  d. Plaintiff is entitled to a writ of injunction under the principles of equity and the statutes of this state relating to injunctions, Tex. Civ. Prac. & Rem. Code § 65.011(3); and/or

  e. Defendants breached the PA and the JOA, causing Paleo irreparable harm that can and should be remedied with injunctive relief.

27. Paleo would show that it has a probable right to recovery because Defendants have materially breached the PA and the JOA. Paleo has shown imminent irreparable harm in that the Defendants' conduct will injure Paleo's interests in real property. Paleo has shown that it has no adequate remedy at law in that the damages caused by the Defendants' actions are difficult to calculate and their conduct will injure Paleo's rights in real property. It is essential that the Court

act immediately, prior to notice to the Defendants and a hearing on this matter, because there is an imminent danger that the Defendants will further damage the Contract Area before Paleo can assume operations. Paleo is entitled to a temporary restraining order prohibiting the Defendants, their agents, members, managers, affiliates, owners, officers, directors, servants, employees, and attorneys, and those in active concert or participation with them from the acts listed above. The facts establishing Paleo's right to a temporary restraining order are proven by the Declaration of Roger S. Braugh, Jr. attached as Exhibit A this Petition and the Exhibits B-D attached to this Petition.

## APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

28. Paleo incorporates by reference and re-alleges each of the foregoing paragraphs as if the same had been set forth herein verbatim and requests entry of temporary and permanent injunctions against Defendants.

29. Paleo requests a temporary injunction against the Defendants, their agents, members, managers, affiliates, owners, officers, directors, servants, employees, and attorneys, and those in active concert or participation with them who receive actual notice of the temporary injunction from:

    a. Purporting to assign, attempting to assign, or assigning operation of the Contract Area to any person or entity other than Paleo;

    b. Purporting to assign, attempting to assign, or assigning any interest in the Leases or Contract Area to any other person or entity;

    c. Distributing, transferring, or paying any proceeds from the sale of production from any well located on the Leases or Contract Area, except to pay royalties (excluding overriding royalties payable to the persons and entities restrained by the temporary

restraining order) owed on that production, severance taxes owed on that production, or vendors (excluding any affiliate of Defendants) who have provided goods or services in the Contract Area; and

    d.    Destroying any documents (including but not limited to paper documents, electronic or magnetic data, or emails) relating to or regarding the Leases, the Contract Area, the wells in the Contract Area, and/or oil and gas operations in the Contract Area.

Paleo anticipates that an additional temporary injunction against Defendants will be necessary on or after July 3, 2023, if Defendants have not cured the defaults listed in Paleo's notice letter before that date. Paleo requests that, if Defendants have not cured all their defaults in the Contract Area prior to July 3, 2023, then Defendants, their agents, members, managers, affiliates, owners, officers, directors, servants, employees, and attorneys, and those in active concert or participation with them who receive actual notice of the temporary injunction from: a) the same acts or omissions listed in the requested temporary injunction; b) interfering with Paleo's operation of the Leases, the Contract Area, and the wells located in the Contract Area, c) refusing to execute RRC Form P-4s for the wells and associated RRC leases located in the Contract Area, and d) refusing to turn over the well, lease, land, and accounting files for the Leases, the Contract Area, and the wells located in the Contract Area.

    30.    Paleo requests a permanent injunction against the Defendants, their agents, members, managers, affiliates, owners, officers, directors, servants, employees, and attorneys, and those in active concert or participation with them enjoining the same conduct to be temporarily enjoined.

    31.    Paleo is entitled to the temporary and permanent injunctions because:

a. Plaintiff (i) has a probable right of recovery, (ii) will suffer imminent, irreparable harm in the interim if the injunction is denied, and (iii) has no adequate remedy at law;

b. Plaintiff is entitled to the relief demanded, and all or part of the relief requires the restraint of an act prejudicial to Plaintiff, Tex. Civ. Prac. & Rem. Code § 65.011(1);

c. Defendants have performed, are performing, and will continue to perform acts relating to the subject matter of this pending litigation, in violation of the rights of Plaintiff, and the acts will tend to render the judgment in this litigation ineffectual, Tex. Civ. Prac. & Rem. Code § 65.011(2);

d. Plaintiff is entitled to a writ of injunction under the principles of equity and the statutes of this state relating to injunctions, Tex. Civ. Prac. & Rem. Code § 65.011(3); and/or

e. Defendants breached the PA and the JOA, causing Paleo irreparable harm that can and should be remedied with injunctive relief.

## ATTORNEYS' FEES

32. Paleo is entitled to an award of its reasonable and necessary attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code, the PA, and the JOA.

## INTEREST

33. Paleo is entitled to pre-judgment and post-judgment at the maximum amount allowed by law or by contract.

## CONDITIONS PRECEDENT

34. All conditions precedent have been performed, fulfilled, or waived.

**RESERVATION OF RIGHT TO AMEND**

35. By filing this Petition, Paleo does not waive or release any rights, claims, or causes of action or make any election of remedies against Defendants, but expressly reserves such rights, claims, causes of action, and remedies.

**PRAYER**

WHEREFORE, Plaintiff requests that the Court enter a temporary restraining order as requested above, cite Defendants to appear and answer, upon notice and hearing to Defendants enter temporary injunctions as requested above, and upon final trial of this matter enter a final judgment awarding Plaintiff:

a) Actual damages;

b) A permanent injunction has requested above;

c) Attorneys' fees;

d) Pre-judgment and post-judgment interest;

e) Costs of court; and

f) Such other and further relief to which Plaintiff may be justly entitled to receive.

Respectfully Submitted,

SANDERS PLLC

By: /s/ Michael C. Sanders

Michael C. Sanders
Texas Bar No. 24007981
5850 San Felipe St. Suite 500
Houston, TX 77057
Telephone: 713-493-7547
Facsimile: 713-347-9569
mcs@sandersfirm.law
eservice@sandersfirm.law

ATTORNEY FOR PLAINTIFF,
PALEO OIL COMPANY LLC

BURNS & REYES-BURNS, PLLC

Jeffrey M. Burns
Texas Bar No. 24054615
PO Box 429
Somerville, Texas 77227
Telephone: 979-596-3424
Email:  jeff@brblawfirm.com

LOCAL COUNSEL FOR PLAINTIFF