# EXHIBIT 23

REAL PROPERTY RECORDS
LEE COUNTY, TX
# 2022-03954 09/20/2022 at 12:14:00 PM

_Space above for County Recorder's Use_

**FIRST AMENDED AND RESTATED
WELLBORE INTEREST DEED OF TRUST, MORTGAGE, ASSIGNMENT OF AS-
EXTRACTED COLLATERAL, SECURITY AGREEMENT, FIXTURE FILING AND
FINANCING STATEMENT**

**FROM**

**ALPINE SUMMIT FUNDING LLC,
as Mortgagor**

**TO**

**MARCUS SIMPSON,
as Trustee**

**FOR THE BENEFIT OF**

**UMB BANK, N.A.,
as Indenture Trustee and Mortgagee
for the benefit of itself and the Secured Parties**

**Dated as of September 12, 2022**

13581964v1

**TO THE EXTENT PERMITTED BY LAW, A POWER OF SALE HAS BEEN GRANTED IN THIS INSTRUMENT. IN CERTAIN STATES, A POWER OF SALE MAY ALLOW THE TRUSTEE OR MORTGAGEE TO TAKE SOME OR ALL OF THE MORTGAGED PROPERTY AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY THE MORTGAGOR UNDER THIS INSTRUMENT.**

NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

THIS INSTRUMENT IS TO BE RECORDED IN THE REAL ESTATE RECORDS AND FILED AS A UCC FINANCING STATEMENT AND FIXTURE FILING. A CARBON, PHOTOGRAPHIC, OR OTHER REPRODUCTION OF THIS INSTRUMENT IS SUFFICIENT AS A FINANCING STATEMENT AND FIXTURE FILING.

THIS INSTRUMENT CONTAINS AFTER-ACQUIRED PROPERTY PROVISIONS.

THIS INSTRUMENT SECURES PAYMENT OF FUTURE ADVANCES.

THIS INSTRUMENT COVERS PROCEEDS OF MORTGAGED PROPERTY.

THIS INSTRUMENT COVERS, AMONG OTHER THINGS, (A) GOODS WHICH ARE OR ARE TO BECOME AFFIXED TO OR FIXTURES ON THE LAND DESCRIBED IN OR REFERRED TO IN THE EXHIBIT HERETO AND (B) MINERALS, AS-EXTRACTED COLLATERAL AND OTHER SUBSTANCES OF VALUE WHICH MAY BE EXTRACTED FROM THE EARTH (INCLUDING WITHOUT LIMITATION OIL AND GAS) AND THE ACCOUNTS RELATED THERETO WHICH WILL BE FINANCED AT THE WELLHEADS OF THE WELL OR WELLS LOCATED ON THE PROPERTIES DESCRIBED IN THE EXHIBIT HERETO. THIS INSTRUMENT IS TO BE FILED OR FILED FOR RECORD OR CROSS-INDEXED, AMONG OTHER PLACES, IN THE REAL ESTATE RECORDS OR SIMILAR RECORDS OF THE RECORDERS OF THE COUNTIES LISTED ON THE EXHIBIT HERETO, AND SUCH FILING SHALL SERVE, AMONG OTHER PURPOSES, AS A FIXTURE FILING AND AS A FINANCING STATEMENT COVERING AS-EXTRACTED COLLATERAL. THE MORTGAGOR HAS AN INTEREST OF RECORD IN THE REAL ESTATE CONCERNED, WHICH INTEREST IS DESCRIBED IN THE EXHIBIT A ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE.

TABLE OF CONTENTS

<u>Page</u>

ARTICLE I. DEFINITIONS ..........................................................................................3

    Section 1.01.  Terms Defined Above.............................................................3
    Section 1.02.  UCC and Other Defined Terms .............................................3
    Section 1.03.  Definitions.............................................................................4

ARTICLE II. GRANT OF LIEN AND SECURED OBLIGATIONS ...........................7

    Section 2.01.  Grant of Liens .......................................................................7
    Section 2.02.  Grant of Security Interest.....................................................8
    Section 2.03.  Secured Obligations .............................................................9
    Section 2.04.  Fixture Filing, As-Extracted Collateral, Etc. ......................9
    Section 2.05.  Pro Rata Benefit....................................................................9
    Section 2.06.  Excluded Properties ..............................................................9

ARTICLE III. ASSIGNMENT OF AS-EXTRACTED COLLATERAL .......................9

    Section 3.01.  Assignment ...........................................................................9
    Section 3.02.  No Modification of Payment Obligations.............................11
    Section 3.03.  Lien Rights...........................................................................11

ARTICLE IV. REPRESENTATIONS, WARRANTIES AND COVENANTS ...........11

    Section 4.01.  Title.....................................................................................11
    Section 4.02.  Defend Title .........................................................................11
    Section 4.03.  Not a Foreign Person ...........................................................12
    Section 4.04.  Power to Create Lien and Security .......................................12
    Section 4.05.  Rentals Paid; Leases in Effect.............................................12
    Section 4.06.  Abandonment, Sales ............................................................12
    Section 4.07.  Failure to Perform ...............................................................13
    Section 4.08.  Certain Limitations ..............................................................13

ARTICLE V. RIGHTS AND REMEDIES....................................................................13

    Section 5.01.  Event of Default...................................................................13
    Section 5.02.  Foreclosure and Sale ...........................................................13
    Section 5.03.  Substitute Trustees and Agents............................................15
    Section 5.04.  Judicial Foreclosure; Receivership ......................................15
    Section 5.05.  Foreclosure for Installments ................................................15
    Section 5.06.  Separate Sales ......................................................................16
    Section 5.07.  Possession of Collateral ......................................................16
    Section 5.08.  Occupancy After Foreclosure ..............................................16
    Section 5.09.  Remedies Cumulative, Concurrent and Nonexclusive .........17
    Section 5.10.  Discontinuance of Proceedings............................................17
    Section 5.11.  No Release of Obligations ...................................................17

i

Section 5.12.   Release of and Resort to Collateral.................................................17
Section 5.13.   Waiver of Redemption, Notice and Marshalling of Assets, Etc. ............18
Section 5.14.   Application of Proceeds.............................................................18
Section 5.15.   Exculpation............................................................................18
Section 5.16.   Payment of Expenses; Indemnity.................................................19

ARTICLE VI. THE TRUSTEE ...................................................................................19

Section 6.01.   Duties, Rights, and Powers of Trustee.........................................19
Section 6.02.   Successor Trustee....................................................................20
Section 6.03.   Retention of Moneys.................................................................20

ARTICLE VII. MISCELLANEOUS ............................................................................20

Section 7.01.   Instrument Construction; Recording.............................................20
Section 7.02.   Releases................................................................................20
Section 7.03.   Invalidity...............................................................................21
Section 7.04.   Successors and Assigns.............................................................21
Section 7.05.   Satisfaction of Prior Encumbrance ..............................................21
Section 7.06.   Application of Payments to Certain Obligations ..............................22
Section 7.07.   Nature of Covenants .................................................................22
Section 7.08.   Notices..................................................................................22
Section 7.09.   Counterparts...........................................................................22
Section 7.10.   GOVERNING LAW; JURISDICTION; CONSENT TO SERVICE
                OF PROCESS; WAIVER OF JURY TRIAL ...............................23
Section 7.11.   Financing Statement; Fixture Filing ............................................24
Section 7.12.   Financing Statements ...............................................................25
Section 7.13.   Debtor's Interests ....................................................................25
Section 7.14.   Exculpation Provisions .............................................................25
Section 7.15.   Hedge Counterparties...............................................................26
Section 7.16.   Headings ...............................................................................26
Section 7.17.   Survival.................................................................................26
Section 7.18.   Compliance with Usury Laws......................................................26
Section 7.19.   Amendment and Restatement .....................................................27

## EXHIBITS

EXHIBIT A    Schedule of Wells

VOL 1330 PG 0496

### FIRST AMENDED AND RESTATED
### WELLBORE INTEREST DEED OF TRUST, MORTGAGE, ASSIGNMENT OF AS-EXTRACTED COLLATERAL, SECURITY AGREEMENT, FIXTURE FILING AND FINANCING STATEMENT

THIS FIRST AMENDED AND RESTATED WELLBORE INTEREST DEED OF TRUST, MORTGAGE, ASSIGNMENT OF AS-EXTRACTED COLLATERAL, SECURITY AGREEMENT, FIXTURE FILING AND FINANCING STATEMENT (this "Mortgage") is entered into as of September 12, 2022 (the "Execution Date"), to be effective as of 12:02 a.m. Central Prevailing Time on September 1, 2022, by **ALPINE SUMMIT FUNDING LLC**, a Delaware limited liability company (in such capacity and together with any successors in such capacity, the 'Mortgagor'), having an address at 3322 West End Avenue, Suite 450, Nashville, TN 37203, in favor of **MARCUS SIMPSON**, an individual residing in the State of Texas, as trustee (the "Trustee"), for the benefit of **UMB BANK, N.A.**, having an address at 100 William Street, Suite 1850, New York, New York 10038, as indenture trustee for the Noteholders under the Indenture referred to below (in such capacity and together with its successors and assigns, the "Mortgagee" and "Indenture Trustee").

### R E C I T A L S

A.    On April 29, 2022, Mortgagor and the Indenture Trustee executed an Indenture (the 'Original Indenture'), pursuant to which, upon the terms and conditions stated therein, the Mortgagor issued certain Floating Rate Notes in an aggregate principal amount of $80,000,000.00 (the "Tranche I Notes"), dated as of April 29, 2022 and due April 2023.

B.    On April 29, 2022, Mortgagor entered into a Note Purchase Agreement (the "Tranche I Note Purchase Agreement"), with each of the institutional investors named therein (the 'Tranche I Purchasers'), pursuant to which the Tranche I Purchasers agreed to purchase the Tranche I Notes from the Mortgagor.

C.    Pursuant to an Asset Purchase Agreement dated as of April 29, 2022 (the "Initial Asset Purchase Agreement") by and between Mortgagor and HB2 Origination, LLC (the "Seller"), and an Assignment and Bill of Sale delivered pursuant thereto and made effective as of 12:01 a.m., Central Prevailing Time on April 1, 2022 (the "Initial Assignment") by and between Mortgagor and Seller, Mortgagor purchased from Seller, and Seller has conveyed to Mortgagor, the "Wellbore Interests" (as defined in the Initial Assignment).

D.    As a condition precedent to the purchase of the Tranche I Notes by the Tranche I Purchasers, to secure the Mortgagor's obligations under the Tranche I Notes, the Original Indenture, and the other Basic Documents (as defined in the Original Indenture), Mortgagor was required, among other things, to execute and deliver that certain Wellbore Interest Deed of Trust, Mortgage, Assignment of As-Extracted Collateral, Security Agreement, Fixture Filing and Financing Statement entered into as of April 29, 2022 and effective as of 12:02 a.m. Central Prevailing Time on April 1, 2022 (the 'Original Mortgage'), recorded as: (i) Instrument No. 222823 in the Official Public Records of Austin County, Texas; (ii) Instrument No. 22-03336, Volume 2046, Page 685 in the Official Public Records of Fayette County, Texas; (iii) Instrument No. 2022-02016, Volume 1322, Page 0032 in the Official Public Records of Lee County, Texas,

VOL 1 3 3 0 PG 0 4 9 7

and (iv) Volume 1839, Page 520, in the Official Public Records of Washington County, Texas, pursuant to which the Mortgagor granted a Lien over its right, title and interest in and to the Mortgaged Property (as defined in the Original Mortgage).

E.      On the Execution Date, Mortgagor and the Indenture Trustee entered into that certain Amended and Restated Indenture (as the same may be further amended, supplemented, restated or otherwise modified from time to time, the "Indenture"), pursuant to which the Mortgagor and the Indenture Trustee amended and restated the Original Indenture and, upon the terms and conditions stated therein, the Mortgagor issued certain additional Floating Rate Notes in an aggregate principal amount of \$55,000,000.00 (the "Tranche II Notes" and, together with the Tranche I Notes and any other Notes (as defined in the Indenture) that may hereafter be issued under the Indenture, collectively, the "Notes"), dated as of the Execution Date and initially due September 2023.

F.      On the Execution Date, Mortgagor entered into a Note Purchase Agreement (the "Tranche II Note Purchase Agreement" and, together with the Tranche I Note Purchase Agreement, collectively, the "Note Purchase Agreements"), with each of the institutional investors named therein (the "Tranche II Purchasers" and, together with the Tranche I Purchasers, collectively, the "Purchasers"), pursuant to which the Tranche II Purchasers agreed to purchase the Tranche II Notes from the Mortgagor.

G.      Pursuant to an Asset Purchase Agreement dated as of the Execution Date (the "Second Asset Purchase Agreement" and, together with the Initial Asset Purchase Agreement, collectively, the "Asset Purchase Agreements") by and between Mortgagor and Seller, and an Assignment and Bill of Sale delivered pursuant thereto and made effective as of 12:01 a.m., Central Prevailing Time on September 1, 2022 (the "Second Assignment" and, together with the Initial Assignment, collectively, the "Assignments"), by and between Mortgagor and Seller, Mortgagor purchased from Seller, and Seller conveyed to Mortgagor, the "Wellbore Interests" (as defined in the Second Assignment).

H.      Mortgagor and certain Hedge Counterparties have entered into or may hereafter enter into certain Hedge Agreements (the "Secured Hedge Agreements").

I.      As a condition precedent to the purchase of the Tranche II Notes by the Tranche II Purchasers, to secure the Mortgagor's obligations under the Tranche I Notes, the Tranche II Notes, the Indenture, the Secured Hedge Agreements, and the other Basic Documents (as defined in the Indenture), Mortgagor must, among other things, execute and deliver this Mortgage, pursuant to which the Mortgagor will amend and restate the Original Mortgage in its entirety and grant a Lien over its right, title and interest in and to the Mortgaged Property (as defined below).

J.      Therefore, in order to comply with the terms and conditions of the Secured Transaction Documents and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Mortgagor hereby agrees as follows:

VOL1330PG0498

# ARTICLE I.
## DEFINITIONS

Section 1.01.   <u>Terms Defined Above</u>. As used in this Mortgage, each term defined above has the meaning indicated above.

Section 1.02.   <u>UCC and Other Defined Terms</u>.

(a)      <u>Indenture; Applicable UCC</u>. Unless otherwise defined herein, terms defined in the Indenture and used herein shall have the meanings given to them in the Indenture, and the following terms as well as all uncapitalized terms which are defined in the Applicable UCC (whether or not capitalized or uncapitalized in the same manner therein) on the date hereof are used herein as so defined in the Applicable UCC: Accounts, As-Extracted Collateral, Fixtures, General Intangibles, Goods, Instruments, Inventory, Chattel Paper, Documents, Equipment, Money, Proceeds and Supporting Obligations. Notwithstanding the foregoing, the parties intend that the terms used herein which are defined in the Applicable UCC have, at all times, the broadest and most inclusive meanings possible.

(b)      <u>Terms Generally; Rules of Construction</u>. The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. The words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation". The word "will" shall be construed to have the same meaning and effect as the word "shall". Unless the context requires otherwise (a) any definition of or reference to any agreement, instrument or other document herein shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented, restated or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth in the Basic Documents), (b) any reference herein to any law shall be construed as referring to such law as amended, modified, codified or reenacted, in whole or in part, and in effect from time to time, (c) any reference herein to any Person shall be construed to include such Person's successors and assigns (subject to the restrictions contained in the Basic Documents), (d) the words "herein", "hereof" and "hereunder", and words of similar import, shall be construed to refer to this Mortgage in its entirety and not to any particular provision hereof, (e) with respect to the determination of any time period, the word "from" means "from and including" and the word "to" and the word "through" means "to and including" and (f) any reference herein to Articles, Sections, Annexes, Exhibits and Schedules shall be construed to refer to Articles and Sections of, and Annexes, Exhibits and Schedules to, this Mortgage, as the case may be. The use of the phrase "subject to" as used in connection with Permitted Liens or otherwise and the permitted existence of any Permitted Liens or any other Liens shall not be interpreted to expressly or impliedly subordinate any Liens granted in favor of the Mortgagee or any other Secured Party as there is no intention to subordinate the Liens granted in favor of the Trustee, the Mortgagee and the other Secured Parties. No provision of this Mortgage or any other Basic Document shall be interpreted or construed against any Person solely because such Person or its legal representative drafted such provision.

VOL 1330 PG 0499

Section 1.03.  <u>Definitions</u>.

"<u>Accounts and Contract Rights</u>" means all Accounts (including accounts in the form of joint interest billings under applicable operating agreements), contract rights and general intangibles, including all rights, claims and causes of actions (including all rights of indemnity, recovery, set off or refunds), derived from or pertaining to (a) the ownership, operation, maintenance and development of the Collateral or (b) the production, processing, treating, storage, marketing, sale, purchase, exchange or transportation of Hydrocarbons, including all accounts and proceeds accruing to Mortgagor attributable to the sale of Hydrocarbons or produced from the Collateral or any units or pooled interest units in which all or a portion of the Collateral forms a part.

"<u>Applicable UCC</u>" means the provisions of the Uniform Commercial Code presently in effect in the jurisdiction in which the relevant UCC Collateral is situated or which otherwise is applicable to the creation or perfection of the Liens described herein or the rights and remedies of Mortgagee under this Mortgage.

"<u>Asset Purchase Agreements</u>" has the meaning given in the recitals hereto.

"<u>Assigned Hydrocarbons</u>" has the meaning assigned to such term in <u>Section 3.01(a)</u>.

"<u>Assignments</u>" has the meaning given in the recitals hereto.

"<u>Central Prevailing Time</u>" means, with respect to any particular time in question, Central Standard Time or Central Daylight Time in effect at such time.

"<u>Collateral</u>" means, collectively, all the Mortgaged Property and all the UCC Collateral.

"<u>Default Rate</u>" means the rate of interest then applicable pursuant to Section 2.09 of the Indenture.

"<u>Event of Default</u>" has the meaning assigned to such term in <u>Section 5.01</u>.

"<u>Execution Date</u>" has the meaning given in the preamble hereto.

"<u>Flood Insurance Regulations</u>" means (a) the National Flood Insurance Act of 1968 as now or hereafter in effect or any successor statute thereto, (b) the Flood Disaster Protection Act of 1973 as now or hereafter in effect or any successor statute thereto, (c) the National Flood Insurance Reform Act of 1994 (amending 42 USC 4001, et. seq.), as the same may be amended or recodified from time to time, (d) the Flood Insurance Reform Act of 2004 and (e) the Biggert Waters Flood Reform Act of 2012 and, in each case, any regulations promulgated thereunder.

"<u>Future Advances</u>" means future obligations and future advances that the Mortgagee or any other Secured Party may make pursuant to and in accordance with any Secured Transaction Document.

"<u>Hydrocarbon Interests</u>" means all rights, titles, interests and estates now or hereafter acquired in and to oil and gas leases, oil, gas and mineral leases, or other liquid or gaseous

hydrocarbon leases, mineral fee interests, overriding royalty and royalty interests, net profit interests and production payment interests, including any reserved or residual interests of whatever nature, including, without limitation, those oil and gas leases and mineral interests identified in Exhibit A hereto.

"Hydrocarbons" means all oil, gas, casinghead gas, drip gasoline, natural gasoline, condensate, distillate, liquid hydrocarbons, gaseous hydrocarbons and all constituents, elements or compounds thereof and all products refined or separated therefrom and all other minerals which may be produced and saved from or attributable to the Oil and Gas Properties of any Person, including all oil in pipelines and tanks, and all rents, issues, profits, proceeds, products, revenues and other incomes from or attributable to the Hydrocarbon Interests or other properties constituting Oil and Gas Properties.

"Indenture" has the meaning given in the recitals hereto.

"Indenture Trustee" has the meaning given in the preamble hereto.

"Initial Asset Purchase Agreement" has the meaning given in the recitals hereto.

"Initial Assignment" has the meaning given in the recitals hereto.

"Lien" means any interest in Property securing an obligation owed to, or a claim by, a Person other than the owner of the Property, whether such interest is based on the common law, statute or contract, and whether such obligation or claim is fixed or contingent, and including but not limited to (a) the lien or security interest arising from a mortgage, encumbrance, pledge, security agreement, conditional sale or trust receipt or a lease, consignment or bailment for security purposes or (b) production payments and the like payable out of Oil and Gas Properties.

"Mortgage" has the meaning given in the preamble hereto.

"Mortgaged Property" means the properties and assets described in Section 2.01.

"Mortgagee" has the meaning given in the preamble hereto.

"Mortgagor" has the meaning given in the preamble hereto.

"Net Revenue Interest" has the meaning given in the Asset Purchase Agreements.

"Note Purchase Agreements" has the meaning given in the recitals hereto.

"Notes" has the meaning given in the recitals hereto and includes, without limitation, all Notes (as defined in the Indenture) from time to time issued under the Indenture.

"Oil and Gas Properties" means (a) Wells; (b) Hydrocarbon Interests; (c) the Properties now or hereafter pooled or unitized with Hydrocarbon Interests; (d) all presently existing or future unitization, pooling agreements and declarations of pooled units and the units created thereby (including all units created under orders, regulations and rules of any Governmental Authority) which may affect all or any portion of the Hydrocarbon Interests; (e) all operating agreements,

VOL 1330 PG 0501

contracts and other agreements, including production sharing contracts and agreements, which relate to any of the Hydrocarbon Interests or the production, sale, purchase, exchange or processing of Hydrocarbons from or attributable to such Hydrocarbon Interests; (f) all Hydrocarbons in and under and which may be produced and saved or attributable to the Hydrocarbon Interests, including all oil in pipelines and tanks, and all rents, issues, profits, proceeds, products, revenues and other incomes from or attributable to the Hydrocarbon Interests; (g) all tenements, hereditaments, appurtenances and Properties in any manner appertaining, belonging, affixed or incidental to the Hydrocarbon Interests and (h) all Properties, rights, titles, interests and estates described or referred to above, including any and all Property, real or personal, now owned or hereinafter acquired and situated upon, used, held for use or useful in connection with the operating, working or development of any of such Hydrocarbon Interests or Property (excluding drilling rigs, automotive equipment, rental equipment or other personal Property which may be on such premises for the purpose of drilling a well or for other similar temporary uses) and including any and all oil wells, gas wells, injection wells or other wells, structures, separators, liquid extraction plants, plant compressors, pumps, pumping units, gathering systems, pipelines, tanks and tank batteries, fixtures, valves, fittings, machinery and parts, engines, boilers, meters, apparatus, equipment, appliances, tools, implements, cables, wires, towers, casing, tubing and rods, surface leases, rights-of-way, easements, servitudes, licenses and other surface or subsurface rights together with all additions, substitutions, replacements, accessions and attachments to any and all of the foregoing.

"Original Indenture" has the meaning given in the recitals hereto.

"Original Mortgage" has the meaning given in the recitals hereto.

"Permitted Liens" means and includes all "Permitted Encumbrances" under and as defined in the Asset Purchase Agreements.

"Property" means any interest in any kind of property or asset, whether real, personal or mixed, or tangible or intangible, including cash, securities, accounts and contract rights.

"Purchasers" has the meaning given in the recitals hereto.

"Second Asset Purchase Agreement" has the meaning given in the recitals hereto.

"Second Assignment" has the meaning given in the recitals hereto.

"Secured Hedge Agreements" has the meaning given in the recitals hereto.

"Secured Transaction Documents" means the Indenture, the Notes, the Note Purchase Agreements, the Secured Hedge Agreements, this Mortgage, the Precautionary Mortgages (as defined in the Indenture), and any other instrument or agreement executed by Mortgagor giving rise to Secured Obligations (as defined in the Indenture).

"Seller" has the meaning given in the recitals hereto.

"Specified Parties" means the Trustee, the Mortgagee and each other Indemnified Party.

6

"Tranche I Note Purchase Agreement" has the meaning given in the recitals hereto.

"Tranche I Notes" has the meaning given in the recitals hereto.

"Tranche I Purchasers" has the meaning given in the recitals hereto.

"Tranche II Note Purchase Agreement" has the meaning given in the recitals hereto.

"Tranche II Notes" has the meaning given in the recitals hereto.

"Tranche II Purchasers" has the meaning given in the recitals hereto.

"Trustee" has the meaning given in the preamble hereto.

"UCC Collateral" means the property and other assets described in Section 2.02.

"Wells" means the wells and associated wellbores described in Exhibit A.

"Working Interest" has the meaning given in the Asset Purchase Agreements.

## ARTICLE II.
## GRANT OF LIEN AND SECURED OBLIGATIONS

Section 2.01.  Grant of Liens. To secure payment of the Secured Obligations, the Mortgagor for, and in consideration of, the promises and debts and trusts hereinafter mentioned does by these presents hereby MORTGAGE, GRANT, COLLATERALLY ASSIGN, TRANSFER, CONVEY, BARGAIN, and WARRANT with POWER OF SALE unto the Trustee, for the use and benefit of the Mortgagee (for the benefit of the Secured Parties), all of the Mortgagor's rights, titles, interests and estates listed or described below in this Section 2.01, which are located in (or cover or relate to Properties located in) the State of Texas:

(a)    all rights, titles, interests and estates now owned or hereafter acquired by the Mortgagor in and to any Oil and Gas Properties located in any County listed on Exhibit A or in which this Mortgage is filed of record, including those described on Exhibit A;

(b)    all rights, titles, interests and estates now owned or hereafter acquired by the Mortgagor in and to all geological, geophysical, engineering, accounting, title, legal and other technical or business data concerning any Oil and Gas Properties or the Hydrocarbons, and all books, files, records, magnetic media, computer records and other forms of recording or obtaining access to such data;

(c)    all rights, titles, interests and estates now owned or hereafter acquired by the Mortgagor in and to all Hydrocarbons;

(d)    any Property that may from time to time hereafter, by delivery or by writing of any kind, be subjected to the Liens hereof by the Mortgagor or by anyone on the Mortgagor's behalf; and the Trustee and/or the Mortgagee is hereby authorized to receive the same at any time as additional security hereunder; and

7

(e)      all rights, titles, interests and estates of every nature whatsoever now owned or hereafter acquired by the Mortgagor in respect of any other Properties, including (i) any Oil and Gas Properties, rights, titles, interests and estates as the same may be enlarged by the discharge of any payments out of production or by the removal of any charges or Permitted Liens to which any Oil and Gas Properties are subject, (ii) all rights of the Mortgagor to Liens securing payment of proceeds from the sale of production from any Oil and Gas Properties, together with any and all renewals and extensions of any of such related Properties, rights, titles, interests or estates and (iii) all contracts and agreements supplemental to, amending or in substitution for the contracts and agreements described or mentioned above.

Notwithstanding any provision in this Mortgage to the contrary, in no event is any Building (as defined in the applicable Flood Insurance Regulation) or Manufactured (Mobile) Home (as defined in the applicable Flood Insurance Regulation) included in the definition of "Mortgaged Property".

Any fractions or percentages specified herein in referring to the Mortgagor's interests are solely for purposes of the warranties made by the Mortgagor pursuant to Section 4.01 and Section 4.05 and shall in no manner limit the quantum of interest affected by this Section 2.01 with respect to any Oil and Gas Property now owned or hereafter acquired by the Mortgagor. Notwithstanding that Mortgagor's interests therein be incorrectly described or a description of a part or all of such Mortgaged Property or Mortgagor's interests therein be omitted, it is intended by Mortgagor and Mortgagee herein to cover and affect hereby all interests which Mortgagor may now own or may hereafter acquire in and to the Mortgaged Property notwithstanding that the interests as specified herein may be limited to particular lands, specified depths or particular types of property interests.

Section 2.02.   Grant of Security Interest. To further secure the Secured Obligations, the Mortgagor hereby pledges and assigns and transfers to the Mortgagee and grants to the Mortgagee, for its benefit and the benefit of the Secured Parties, a security interest in and to all of the Mortgagor's rights, titles and interests in and to the following Property of the Mortgagor (whether now owned or hereafter acquired by operation of law or otherwise):

(a)      all Accounts and Contract Rights;

(b)      all As-Extracted Collateral, including from or attributable to the Mortgaged Property;

(c)      all books and records pertaining to the Oil and Gas Properties, including lease files, land files, well files, division order files, abstracts, title opinions, land surveys, logs, maps and other books, records, data, files and accounting records;

(d)      all Fixtures pertaining to the Oil and Gas Properties;

(e)      all Hydrocarbons; and

(f)      to the extent not otherwise included, all Proceeds and products of any and all of the foregoing and all collateral security, guarantees and other Supporting Obligations given with respect to any of the foregoing.

Section 2.03.  <u>Secured Obligations</u>. This Mortgage is executed and delivered by the Mortgagor to secure and enforce the Secured Obligations and shall also constitute a security agreement under the Uniform Commercial Code.

Section 2.04.  <u>Fixture Filing, As-Extracted Collateral, Etc.</u> This Mortgage shall also constitute a financing statement and a fixture filing under the Uniform Commercial Code, and without in any manner limiting the generality of any of the other provisions of this Mortgage: (a) some portions of the goods described or to which reference is made herein are or are to become Fixtures on the land described or to which reference is made herein or on <u>Exhibit A</u>; (b) the security interests created hereby under applicable provisions of the Applicable UCC will attach to all As-Extracted Collateral and all other Hydrocarbons from the Hydrocarbon Interests; (c) this Mortgage is to be filed of record in the real estate records or other appropriate records as a financing statement; and (d) the Mortgagor is the record owner of the real estate or interests in the real estate comprised of the Mortgaged Property.

Section 2.05.  <u>Pro Rata Benefit</u>. This Mortgage is executed and granted for the pro rata benefit of the Mortgagee and the Secured Parties, as set forth in <u>Section 5.14</u>, to secure the Secured Obligations until Security Termination has occurred.

Section 2.06.  <u>Excluded Properties</u>. Notwithstanding anything herein to the contrary, in no event shall the Collateral include, and the Mortgagor shall not be deemed to have granted a security interest in, any of the Mortgagor's Property to the extent that, and only for so long as, such grant of a security interest is (i) prohibited by any Governmental Rule of a Governmental Body with jurisdiction over such Property, (ii) requires a consent not obtained of a Governmental Body with jurisdiction over such Property that is required pursuant to any Governmental Rule or (iii) is prohibited by, or constitutes a breach or default under or results in the termination of or requires any consent not obtained under, any contract, license, agreement, instrument or other document, in each case, that directly evidences or gives rise to such Property; <u>provided</u> that any of the foregoing exclusions in this <u>Section 2.06</u> shall not apply if (A) such prohibition has been waived or such other party has otherwise consented to the creation hereunder of a security interest in such asset or (B) such prohibition, consent or the term in such contract, license, agreement, instrument or other document or providing for such prohibition breach, default or termination or requiring such consent is ineffective or would be rendered ineffective under any Governmental Rule, including pursuant to Section 9.406, 9.407 or 9.408 or Section 9-406, 9-407 or 9-408 of Article 9 of the Applicable UCC; provided further that it is understood for avoidance of doubt that immediately upon any of the foregoing becoming or being rendered ineffective or any such prohibition, requirement for consent or term lapsing or termination or such consent being obtained, the Mortgagor shall be deemed to have granted a Lien in all its rights, title and interests in and to such Property.

### ARTICLE III.
### ASSIGNMENT OF AS-EXTRACTED COLLATERAL

Section 3.01.  <u>Assignment of As-Extracted Collateral</u>.

(a)      In order to further secure the Secured Obligations, the Mortgagor has absolutely and unconditionally assigned, transferred, conveyed and granted a security interest, and does

9

hereby absolutely and unconditionally assign, transfer and convey and grant a security interest unto the Mortgagee in and to (collectively, the "Assigned Hydrocarbons"):

      (i)     all of its As-Extracted Collateral located in or relating to the Mortgaged Property located in the county where this Mortgage is filed, including without limitation, all As-Extracted Collateral relating to the Hydrocarbons and all products obtained or processed therefrom;

      (ii)    the revenues and proceeds now and hereafter attributable to such Mortgaged Property, including the Hydrocarbons, and said products and all payments in lieu thereof, such as "take or pay" payments or settlements; and

      (iii)   all amounts and proceeds hereafter payable to or to become payable to the Mortgagor or now or hereafter relating to any part of such Mortgaged Property and all amounts, sums, monies, revenues and income which become payable to the Mortgagor from, or with respect to, any of the Mortgaged Property, present or future.

    (b)    Subject to Section 3.01(f), (i) the Hydrocarbons and products are to be delivered into pipelines connected with the Mortgaged Property, or to the purchaser thereof, to the credit of the Mortgagee (instead of Mortgagor), for its benefit and the benefit of the Secured Parties, and (ii) all such revenues and proceeds shall be paid directly to the Mortgagee, with no duty or obligation of any party paying the same to inquire into the rights of the Mortgagee to receive the same, what application is made thereof, or as to any other matter.

    (c)    Subject to Section 3.01(f), the Mortgagor agrees to perform all such acts, and to execute all such further assignments, transfers and division orders and other instruments as may be required or desired by the Mortgagee or any party in order to have said proceeds and revenues so paid to the Mortgagee instead of Mortgagor. In addition to any and all rights of a secured party under Sections 9.607 and 9.609 or 9-607 and 9-609 of the Applicable UCC, and subject to Section 3.01(f): the Mortgagee is fully authorized to receive and receipt for said revenues and proceeds; to endorse and cash any and all checks and drafts payable to the order of the Mortgagor or the Mortgagee for the account of the Mortgagor received from or in connection with said revenues or proceeds and to hold the proceeds thereof in a Deposit Account with the Mortgagee or other acceptable commercial bank as additional collateral securing the Secured Obligations; and to execute transfer and division orders in the name of the Mortgagor, or otherwise, with warranties binding the Mortgagor. All proceeds received by the Trustee or the Mortgagee pursuant to this grant and assignment shall be applied as provided in Section 5.14.

    (d)    The Mortgagee shall not be liable for any delay, neglect or failure to effect collection of any proceeds or to take any other action in connection therewith or hereunder; but the Mortgagee shall, following the occurrence and during the continuance of an Event of Default, have the right, at its election, in the name of the Mortgagor or otherwise, to prosecute and defend any and all actions or legal proceedings deemed advisable by the Mortgagee in order to collect such funds, and to protect the interests of the Mortgagee and/or the Mortgagor, with all out-of-pocket costs, expenses and attorneys' fees incurred in connection therewith being paid by the Mortgagor.

(e)     The Mortgagor hereby appoints the Mortgagee as its attorney-in-fact to pursue any and all rights of the Mortgagor to Liens in the Hydrocarbons securing payment of proceeds of runs attributable to the Hydrocarbons, which appointment shall be irrevocable until Security Termination has occurred, provided that Mortgagee shall not have the right to exercise any rights pursuant to such appointment until after the occurrence, and then only during the continuance of, an Event of Default.  In addition to the Liens granted to the Trustee and/or the Mortgagee in <u>Section 2.01(e)</u>, the Mortgagor hereby further transfers and assigns to the Mortgagee as security for the Secured Obligations any and all such Liens, security interests, financing statements or similar interests of the Mortgagor attributable to its interest in the As-Extracted Collateral, any other Hydrocarbons and proceeds of runs therefrom arising under or created by said statutory provision, judicial decision or otherwise.

(f)     Until such time as an Event of Default has occurred and is continuing, Mortgagee hereby grants to Mortgagor a license to all rights and interests in and to the Assigned Hydrocarbons, including, without limitation, the right to sell, receive and receipt for proceeds from the sale of all Assigned Hydrocarbons, which license shall automatically terminate upon such Event of Default and for so long as the same continues; provided, however, that such license shall be automatically reinstated upon the cure or waiver of the Event of Default.

Section 3.02.   <u>No Modification of Payment Obligations</u>. Nothing herein contained shall modify or otherwise alter the obligation of the Mortgagor to make prompt payment of all amounts constituting Secured Obligations when and as the same become due regardless of whether the proceeds of the As-Extracted Collateral and Hydrocarbons are sufficient to pay the same and the rights provided in accordance with the foregoing assignment provision shall be cumulative of all other security of any and every character now or hereafter existing to secure payment of the Secured Obligations. Nothing in this <u>ARTICLE III</u> is intended to be an acceptance of collateral in satisfaction of the Secured Obligations.

Section 3.03.   <u>Lien Rights</u>. In addition to the mortgage hereby granted and rights, titles and interests hereby conveyed pursuant to <u>Section 2.01</u>, the Mortgagor hereby collaterally assigns to the Mortgagee the Mortgagor's Liens given to interest owners as secured parties to secure the obligations of the first purchasers of Hydrocarbons to pay the purchase price, including those rights provided in Sections 9-103 and 9-103(a) of the Applicable UCC.

## ARTICLE IV.
## REPRESENTATIONS, WARRANTIES AND COVENANTS

The Mortgagor hereby represents, warrants and covenants as follows:

Section 4.01.   <u>Title</u>. To the extent of the undivided decimal interests specified on <u>Exhibit A</u> "Schedule of Wells", the Mortgagor has Defensible Title (as defined in the Asset Purchase Agreement pursuant to which Issuer acquired the respective Wellbore Interests) to, and is possessed of, the Mortgaged Property and has good title to the UCC Collateral. The Collateral is free of all Liens except Permitted Liens.

Section 4.02.   <u>Defend Title</u>. This Mortgage is, and always will be kept, a direct first priority Lien upon the Collateral subject to any Permitted Liens with priority over such Lien. The

11

Mortgagor will not voluntarily create or permit to exist any Lien, security interest or charge upon the real and personal property constituting the Collateral, other than Permitted Liens. Except with respect to Permitted Liens, the Mortgagor will warrant and defend the title to the Collateral against the claims and demands of all other Persons whomsoever and will maintain and preserve the Lien created hereby (and its priority) until Security Termination.  If (a) an adverse claim be made against title to any part of the Collateral other than a Permitted Lien or (b) any Person, excluding the holder of a Permitted Lien in respect thereof with respect to priority and while remaining as a Permitted Lien, shall challenge the priority or validity of the Liens created by this Mortgage, then the Mortgagor agrees to defend against such adverse claim and take appropriate action to subordinate such Lien (except as provided in <u>Section 4.02(b)</u> above with respect to Permitted Liens), in each case, at the Mortgagor's sole cost and expense. The Mortgagor further agrees that, after written notice to the Mortgagor, the Mortgagee may take such other reasonable action as it deems necessary to protect and preserve its interests in the Collateral, and in such event all documented out-of-pocket costs and expenses paid by the Mortgagee in taking any such action shall be a demand obligation owing by the Mortgagor to the Mortgagee and the Mortgagor will indemnify the Mortgagee against any and all documented out-of-pocket costs, attorneys' fees and other expenses which it may incur in defending against any such adverse claim.

Section 4.03.   <u>Not a Foreign Person</u>. The Mortgagor is not a "foreign person" within the meaning of the Code, Sections 1445 and 7701 (i.e. the Mortgagor is not a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate as those terms are defined in the Code and any regulations promulgated thereunder).

Section 4.04.   <u>Power to Create Lien and Security</u>.  The Mortgagor has full power and lawful authority to grant, bargain, sell, assign, transfer, mortgage and convey a security interest in all of the Collateral in the manner and form herein provided. No authorization, approval, consent or waiver of any lessor, sublessor, Governmental Authority or other party or parties whomsoever is required in connection with the execution and delivery by the Mortgagor of this Mortgage, except for any such authorization, approval, consent or waiver as has already been obtained prior to the execution and delivery of this Mortgage.

Section 4.05.   <u>Rentals Paid; Leases in Effect</u>. All rentals and royalties due and payable by Mortgagor in accordance with the terms of any leases or subleases comprising a part of the Mortgaged Property have been duly paid or provided for in all material respects (except for those amounts being contested by the Mortgagor in good faith or held in suspense in accordance with customary practice for the oil and gas industry) in such manner as not to jeopardize the rights of the Trustee, the Mortgagee and the other Secured Parties in and to the Mortgaged Property, and all leases or subleases comprising a part of the Oil and Gas Property are in full force and effect in all material respects, except with respect to any such Mortgaged Property that, after the date hereof, (a) becomes no longer capable of producing Hydrocarbons in economically reasonable amounts, (b) has been sold, exchanged, or otherwise transferred in accordance with the terms of the Indenture, or (c) are leases comprising a part of the Mortgaged Property that have expired in accordance with their terms.

Section 4.06.   <u>Abandonment, Sales</u>. The Mortgagor will not sell, lease, assign, transfer or otherwise dispose of or abandon any of the Collateral except as permitted by Section 4.20 of the Indenture.

Section 4.07.  <u>Failure to Perform</u>. The Mortgagor agrees that if it fails to perform any act or to take any action which it is required to perform or take hereunder or pay any money which the Mortgagor is required to pay hereunder, the Mortgagee, in the Mortgagor's name or its own name, may, but shall not be obligated to, upon five (5) Business Days' prior notice to the Mortgagor, perform or cause to perform such act or take such action or pay such money, and any out-of-pocket expenses actually incurred by it and any money so paid by it shall be a demand obligation owing by the Mortgagor to the Mortgagee and the Mortgagee, upon making such payment, shall be subrogated to all of the rights of the Person receiving such payment. Each amount due and owing by the Mortgagor to the Mortgagee pursuant to this Mortgage shall bear interest from the date of such expenditure or payment to such Person until paid at the Default Rate.

Section 4.08.  <u>Certain Limitations</u>. Notwithstanding anything herein to the contrary, with respect to any Title Failure (as defined in the Asset Purchase Agreement pursuant to which Issuer acquired the respective Wellbore Interests), such Title Failure shall not (a) be deemed to constitute or have resulted in a breach of, or default in the observance or performance of, any representation, warranty, covenant, or agreement of Mortgagor contained in this <u>Article IV</u>, (b) trigger or constitute an Event of Default under this Mortgage, or (c) require Mortgagor, or authorize Mortgagee, to perform any act or take any action under this <u>Article IV</u>, in the case of each of the foregoing clauses (a), (b), and (c), unless and until such time as Mortgagor has, in respect of such Title Failure, defaulted in the observance or performance of any obligation of Mortgagor contained in Section 5.11 of such Asset Purchase Agreement.

## ARTICLE V.
## RIGHTS AND REMEDIES

Section 5.01.  <u>Event of Default</u>. An Event of Default beyond any applicable notice, grace and cure period under the Indenture shall be an "<u>Event of Default</u>" under this Mortgage.

Section 5.02.  <u>Foreclosure and Sale</u>.

(a)      If an Event of Default shall occur and be continuing, to the extent provided by applicable law, the Mortgagee shall have the right and option to proceed with foreclosure by directing the Trustee to sell all or any portion of such Mortgaged Property at one or more sales, as an entirety or in parcels, at such place or places in otherwise such manner and upon such notice as may be required by law, or, in the absence of any such requirement, as the Mortgagee may deem appropriate, and to make conveyance to the purchaser or purchasers. Where the Mortgaged Property is situated in more than one jurisdiction, notice as above provided shall be posted and filed in all such jurisdictions (if such notices are required by law), and all such Mortgaged Property may be sold in any such jurisdiction and any such notice shall designate the jurisdiction where such Mortgaged Property is to be sold. Nothing contained in this <u>Section 5.02</u> shall be construed so as to limit in any way any rights to sell the Mortgaged Property or any portion thereof (following the occurrence and during the continuance of an Event of Default) by private sale if and to the extent that such private sale is permitted under the laws of the applicable jurisdiction or by public or private sale after entry of a judgment by any court of competent jurisdiction so ordering and as permitted under the laws of the applicable jurisdiction. The Mortgagor hereby irrevocably appoints the Trustee, with full power of substitution, to be the attorney-in-fact of the Mortgagor and in the name and on behalf of the Mortgagor to execute and deliver any deeds, transfers, conveyances,

13

assignments, assurances and notices which the Mortgagor ought to execute and deliver and do and perform any and all such acts and things which the Mortgagor ought to do and perform under the covenants herein contained and generally, to use the name of the Mortgagor in the exercise of all or any of the powers hereby conferred on the Trustee or the Mortgagee. At any such sale of Collateral: (i) whether made under the power of sale herein contained or any other legal enactment, or by virtue of any judicial proceedings or any other legal right, remedy or recourse, it shall not be necessary for the Trustee or the Mortgagee, as appropriate, to have physically present, or to have constructive possession of, the Mortgaged Property (the Mortgagor hereby covenanting and agreeing to deliver any portion of the Mortgaged Property not actually or constructively possessed by the Trustee or the Mortgagee immediately upon his, her or its demand) and the title to and right of possession of any such property shall pass to the purchaser thereof as completely as if the same had been actually present and delivered to purchaser at such sale (if and solely to the extent the waiver herein is not enforceable, subject to all applicable redemption rights), (ii) to the extent permitted under applicable law, each instrument of conveyance delivered to a purchaser at any such sale shall contain a special or limited warranty of title, binding upon the Mortgagor and its successors and assigns, (iii) each and every recital contained in any instrument of conveyance or report made by the Trustee or the Mortgagee or any officer authorized under applicable law shall, to the extent not in conflict with the express terms of this Mortgage, conclusively establish (except as between the Mortgagor and the Mortgagee) the truth and accuracy of the matters recited therein, including, without limitation, nonpayment of the Secured Obligations, advertisement and conduct of such sale in the manner provided herein and otherwise by law and appointment of any successor trustee hereunder, (iv) any and all prerequisites to the validity thereof shall be conclusively presumed to have been performed, (v) the receipt of the Trustee, the Mortgagee or of such other party or officer authorized under applicable law making the sale shall be a sufficient discharge to the purchaser or purchasers for its purchase money and no such purchaser or purchasers, or its assigns or personal representatives, shall thereafter be obligated to see to the application of such purchase money, or be in any way answerable for any loss, misapplication or nonapplication thereof, (vi) to the fullest extent permitted by law, the Mortgagor shall be completely and irrevocably divested of all of its right, title, interest, claim and demand whatsoever, either at law or in equity, in and to the Collateral sold and such sale shall be a perpetual bar both at law and in equity against the Mortgagor, and against any and all other Persons claiming or to claim the Collateral sold or any part thereof, by, through or under the Mortgagor, and (vii) to the extent and under such circumstances as are permitted by law, the Mortgagee may be a purchaser at any such sale, and shall have the right, after paying or accounting for all costs of said sale or sales, to credit the amount of the bid upon the amount of the Secured Obligations (in the order of priority set forth in Section 5.14) in lieu of cash payment and without discharging or releasing any remaining amounts of the Secured Obligation. Anything in this Section 5.02(a) to the contrary notwithstanding, the Mortgagee agrees that it will not exercise any rights under the power of attorney provided for in this Section 5.02(a) unless an Event of Default has occurred and is continuing.

(b)    If an Event of Default shall occur and be continuing, then (i) the Mortgagee shall be entitled to all of the rights, powers and remedies afforded a secured party by the Applicable UCC with reference to the UCC Collateral or (ii) the Trustee or the Mortgagee may proceed as to any Collateral in accordance with the rights and remedies granted under this Mortgage or applicable law in respect of the Collateral. Such rights, powers and remedies shall be cumulative and in addition to those granted to the Trustee or the Mortgagee under any other provision of this

14

Mortgage or under any other Basic Document or any Secured Transaction Document. Written notice mailed to the Mortgagor as provided herein at least ten (10) Business Days prior to the date of public sale of any part of the Collateral which is personal property subject to the provisions of the Applicable UCC, or prior to the date after which private sale of any such part of the Collateral will be made, shall constitute reasonable notice.

Section 5.03.  <u>Substitute Trustees and Agents</u>. The Trustee or the Mortgagee may appoint or delegate any one or more Persons as agent to perform any act or acts necessary or incident to any sale, in accordance with this Mortgage and applicable law, held by the Trustee or the Mortgagee, including the posting of notices but in the name and on behalf of the Trustee or the Mortgagee or their successor or substitute, as applicable. If the Trustee or the Mortgagee or their successor or substitute shall have given notice of sale hereunder (or shall be named as the mortgagee in any notice of sale hereunder), any successor or substitute trustee or deed of trust/mortgagee agent thereafter appointed may complete the sale and the conveyance of the property pursuant thereto as if such notice had been given by the successor or substitute trustee or deed of trust/mortgagee agent conducting the sale (or as if such notice of sale had named such successor or substitute trustee or deed of trust/mortgagee agent therein).

Section 5.04.  <u>Judicial Foreclosure; Receivership</u>. If an Event of Default has occurred and is continuing, the Mortgagee shall have the right and power to proceed by a suit or suits in equity or at law, whether for the specific performance of any covenant or agreement herein contained or in aid of the execution of any power herein granted, or for any foreclosure hereunder or for the sale of the Collateral under the judgment or decree of any court or courts of competent jurisdiction, or for the appointment of a receiver pending any foreclosure hereunder or the sale of the Collateral under the order of a court or courts of competent jurisdiction or under executory or other legal process, or for the enforcement of any other appropriate legal or equitable remedy. Any money advanced by the Mortgagee in connection with any such receivership shall be a demand obligation (which obligation the Mortgagor hereby expressly promises to pay) owing by the Mortgagor to the Trustee and/or the Mortgagee and shall bear interest at the Default Rate from the date of making such advance by the Mortgagee until paid.  Further, following the occurrence and during the continuance of an Event of Default, to the extent permitted by applicable law, the Mortgagee shall as a matter of right be entitled to the appointment of a receiver or receivers for all or any part of the Mortgaged Property, whether such receivership be incident to a proposed sale (or sales) of such property or otherwise, and without regard to the value of the Mortgaged Property or the solvency of any person or persons liable for the payment of the obligations secured hereby, and Mortgagor does hereby consent to the appointment of such receiver or receivers, waives any and all defenses to such appointment, and agrees not to oppose any application therefor by Mortgagee, and agrees that such appointment shall in no manner impair, prejudice or otherwise affect the rights of Mortgagee under <u>ARTICLE III</u> hereof.  Mortgagor expressly waives notice of a hearing for appointment of a receiver and the necessity for bond or an accounting by the receiver.  Nothing herein is to be construed to deprive Mortgagee of any other right, remedy or privilege it may now or hereafter have under the law to have a receiver appointed.

Section 5.05.  <u>Foreclosure for Installments</u>. The Mortgagee shall also have the option, if an Event of Default shall occur and be continuing, to proceed, or direct the Trustee to proceed, with foreclosure in satisfaction of any installments of the Secured Obligations which have not been paid when due either through the courts, through the power of sale granted herein, or by any other

manner allowed by applicable law or equity in satisfaction of the matured but unpaid portion of the Secured Obligations as if under a full foreclosure, conducting the sale as herein provided and without declaring the entire principal balance and accrued interest and other Secured Obligations then due; such sale may be made subject to the unmatured portion of the Secured Obligations, and any such sale shall not in any manner affect the unmatured portion of the Secured Obligations, but as to such unmatured portion of the Secured Obligations this Mortgage shall remain in full force and effect just as though no sale had been made hereunder. It is further agreed that several sales may be made hereunder without exhausting the right of sale for any unmatured part of the Secured Obligations, it being the purpose hereof to provide for a foreclosure and sale of the security for any matured portion of the Secured Obligations without exhausting the power to foreclose and sell the Mortgaged Property for any subsequently maturing portion of the Secured Obligations.

Section 5.06.  Separate Sales. If an Event of Default has occurred and is continuing, the Collateral may be sold in one or more parcels or in such other lots or allocated or allocated portions of the Mortgaged Properties and to the extent permitted by applicable law in such manner and order as the Mortgagee, in its sole discretion, may elect, it being expressly understood and agreed that the right of sale arising out of any Event of Default shall not be exhausted by any one or more sales.

Section 5.07.  Possession of Collateral. If an Event of Default shall have occurred and be continuing, then, to the extent permitted by applicable law, the Trustee or the Mortgagee shall have the right and power to enter into and upon and take possession of all or any part of the Collateral in the possession of the Mortgagor, its successors or assigns, or its or their agents or servants, and may exclude the Mortgagor, its successors or assigns, and all Persons claiming under the Mortgagor, and its or their agents or servants wholly or partly therefrom; and, holding the same, the Trustee or the Mortgagee may use, administer, manage, operate and control the Collateral and conduct the business thereof to the same extent as the Mortgagor, its successors or assigns, might at the time do and may exercise all rights and powers of the Mortgagor, in the name, place and stead of the Mortgagor, or otherwise as the Trustee or the Mortgagee shall deem best. All out-of-pocket costs and expenses incurred by the Mortgagee in administering, managing, operating, and controlling the Collateral shall constitute a demand obligation (which obligation the Mortgagor hereby expressly promises to pay) owing by the Mortgagor to the Mortgagee and shall bear interest at the Default Rate from date of expenditure until paid.

Section 5.08.  Occupancy After Foreclosure. In the event there is a foreclosure sale hereunder and at the time of such sale the Mortgagor or the Mortgagor's representatives, successors or assigns or any other Person claiming any interest in the Collateral by, through or under the Mortgagor, are occupying or using the Mortgaged Property or any part thereof, each and all shall, to the extent allowed by applicable law, immediately become the tenant of the purchaser at such sale, which tenancy shall be a tenancy from day to day, to the extent permitted by applicable law, terminable at the will of either the landlord or tenant, or at a reasonable rental per day based upon the value of the property occupied, such rental to be due daily to the purchaser; to the extent permitted by applicable law, the purchaser at such sale shall, notwithstanding any language herein apparently to the contrary, have the sole option to demand immediate possession following the sale or to permit the occupants to remain as tenants at will. In the event the tenant fails to surrender possession of said property upon demand, the purchaser shall be entitled to institute and maintain

a summary action for possession of the Mortgaged Property (such as an action for forcible entry and detainer) in any court having jurisdiction.

Section 5.09.   <u>Remedies Cumulative, Concurrent and Nonexclusive</u>. Every right, power, privilege and remedy herein given to the Trustee or the Mortgagee shall be cumulative and in addition to every other right, power and remedy herein specifically given or now or hereafter existing in equity, at law or by statute (including specifically those granted by the Applicable UCC in effect and applicable to the Collateral or any portion thereof). If an Event of Default shall have occurred and be continuing, then each and every right, power, privilege and remedy whether specifically herein given or otherwise existing may be exercised from time to time and so often and in such order as may be deemed expedient by the Trustee or the Mortgagee, and the exercise, or the beginning of the exercise, or the abandonment, of any such right, power, privilege or remedy shall not be deemed a waiver of the right to exercise, at the same time or thereafter any other right, power, privilege or remedy. No delay or omission by the Trustee or the Mortgagee or any Secured Party in the exercise of any right, power or remedy shall impair any such right, power, privilege or remedy or operate as a waiver thereof or of any other right, power, privilege or remedy then or thereafter existing.

Section 5.10.   <u>Discontinuance of Proceedings</u>. If the Trustee or the Mortgagee shall have proceeded to invoke any right, remedy or recourse permitted hereunder or under any Secured Transaction Document or available at law and shall thereafter elect to discontinue or abandon same for any reason, then it shall have the unqualified right so to do and, in such an event, the parties shall be restored to their former positions with respect to the Secured Obligations, this Mortgage, the Indenture, the Collateral and otherwise, and the rights, remedies, recourses and powers of the Trustee and the Mortgagee, as applicable, shall continue as if same had never been invoked.

Section 5.11.   <u>No Release of Obligations</u>. Neither the Mortgagor, any guarantor nor any other Person hereafter obligated for payment of all or any part of the Secured Obligations shall be relieved of such obligation by reason of: (a) the release, regardless of consideration, of the Mortgaged Property or any portion thereof or interest therein or the addition of any other property to the Mortgaged Property; (b) any agreement or stipulation between any subsequent owner of the Mortgaged Property and the Mortgagee extending, renewing, rearranging or in any other way modifying the terms of this Mortgage without first having obtained the consent of, given notice to or paid any consideration to the Mortgagor, any guarantor or such other Person, and in such event the Mortgagor, guarantor and all such other Persons shall continue to be liable to make payment according to the terms of any such extension or modification agreement unless expressly released and discharged in writing by the Mortgagee; or (c) by any other act or occurrence save and except if Security Termination has occurred.

Section 5.12.   <u>Release of and Resort to Collateral</u>. The Mortgagee may release, regardless of consideration, any part of the Collateral without, as to the remainder, in any way impairing, affecting, subordinating or releasing the Lien created in or evidenced by this Mortgage or its stature as a first and prior Lien in and to the Collateral, and without in any way releasing or diminishing the liability of any Person liable for the repayment of the Secured Obligations. For payment of the Secured Obligations, the Mortgagee may resort to any other security therefor held by the Trustee or the Mortgagee in such order and manner as the Mortgagee may elect.

Section 5.13.  <u>Waiver of Redemption, Notice and Marshalling of Assets, Etc.</u> To the fullest extent permitted by law, the Mortgagor hereby irrevocably and unconditionally waives and releases (a) all benefits that might accrue to the Mortgagor by virtue of any present or future moratorium law or other law exempting the Collateral from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment; and (b) any right to a marshalling of assets or a sale in inverse order of alienation. If any law referred to in this Mortgage and now in force, of which the Mortgagor or its successor or successors might take advantage despite the provisions hereof, shall hereafter be repealed or cease to be in force, such law shall thereafter be deemed not to constitute any part of the contract herein contained or to preclude the operation or application of the provisions hereof. If the laws of any state which provides for a redemption period do not permit the redemption period to be waived, the redemption period shall be specifically reduced to the minimum amount of time allowable by statute.

Section 5.14.  <u>Application of Proceeds</u>. The proceeds of any sale of the Collateral or any part thereof and all other monies received in any proceedings for the enforcement hereof or in any non-judicial foreclosures or otherwise, whose application has not elsewhere herein been specifically provided for, shall be applied:

(a)    First, to the payment of all documented out-of-pocket expenses incurred by the Trustee or the Mortgagee incident to the enforcement of this Mortgage, the Indenture or any other Secured Transaction Document to collect any portion of the Secured Obligations (including, without limiting the generality of the foregoing, expenses of any entry or taking of possession, of any sale, of advertisement thereof, and of conveyances, and court costs, compensation of agents, and legal fees of the Mortgagee or the Trustee so acting, if applicable), and to the payment of all other documented out-of-pocket charges, expenses, liabilities and advances incurred or made by the Trustee or the Mortgagee under this Mortgage or in executing any trust or power hereunder; and

(b)    Second, as set forth in Section 8.06(ii) of the Indenture.

Section 5.15.  <u>Exculpation</u>. THE SPECIFIED PARTIES SHALL NOT BE LIABLE, IN CONNECTION WITH ANY ACTION LAWFULLY TAKEN UNDER THIS MORTGAGE, FOR ANY LOSS SUSTAINED BY THE MORTGAGOR RESULTING FROM AN ASSERTION THAT THE MORTGAGEE HAS RECEIVED FUNDS FROM THE PRODUCTION OF HYDROCARBONS CLAIMED BY THIRD PERSONS OR ANY ACT OR OMISSION OF ANY SPECIFIED PARTY IN ADMINISTERING, MANAGING, OPERATING OR CONTROLLING THE MORTGAGED PROPERTY **INCLUDING SUCH LOSS WHICH MAY RESULT FROM THE ORDINARY NEGLIGENCE OF A SPECIFIED PARTY UNLESS SUCH LOSS IS DETERMINED BY A COURT OF COMPETENT JURISDICTION BY FINAL AND NONAPPEALABLE JUDGMENT TO HAVE DIRECTLY RESULTED FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF SUCH SPECIFIED PARTY**. NO SPECIFIED PARTY WILL BE OBLIGATED TO PERFORM OR DISCHARGE ANY OBLIGATION, DUTY OR LIABILITY OF THE MORTGAGOR.

Section 5.16.  Payment of Expenses; Indemnity.

(a)    The Mortgagor agrees to pay or promptly reimburse the Trustee, the Mortgagee or the Secured Parties, as the case may be, for all advances and documented out-of-pocket costs and expenses including, without limitation, all documented out-of-pocket costs and expenses of holding, preparing for sale and selling, collecting or otherwise realizing upon the Collateral and all documented out-of-pocket attorneys' fees, legal expenses and court costs incurred by the Trustee or the Mortgagee or the Secured Parties, as the case may be, in connection with the exercise of its respective rights and remedies hereunder in accordance with the terms hereof and applicable law, including, without limitation, any documented advances, charges, costs and expenses that are incurred in any effort to enforce any of the provisions of this Mortgage in accordance with the terms hereof and applicable law, or any obligation of the Mortgagor in respect of the Collateral or in connection with (i) the preservation of the Lien of, or the rights of the Trustee or the Mortgagee or the Secured Parties, as the case may be, under this Mortgage, (ii) any actual or attempted sale, lease, disposition, exchange, collection, compromise, settlement or other realization in respect of, or care of, the Collateral, including all such documented costs and expenses incurred in any bankruptcy, reorganization, workout or other similar proceeding, or (iii) otherwise enforcing or preserving any rights under this Mortgage.

**(b)**    The Mortgagor agrees to pay, and to save the Specified Parties harmless from, any and all actual losses, claims, damages (but excluding any punitive, special, consequential or exemplary damages), penalties, liabilities and related expenses with respect to the execution, delivery, enforcement, performance and administration of this Mortgage to the extent the Mortgagor would be required to do so pursuant to Section 6.07 of the Indenture. THE MORTGAGOR HEREBY ASSENTS TO, RATIFIES AND CONFIRMS ANY AND ALL ACTIONS OF EACH SPECIFIED PARTY WITH RESPECT TO THE COLLATERAL TAKEN UNDER AND IN COMPLIANCE WITH THE TERMS OF THIS MORTGAGE. **Notwithstanding the foregoing, the foregoing indemnity applies to matters that, in whole or in part, are caused by or arise out of the negligence of any Specified Party, but not to the extent caused by or arising out of the gross negligence, illegality, intentional breach of this Mortgage, the Indenture or any other Secured Transaction Document by any Specified Party or willful misconduct of or by any Specified Party.**

## ARTICLE VI.
## THE TRUSTEE

Section 6.01.  Duties, Rights, and Powers of Trustee. The Trustee shall have no duty to see to any recording, filing or registration of this Mortgage or any other instrument in addition or supplemental thereto, or to give any notice thereof, or to see to the payment of or be under any duty in respect of any tax or assessment or other governmental charge which may be levied or assessed on the Mortgaged Properties, or any part thereof, or against the Mortgagor, or to see to the performance or observance by the Mortgagor of any of the covenants and agreements contained herein. The Trustee shall not be responsible for the execution, acknowledgment or validity of this Mortgage or of any instrument in addition or supplemental hereto or for the sufficiency of the security purported to be created hereby, and makes no representation in respect thereof or in respect of the rights of the Mortgagee. The Trustee shall have the right to advice of counsel upon any matters arising hereunder and shall be fully protected in relying as to legal matters on the advice

of counsel. The Trustee shall not incur any personal liability hereunder except for the Trustee's own gross negligence or willful misconduct; and the Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by him hereunder, believed by him in good faith to be genuine.

Section 6.02.   Successor Trustee. The Trustee may resign by written notice addressed to the Mortgagee or be removed at any time with or without cause by an instrument in writing duly executed on behalf of the Mortgagee. In case of the death, resignation or removal of the Trustee, a successor trustee may be appointed by the Mortgagee by recording in the office where this Mortgage is recorded an instrument of substitution complying with any applicable Governmental Rule, or, in the absence of any such requirement, without formality other than appointment and designation in writing. Written notice of such appointment and designation shall be given by the Mortgagee to the Mortgagor, but the validity of any such appointment shall not be impaired or affected by failure to give such notice or by any defect therein. Such appointment and designation shall be full evidence of the right and authority to make the same and of all the facts therein recited. Upon the making and recording of any such appointment and designation, this Mortgage shall vest in the successor trustee all the estate and title in and to all of the Mortgaged Properties, and the successor trustee shall thereupon succeed to all of the rights, powers, privileges, immunities and duties hereby conferred upon the Trustee named herein, and one such appointment and designation shall not exhaust the right to appoint and designate an additional successor trustee but such right may be exercised repeatedly until Security Termination has occurred. To facilitate the administration of the duties hereunder, the Mortgagee may appoint multiple trustees to serve in such capacity or in such jurisdictions as the Mortgagee may designate and each of any such Trustee shall have full power and authority to enforce and execute this Mortgage.

Section 6.03.   Retention of Moneys. All moneys received by the Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by law) and the Trustee shall be under no liability for interest on any moneys received by him hereunder.

## ARTICLE VII.
## MISCELLANEOUS

Section 7.01.   Instrument Construction; Recording. This Mortgage may be construed as a deed of trust, mortgage, conveyance and assignment, security agreement, fixture filing, pledge, financing statement, hypothecation or contract, or any one or more of them, in order fully to effectuate the Lien hereof and the purposes and agreements herein set forth. Mortgagor will cause this Mortgage and all amendments and supplements thereto and substitutions therefor and all financing statements and continuation statements relating thereto to be recorded, filed, re-recorded and refiled in such manner and in such places as Mortgagee shall reasonably request and will pay all such recording, filing, re-recording and refiling taxes, fees and other charges.

Section 7.02.   Releases.

(a)   Full Release. Upon Security Termination, this conveyance and the Liens and security interests granted hereunder shall, at Mortgagor's election, (i) be automatically released

and terminated without any act by any party, and all rights to the Collateral shall revert back to the Mortgagor or (ii) at Mortgagor's election and sole cost and expense, assigned to a new secured party, without any representation or warranty by, liability of, or recourse to and with full release, indemnification and defense of Mortgagee and each Specified Party with respect to all matters arising under or related to this Mortgage, the Indenture or any other Secured Transaction Document.  If the Mortgagor shall request the release of this Mortgage, the Mortgagee shall promptly (but in any event, within thirty days after Security Termination) execute and deliver or cause to be executed and delivered such instruments of satisfaction and release to the Mortgagor as may be appropriate to cause satisfaction and discharge of this Mortgage, which instruments shall be entered upon the record by, and at the expense of, the Mortgagor. Otherwise, this Mortgage shall remain and continue in full force and effect.

(b)     Partial Release. If any of the Mortgaged Property shall be sold, transferred or otherwise disposed of by the Mortgagor in a transaction permitted by the Indenture, then the Mortgagee, at the request and sole expense of the Mortgagor, shall promptly execute and deliver to the Mortgagor all releases or other documents reasonably required for the release of the Liens created hereby on the Mortgaged Property; provided that the Mortgagor shall have delivered to the Mortgagee, at least five (5) Business Days prior to the date of the proposed release (or such shorter time period as the Mortgagee may agree), a written request for release identifying the relevant Mortgaged Property and the terms of the sale or other Disposition in reasonable detail, including the price thereof and any expenses in connection therewith, together with a certification by the Mortgagor stating that (i) such transaction is in compliance with the Basic Documents, (ii) the Mortgagor has complied with its obligations under Section 4.20 of the Indenture, if applicable and (iii) no Mortgaged Property other than the Mortgaged Property required to be released is being released.

(c)     Possession of Notes. The Mortgagor acknowledges and agrees that possession of any Note (or any replacements of any said Note or other instrument evidencing any part of the Secured Obligations) at any time by Mortgagor or any guarantor shall not in any manner extinguish the Secured Obligations or this Mortgage, and the Mortgagor shall have the right to issue and reissue any of the Notes from time to time as its interest or as convenience may require, without in any manner extinguishing or affecting the Secured Obligations or the Lien of this Mortgage.

Section 7.03.   Invalidity. Any provision of this Mortgage held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof or thereof; and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.

Section 7.04.   Successors and Assigns. The provisions of this Mortgage shall be binding upon and inure to the benefit of the parties hereto and their respective permitted successors and assigns; provided that the Mortgagor may not assign, transfer or delegate any of its rights or obligations under this Mortgage without the prior written consent of the Mortgagee.

Section 7.05.   Satisfaction of Prior Encumbrance. To the extent that proceeds of the Notes are used to pay indebtedness secured by any outstanding Lien against the Mortgaged Property then the parties agree that: (a) such proceeds have been advanced at the Mortgagor's request, and (b) the

Mortgagee and the Noteholders shall be subrogated to any and all rights and Liens owned by any owner or holder of such outstanding Liens, irrespective of whether said Liens are or have been released. It is expressly understood that, in consideration of the payment of such other indebtedness, the Mortgagor hereby waives and releases all demands and causes of action for offsets and payments to, upon and in connection with such indebtedness. This Mortgage is made with full substitution and subrogation of the Trustee and the Mortgagee and their successors in this trust and their assigns in and to all covenants and warranties by any Persons (other than Mortgagor, the Seller, and their respective Affiliates) heretofore given or made in respect of the Mortgaged Property or any part thereof.

Section 7.06.   <u>Application of Payments to Certain Obligations</u>. If any part of the Secured Obligations cannot be lawfully secured by this Mortgage or if any part of the Mortgaged Property cannot be lawfully subject to the Lien hereof to the full extent of the Secured Obligations, then all payments made shall be applied on said Secured Obligations first in discharge of that portion thereof which is not secured by this Mortgage.

Section 7.07.   <u>Nature of Covenants</u>. The covenants and agreements herein contained shall constitute covenants running with the land and interests covered or affected hereby and shall be binding upon the heirs, legal representatives, successors and assigns of the parties hereto.

Section 7.08.   <u>Notices</u>. Except as otherwise specified in this Mortgage, all notices, requests, consents, demands and other communications required or permitted hereunder shall be in writing and shall be deemed sufficiently given or furnished if delivered by registered or certified United States mail, postage prepaid, or by personal service (including express or courier service) at the addresses specified in <u>Section 7.12</u> (unless changed by similar notice in writing given by the particular party whose address is to be changed). Any such notice or communication shall be deemed to have been given either at the time of personal delivery or, in the case of delivery at the address and in the manner provided herein, upon receipt; <u>provided</u> that, service of notice as required by the laws of any state in which portions of the Mortgaged Property may be situated shall for all purposes be deemed appropriate and sufficient with the giving of such notice.

Section 7.09.   <u>Counterparts</u>. This Mortgage may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument, except that to facilitate recordation, if the Mortgaged Property is situated in more than one county, descriptions of only those portions of the Mortgaged Property located in the county in which a particular counterpart is recorded shall be attached as <u>Exhibit A</u> thereto. The words "execution," "signed," "signature," and words of like import in this Mortgage or in any other certificate, agreement or document related to this Mortgage or the other Basic Documents shall include images of manually executed signatures transmitted by facsimile or other electronic format (including "pdf", "tif" or "jpg") and other electronic signatures (including DocuSign and AdobeSign). The use of electronic signatures and electronic records (including any contract or other record created, generated, sent, communicated, received, or stored by electronic means) shall be of the same legal effect, validity and enforceability as a manually executed signature or use of a paper-based record-keeping system to the fullest extent permitted by applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act and any other

applicable law, including any state law based on the Uniform Electronic Transactions Act or the UCC.

Section 7.10.  <u>GOVERNING LAW; JURISDICTION; CONSENT TO SERVICE OF PROCESS; WAIVER OF JURY TRIAL</u>.

(a)    THE PROVISIONS OF THIS MORTGAGE REGARDING THE CREATION, VALIDITY, PERFECTION, AND ENFORCEMENT, INCLUDING, WITHOUT LIMITATION, FORECLOSURE OF THE LIENS AND SECURITY INTERESTS HEREIN GRANTED SHALL BE GOVERNED BY AND CONSTRUED UNDER THE REQUIREMENTS OF LAW OF THE RESPECTIVE STATES IN WHICH THE MORTGAGED PROPERTIES AND RELATED UCC COLLATERAL ARE LOCATED. ALL OTHER PROVISIONS OF THIS MORTGAGE AND THE RIGHTS AND OBLIGATIONS OF MORTGAGOR, MORTGAGEE, TRUSTEE, AND/OR THE SECURED PARTIES HEREUNDER, SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE REQUIREMENTS OF LAW OF THE STATE OF NEW YORK, WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES THEREOF. WITHOUT LIMITING THE FOREGOING, TO THE EXTENT THAT THIS MORTGAGE APPLIES TO ANY REAL PROPERTY INTERESTS LOCATED IN A PARTICULAR STATE, THIS MORTGAGE SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH AND GOVERNED BY THE REQUIREMENTS OF LAW OF SUCH STATE WITH RESPECT TO THE FOLLOWING MATTERS: (1) WHETHER ANY TRANSACTION RELATING TO THIS MORTGAGE TRANSFERS OR CREATES AN INTEREST IN SUCH REAL PROPERTY FOR SECURITY PURPOSES OR OTHERWISE; (2) THE NATURE OF AN INTEREST IN SUCH REAL PROPERTY THAT IS TRANSFERRED OR CREATED BY ANY TRANSACTION RELATING TO THIS MORTGAGE; (3) THE METHOD FOR FORECLOSURE OF A LIEN ON SUCH REAL PROPERTY; (4) THE NATURE OF AN INTEREST IN SUCH REAL PROPERTY THAT RESULTS FROM FORECLOSURE; OR (5) THE MANNER AND EFFECT OF RECORDING OR FAILING TO RECORD EVIDENCE OF ANY TRANSACTION RELATING TO THIS MORTGAGE THAT TRANSFERS OR CREATES AN INTEREST IN SUCH REAL PROPERTY.

(b)    EACH PARTY HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY SUBMITS FOR ITSELF AND ITS PROPERTY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS MORTGAGE AND THE OTHER BASIC DOCUMENTS TO WHICH IT IS A PARTY, OR FOR RECOGNITION AND ENFORCEMENT OF ANY JUDGMENT IN RESPECT THEREOF, TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK SITTING IN NEW YORK COUNTY AND OF THE UNITED STATES DISTRICT COURT OF THE SOUTHERN DISTRICT OF NEW YORK, AND ANY APPELLATE COURT FROM ANY THEREOF AND AGREES THAT ALL CLAIMS IN RESPECT OF ANY SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN SUCH NEW YORK STATE COURT OR, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, IN SUCH FEDERAL COURT; <u>PROVIDED</u>, THAT NOTHING CONTAINED HEREIN OR IN ANY OTHER BASIC DOCUMENT WILL PREVENT ANY PARTY FROM BRINGING ANY ACTION TO ENFORCE ANY AWARD OR JUDGMENT OR EXERCISE ANY RIGHT UNDER THE BASIC DOCUMENTS IN ANY OTHER FORUM IN WHICH JURISDICTION CAN BE ESTABLISHED. EACH OF THE

PARTIES HERETO AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW. EACH PARTY HEREBY IRREVOCABLY WAIVES ANY OBJECTION, INCLUDING ANY OBJECTION TO THE LAYING OF VENUE OR BASED ON THE GROUNDS OF FORUM *NON CONVENIENS*, WHICH IT MAY NOW OR HEREAFTER HAVE TO THE BRINGING OF ANY SUCH ACTION OR PROCEEDING IN SUCH RESPECTIVE JURISDICTIONS.

(c)     EACH PARTY HEREBY (i) IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS MORTGAGE OR ANY OTHER BASIC DOCUMENT AND FOR ANY COUNTERCLAIM THEREIN; (ii) IRREVOCABLY WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY SUCH LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES, OR DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES; (iii) CERTIFIES THAT NO PARTY HERETO NOR ANY REPRESENTATIVE OR AGENT OF COUNSEL FOR ANY PARTY HERETO HAS REPRESENTED, EXPRESSLY OR OTHERWISE, OR IMPLIED THAT SUCH PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVERS; AND (iv) ACKNOWLEDGES THAT IT HAS BEEN INDUCED TO ENTER INTO THIS MORTGAGE, THE BASIC DOCUMENTS AND THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS CONTAINED IN THIS <u>SECTION 7.10</u>.

(d)     EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY AGREES THAT (I) SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY BE EFFECTED BY MAILING A COPY THEREOF BY REGISTERED OR CERTIFIED MAIL (OR ANY SUBSTANTIALLY SIMILAR FORM OF MAIL), POSTAGE PREPAID, TO MORTGAGOR, AS THE CASE MAY BE AT ITS ADDRESS SET FORTH IN <u>SECTION 7.12</u> OR AT SUCH OTHER ADDRESS OF WHICH THE MORTGAGEE SHALL HAVE BEEN NOTIFIED PURSUANT THERETO AND (II) NOTHING HEREIN SHALL AFFECT THE RIGHT TO EFFECT SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY LAW.

Section 7.11.   <u>Financing Statement; Fixture Filing</u>. This Mortgage shall be effective as a financing statement filed as a fixture filing with respect to all Fixtures included within the Mortgaged Property and is to be filed or filed for record in the real estate records, mortgage records or other appropriate records of each jurisdiction where any part of the Mortgaged Property (including fixtures) is located. This Mortgage shall also be effective as a financing statement covering As-Extracted Collateral (including all such oil and gas and all other substances of value which may be extracted from the ground) and accounts financed at the wellhead or minehead of wells or mines located on the Mortgaged Properties subject to the Applicable UCC and is to be filed for record in the real estate records, UCC records or other appropriate records of each jurisdiction where any part of the Mortgaged Property is situated.

Section 7.12. <u>Financing Statements</u>. Pursuant to the Applicable UCC, the Mortgagor authorizes the Mortgagee, its counsel or its representative, at any time and from time to time, to file or record financing statements, continuation statements, amendments thereto and other filing or recording documents or instruments with respect to the Mortgaged Property without the signature of the Mortgagor in such form and in such offices as the Mortgagee reasonably determines are required to perfect the security interests of the Mortgagee under this Mortgage. The Mortgagor also authorizes the Mortgagee, its counsel or its representative, at any time and from time to time, to file or record such financing statements that describe the collateral covered thereby as "all assets of the Mortgagor", "all personal property of the Mortgagor" or words of similar effect. The Mortgagor shall pay all reasonable and documented out-of-pocket costs associated with the filing of such instruments.

In that regard, the following information is provided:

| | |
|---|---|
| Name of Mortgagor: | Alpine Summit Funding LLC |
| State of Formation/Location: | Delaware |
| Address of Mortgagor: | 3322 West End Avenue, Suite 450<br>Nashville, TN 37203 |
| Attention: | Chrystie Holmstrom |
| Principal Place of Business of Mortgagor: | 3322 West End Avenue, Suite 450<br>Nashville, TN 37203 |
| Name of Mortgagee and Indenture Trustee: | UMB Bank, N.A., as Mortgagee for the benefit of the Secured Parties |
| Address of Mortgagee and Indenture Trustee: | 100 William Street, Suite 1850,<br>New York, NY 10038 |
| Attention: | ABS Structured Finance |
| Owner of Record Interest in Oil and Gas Properties: | Mortgagor |
| Name and Address of Trustee: | Marcus Simpson<br>c/o Alpine Summit Energy Partners<br>2445 Technology Forest Blvd, Suite 1010<br>The Woodlands, TX, 77381 |

Section 7.13. <u>Debtor's Interests</u>. The Mortgagor has an interest of record in each item of real property constituting Collateral hereunder.

Section 7.14. <u>Exculpation Provisions</u>. EACH OF THE PARTIES HERETO SPECIFICALLY AGREES THAT IT HAS A DUTY TO READ THIS MORTGAGE; AND

AGREES THAT IT IS CHARGED WITH NOTICE AND KNOWLEDGE OF THE TERMS OF THIS MORTGAGE; THAT IT HAS IN FACT READ THIS MORTGAGE AND IS FULLY INFORMED AND HAS FULL NOTICE AND KNOWLEDGE OF THE TERMS, CONDITIONS AND EFFECTS OF THIS MORTGAGE; THAT IT HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL OF ITS CHOICE THROUGHOUT THE NEGOTIATIONS PRECEDING ITS EXECUTION OF THIS MORTGAGE; AND HAS RECEIVED THE ADVICE OF ITS ATTORNEY IN ENTERING INTO THIS MORTGAGE; AND THAT IT RECOGNIZES THAT CERTAIN OF THE TERMS OF THIS MORTGAGE RESULT IN ONE PARTY ASSUMING THE LIABILITY INHERENT IN SOME ASPECTS OF THE TRANSACTION AND RELIEVING THE OTHER PARTY OF ITS RESPONSIBILITY FOR SUCH LIABILITY. EACH PARTY HERETO AGREES AND COVENANTS THAT IT WILL NOT CONTEST THE VALIDITY OR ENFORCEABILITY OF ANY EXCULPATORY PROVISION OF THIS MORTGAGE ON THE BASIS THAT THE PARTY HAD NO NOTICE OR KNOWLEDGE OF SUCH PROVISION OR THAT THE PROVISION IS NOT "CONSPICUOUS."

Section 7.15.  Hedge Counterparties. For the avoidance of doubt, the benefit of this Mortgage relating to any Collateral securing the Secured Obligations shall also extend to and be available to the Hedge Counterparties in respect of the Secured Hedge Agreements as set forth herein and in the Indenture.

Section 7.16.  Headings. Article and Section headings and the Table of Contents used herein are for convenience of reference only, are not part of this Mortgage and shall not affect the construction of, or be taken into consideration in interpreting, this Mortgage.

Section 7.17.  Survival. THE AGREEMENTS AND LIABILITIES OF THE MORTGAGOR SET FORTH IN SECTION 5.15 AND SECTION 5.16 SHALL SURVIVE THE TERMINATION OF THIS MORTGAGE. TO THE EXTENT THAT ANY PAYMENTS ON THE SECURED OBLIGATIONS OR PROCEEDS OF ANY COLLATERAL ARE SUBSEQUENTLY INVALIDATED, DECLARED TO BE FRAUDULENT OR PREFERENTIAL, SET ASIDE OR REQUIRED TO BE REPAID TO A TRUSTEE, DEBTOR IN POSSESSION, RECEIVER OR OTHER PERSON UNDER ANY BANKRUPTCY LAW, COMMON LAW OR EQUITABLE CAUSE, THEN TO SUCH EXTENT, THE SECURED OBLIGATIONS SO SATISFIED SHALL BE REVIVED AND CONTINUE AS IF SUCH PAYMENT OR PROCEEDS HAD NOT BEEN RECEIVED AND THE MORTGAGEE'S AND THE OTHER SECURED PARTIES' LIENS, SECURITY INTERESTS, RIGHTS, POWERS AND REMEDIES UNDER THIS MORTGAGE AND EACH SECURITY INSTRUMENT SHALL CONTINUE IN FULL FORCE AND EFFECT. IN SUCH EVENT, EACH SECURITY INSTRUMENT SHALL BE AUTOMATICALLY REINSTATED AND MORTGAGOR SHALL TAKE SUCH ACTION AS MAY BE REASONABLY REQUESTED BY THE MORTGAGEE AND THE OTHER SECURED PARTIES TO EFFECT SUCH REINSTATEMENT.

Section 7.18.  Compliance with Usury Laws. It is the intent of Mortgagor and Mortgagee to contract in strict compliance with applicable usury law from time to time in effect. In furtherance thereof, it is stipulated and agreed that none of the terms and provisions contained herein or in the Basic Documents shall ever be construed to create a contract to pay, for the use, forbearance or

26

VOL I 3 3 0 PG 0 5 2 2

detention of money, interest in excess of the maximum amount of interest permitted to be collected, charged, taken, reserved or received by applicable law from time to time in effect.

Section 7.19.  <u>Amendment and Restatement</u>.  This Mortgage amends and restates in its entirety, but does not constitute a novation, a discharge, or an accord and satisfaction of, the Original Mortgage.  All Liens, claims, rights, titles, interests and benefits created and granted by the Original Mortgage shall continue to exist, remain valid and subsisting, shall not be impaired or released hereby, shall remain in full force and effect and are hereby renewed, extended, carried forward by this Mortgage and conveyed as security for the Secured Obligations.

[SIGNATURES BEGIN NEXT PAGE]

VOL 1 3 3 0 PG 0 5 2 3

WITNESS the following signature:

**ALPINE SUMMIT FUNDING LLC**

By: _____

Name:  Craig Perry

Title:    President and Chief Executive Officer

STATE OF _Tennessee_ §

§

COUNTY OF _Davidson_ §

The following instrument or record was acknowledged before me this 8th day of September, 2022 by Craig Perry, President and Chief Executive Officer of Alpine Summit Funding LLC, a Delaware limited liability company, on behalf of said limited liability company.

_____

Notary Public

[SEAL]

My Commission Expires:

_07-03-2023_

The foregoing instrument was prepared by the following individuals without title examination and after recording shall be returned to:

HB2 Origination, LLC
2445 Technology Forest Blvd, Suite 1010
The Woodlands, TX 77381
Attn: Marcus Simpson



[Signature Page to First Amended and Restated Wellbore Interest Deed of Trust and Mortgage]

## EXHIBIT A

Attached to and made a part of that certain First Amended and Restated Wellbore Interest Deed of Trust, Mortgage, Assignment of As-Extracted Collateral, Security Agreement, Fixture Filing and Financing Statement dated as of September 12, 2022, from Alpine Summit Funding LLC, as Mortgagor, to Marcus Simpson, as Trustee for the benefit of UMB Bank, N.A., as Indenture Trustee and Mortgagee for the benefit of itself and the Secured Parties

### Schedule of Wells

**Part I:  Initial Asset Purchase Agreement Wells**

| Well Name | Well # | API Number | County | State |
|---|---|---|---|---|
| Swedish Chef | 1H | 42-477-30727 | Washington | Texas |
| Swedish Chef | 2H | 42-477-31150* | Washington | Texas |
| Swedish Chef | 3H | 42-477-31151* | Washington | Texas |
| Swedish Chef | 4H | 42-477-31178 | Washington | Texas |
| Grover | 1H | 42-477-31162 | Washington & Lee | Texas |
| Animal | 1H | 42-287-32758 | Lee | Texas |
| Stella Mae | 2H | 42-149-33525* | Fayette | Texas |
| Stella Mae | 3H | 42-149-33526* | Fayette | Texas |
| Constantine | 2H | 42-149-33521* | Fayette & Washington | Texas |
| Gonzo | 1H | 42-287-32747ᴬ | Lee & Fayette | Texas |
| Gonzo | 2H | 42-287-32748ᴬ | Lee & Fayette | Texas |
| Beaker B | 2H | 42-287-32740ᴬ | Lee | Texas |
| Beaker B | 3H | 42-287-32741ᴬ | Lee | Texas |
| Gonzo | 3H | 42-149-33498ᴬ | Fayette | Texas |
| Gonzo B | 4H | 42-149-33499ᴬ | Fayette | Texas |
| Gonzo B | 5H | 42-149-33500ᴬ | Fayette | Texas |
| Constantine | 1H | 42-149-33502*ᴬ | Fayette & Washington | Texas |
| Huebner-Klaus A.C. Gas Unit No. 1 | 1H | 42-015-31065ᴬ | Austin | Texas |

**\* Indicates well is in "After Payout" (i.e., APO) status as of April 1, 2022.**
**ᴬ Indicates AIP Borrower, LP Legacy Well**

**Part II: Second Asset Purchase Agreement Wells**

| Well Name | Well # | API Number | County | State |
|---|---|---|---|---|
| AI San Roman | 101H | 42-479-44505 | Webb | Texas |
| AI San Roman | 102H | 42-479-44506 | Webb | Texas |
| Sampson-Mueller A | 4H | 42-149-33532 | Fayette | Texas |
| Statler | 1H | 42-149-32749 | Fayette, Lee & Washington | Texas |
| Animal | 2H | 42-287-32760** | Lee | Texas |

**\*\* Indicates well is in "After Payout" (i.e., APO) status as of June 1, 2022.**

**Part III:  Initial Asset Purchase Agreement Leases**

**CONSTANTINE 2H LEASES**

Recorded in the Official Records of Fayette County, Texas:

| Lessor | Lessee | Lease Date | Book # | Page # |
|---|---|---|---|---|
| Christine Dyer Jervis, et al. | Taylor Land & Mineral & Mineral Services, Inc. | 8/28/2018 | 1878 | 451 |
| Union Pacific Railroad Company | Paleo Oil Company LLC | 10/1/2018 | 1878 | 433 |
| Carolyn Keng, et al. | Taylor Land & Mineral & Mineral Services, Inc. | 9/10/2018 | 1876 | 575 |
| Casey Ann Smith, et al. | Taylor Land & Mineral & Mineral Services, Inc. | 9/10/2018 | 1876 | 577 |
| Texas Osage Royalty Pool, Inc. | Paleo Oil Company LLC | 8/15/2018 | 1876 | 459 |
| Jetta-X2, LP | Paleo Oil Company LLC | 11/1/2018 | 1879 | 773 |
| Carolyn Keng | Taylor Land & Mineral & Mineral Services, Inc. | 9/10/2018 | 1882 | 734 |
| Casey Ann Smith, et al. | Taylor Land & Mineral & Mineral Services, Inc. | 9/10/2018 | 1882 | 736 |
| Larry L. Woytek and wife, Becky Woytek | Taylor Land & Mineral & Mineral Services, Inc. | 9/20/2018 | 1882 | 740 |
| Jason R. Adams | Taylor Land & Mineral & Mineral Services, Inc. | 10/24/2019 | 1924 | 414 |
| Jena Adams Tally | Taylor Land & Mineral & Mineral Services, Inc. | 10/24/2019 | 1924 | 413 |
| David Schulz | Taylor Land & Mineral & Mineral Services, Inc. | 11/12/2019 | 1924 | 410 |
| Devon Energy Production Company, L.P. | Matrix Revolution, LLC | 1/31/2019 | 1890 | 620 |
| State of Texas (MF120226) | Paleo Oil Company LLC | 1/21/2020 | 1929 | 886 |
| Betty C. Cook | Taylor Land & Mineral Services | 5/23/2020 | 1946 | 808 |

**STELLA MAE 2H AND 3H LEASES**

Recorded in the Official Records of Fayette County, Texas:

| Lessor | Lessee | Lease Date | Book # | Page # |
|---|---|---|---|---|
| Kenneth Dorbandt | Leexus Oil LLC | 3/1/2009 | 1485 | 723 |
| Steve Franks | Leexus Oil LLC | 2/26/2009 | 1485 | 724 |
| Bill Morgan | Leexus Oil LLC | 2/24/2009 | 1485 | 725 |
| Carol Morgan | Leexus Oil LLC | 2/24/2009 | 1485 | 726 |
| Leann Melissa Morgan | Leexus Oil LLC | 2/19/2009 | 1485 | 727 |
| Lori Lee Morgan | Leexus Oil LLC | 2/19/2009 | 1485 | 728 |
| Lyndon Frank Morgan | Leexus Oil LLC | 2/23/2009 | 1485 | 729 |
| Malinda L. Morgan | Leexus Oil LLC | 2/18/2009 | 1485 | 730 |
| Edward Robinson | Leexus Oil LLC | 3/4/2009 | 1485 | 731 |
| Rudy Scheel | Leexus Oil LLC | 2/23/2009 | 1496 | 282 |
| Arnold Schultz, Jr. | Leexus Oil LLC | 3/6/2009 | 1485 | 732 |
| Dale Schultz and wife, Martha Schultz | Leexus Oil LLC | 11/7/2008 | 1485 | 733 |
| Garry Carlton Schultz | Leexus Oil LLC | 3/11/2009 | 1485 | 734 |
| Larry Guy Schultz | Leexus Oil LLC | 1/7/2009 | 1485 | 735 |
| Leland B. Schultz | Leexus Oil LLC | 11/12/2008 | 1485 | 736 |
| Lyndon F. Schultz | Leexus Oil LLC | 3/2/2009 | 1485 | 737 |
| Melton Schultz | Leexus Oil LLC | 3/16/2009 | 1485 | 738 |
| Norman Schultz | Leexus Oil LLC | 2/17/2009 | 1485 | 739 |
| Paul Schultz | Leexus Oil LLC | 1/22/2009 | 1485 | 740 |
| Preston H. Schultz | Leexus Oil LLC | 11/20/2008 | 1487 | 728 |
| William Schultz | Leexus Oil LLC | 4/3/2009 | 1485 | 741 |
| Lana Morgan Silva | Leexus Oil LLC | 2/18/2009 | 1485 | 742 |
| Lorie Schultz Sommermeyer | Leexus Oil LLC | 11/17/2008 | 1487 | 729 |
| Nancy F. Thetford | Leexus Oil LLC | 1/5/2009 | 1485 | 743 |
| Frank C. Shelden and wife Millicent Brown | County, Management, Inc. | 7/25/1979 | 134 | 384 |

VOL 1330 PG 0528

**ANIMAL 1H LEASES**

Recorded in the Official Records of Lee County, Texas:

| Lessor | Lessee | Lease Date | Book # | Page # |
|--------|--------|------------|--------|--------|
| Gladys Marie Prine | Ironrock Webb Energy Group, LLC | 9/30/2019 | 1260 | 372 |
| Pearly Louise Watts Els | Ironrock Webb Energy Group, LLC | 9/30/2019 | 1260 | 370 |
| Linda Ruth West Stork | Ironrock Webb Energy Group, LLC | 9/30/2019 | 1260 | 368 |
| David Westley Stork | Ironrock Webb Energy Group, LLC | 9/30/2019 | 1260 | 364 |
| Amy Kate Stork | Ironrock Webb Energy Group, LLC | 9/30/2019 | 1260 | 366 |
| Janet Simmang | Ironrock Webb Energy Group, LLC | 9/5/2019 | 1260 | 362 |
| Shawna Hall Salas | Ironrock Webb Energy Group, LLC | 10/11/2019 | 1260 | 374 |
| Patrick Creppel | Ironrock Webb Energy Group, LLC | 9/5/2019 | 1260 | 360 |
| Timothy Christopher Hall | Ironrock Webb Energy Group, LLC | 10/11/2019 | 1260 | 376 |
| Nikki L. Alston and Kenneth W. Alston | Prominence Oil & Gas, LLC | 6/20/2021 | 1301 | 313 |
| Ronald Thomas Hall | Prominence Oil & Gas, LLC | 6/15/2021 | 1302 | 684 |

**SWEDISH CHEF UNIT LEASES**

Recorded in the Official Records of Washington County, Texas:

| Lessor | Lessee | Lease Date | Book # | Page # |
|--------|--------|------------|--------|--------|
| Virginia Fischer, et al | Fort Trinidad Investors, LLC | 4/1/2018 | 1638 | 025 |
| Virginia Fischer, et al | Fort Trinidad Investors, LLC | 4/1/2018 | 1655 | 512 |
| William Charles Merten, et ux | Texian Mineral & Royalty, LLC | 8/2/2018 | 1643 | 094 |
| Mary Beth Merten Jewell, et vir | Texian Mineral & Royalty, LLC | 6/6/2018 | 1638 | 197 |
| Darrell & Rebecca Plagens | Texian Mineral & Royalty, LLC | 6/20/2018 | 1637 | 282 |
| Jerry H. Merten, et ux | Texian Mineral & Royalty, LLC | 6/19/2018 | 1637 | 278 |
| Rebecca Ann Plagens, et al | Texian Mineral & Royalty, LLC | 9/6/2018 | 1645 | 661 |
| Barry Lee Goldberg, et ux | Texian Mineral & Royalty, LLC | 6/20/2018 | 1637 | 276 |
| Nora Lee Goldberg | Texian Mineral & Royalty, LLC | 6/23/2018 | 1637 | 280 |
| State of Texas (MF095755) | Texian Mineral & Royalty, LLC | 11/19/2019 | 1703 | 380 |

VOL I 3 3 0 PG 0 5 2 9

**GROVER UNIT LEASES**

Recorded in the Official Records of Washington County, Texas:

| Lessor | Lessee | Lease Date | Book # | Page # |
|---|---|---|---|---|
| Ross Lee Barrington and wife, Teri Linn Barrington | Matrix Revolution, LLC | 02/23/21 | 1772 | 748 |
| Dennis D. Young | Matrix Revolution, LLC | 03/08/21 | 1776 | 235 |
| Douglas & Sedalia Ullrich | TMRX Petroleum | 03/20/18 | 1628 | 217 |
| John J. D'Louhy | TMRX Petroleum | 02/15/18 | 1628 | 883 |
| Edward M. Lee and Ellen Lee Family Trust | Matrix Revolution, LLC | 01/13/21 | 1762 | 862 |
| Jerrett D. Kessler | TMRX Petroleum | 12/10/18 | 1664 | 898 |
| Dusti Marburger | TMRX Petroleum | 12/10/18 | 1664 | 898 |
| Jack W. Weidemann & Bobbie A. Weidemann, husband and wife | TMRX Petroleum | 06/20/18 | 1637 | 777 |
| Lance Gebert & Debra Gebert, husband and wife | TMRX Petroleum | 05/09/18 | 1640 | 215 |
| Lee James Bookout | TMRX Petroleum | 05/09/18 | 1637 | 146 |
| Lloyd & Judy Matejowsky | TMRX Petroleum | 05/09/18 | 1637 | 144 |
| Harley R. Weyand and wife, Carol Weyand | TMRX Petroleum | 01/15/21 | 1772 | 739 |
| James & Julia Holmes | TMRX Petroleum | 03/20/18 | 1633 | 695 |
| Dr. Martin Stanley Fischer & wife, Mary Lee Fischer | TMRX Petroleum | 01/15/21 | 1776 | 240 |
| Douglas & Sedalia Ullrich | TMRX Petroleum | 03/20/18 | 1628 | 217 |
| Larry Lester Woytek | TMRX Petroleum | 03/01/18 | 1628 | 881 |
| Elaine Nancy Haynes | TMRX Petroleum | 03/01/18 | 1628 | 876 |
| Betty Woytek Whitehead | TMRX Petroleum | 03/01/18 | 1628 | 874 |
| James Calvin Sellers and wife, Emily Elaine Sellers | TMRX Petroleum | 03/01/18 | 1628 | 878 |
| Highground, formally Baptist Foundation | Matrix Revolution, LLC | 11/23/20 | 1757 | 401 |
| Robert Lucherk | Matrix Revolution, LLC | 01/19/21 | 1766 | 289 |
| Cynthia Lucherk Brittain | Matrix Revolution, LLC | 01/19/21 | 1766 | 293 |
| Timothy Lucherk | Matrix Revolution, LLC | 01/19/21 | 1766 | 285 |
| Kenneth Lucherk | Matrix Revolution, LLC | 01/19/21 | 1766 | 291 |
| Kimberly Lucherk Wilson | Matrix Revolution, LLC | 01/19/21 | 1766 | 287 |
| Kevin Lucherk | Matrix Revolution, LLC | 01/19/21 | 1766 | 295 |
| Rafael Gomes and Elena Espiondola | Matrix Revolution, LLC | 11/02/20 | 1722 | 745 |

VOL 1330 PG 0530

**AIP BORROWER, LP LEGACY LEASES**

| Lessor | Lessee | Lease Date | Book # | Page # | Instrument# | County | State |
|---|---|---|---|---|---|---|---|
| Jerry L. Schafer | Paleo Oil Company LLC | 7/19/2018 | 1233 | 1050 | 2018-02835 | Lee | Texas |
| Jetta-X2, LP | Paleo Oil Company LLC | 11/1/2018 | 1879 | 773 | 18-07583 | Fayette | Texas |
| Stanley Budnik | Paleo Oil Company LLC | 7/19/2018 | 1233 | 1054 | 2018-02836 | Lee | Texas |
| Taylor Land & Mineral Services, Inc. | Paleo Oil Company LLC | 10/15/2018 | 1878 | 476 | 18-07311 | Fayette | Texas |
| Taylor Land & Mineral Services, Inc. | Paleo Oil Company LLC | 10/15/2018 | 1878 | 473 | 18-07310 | Fayette | Texas |
| Texas Osage Royalty Pool Inc | Paleo Oil Company LLC | 5/24/2018 | 1874 | 610 | 18-06471 | Fayette | Texas |
| Texas Osage Royalty Pool Inc | Paleo Oil Company LLC | 8/15/2018 | 1876 | 459 | 18-06810 | Fayette | Texas |
| William E. Budnik | Paleo Oil Company LLC | 7/19/2018 | 1233 | 1046 | 2018-02833 | Lee | Texas |
| Loretta Chilek | Taylor Land & Mineral Services, Inc. | 5/24/2018 | 1872 | 831 | 18-06121 | Fayette | Texas |
| Karp Holdings | Taylor Land & Mineral Services, Inc. | 10/9/2018 | 1876 | 886 | 18-06934 | Fayette | Texas |
| Willfred G. Foehr, et ux | Taylor Land & Mineral Services, Inc. | 8/10/2018 | 1876 | 465 | 18-06814 | Fayette | Texas |
| Bruce Burleson | Taylor Land & Mineral Services, Inc. | 8/13/2018 | 1882 | 723 | 18-08234 | Fayette | Texas |
| Carol Timme | Taylor Land & Mineral Services, Inc. | 10/10/2018 | 1882 | 724 | 18-08235 | Fayette | Texas |
| Dorothy Rather | Taylor Land & Mineral Services, Inc. | 10/9/2018 | 1882 | 725 | 18-08236 | Fayette | Texas |
| Thomas Lowery | Taylor Land & Mineral Services, Inc. | 8/5/2018 | 1876 | 464 | 18-06813 | Fayette | Texas |
| Hugo Rodriguez, et ux | Taylor Land & Mineral Services, Inc. | 8/27/2018 | 1878 | 439 | 18-07296 | Fayette | Texas |
| Leexus Oil & Gas, LLC | Taylor Land & Mineral Services, Inc. | 1/10/2019 | 1885 | 549 | 19-00242 | Fayette | Texas |
| Linda Skinner | Taylor Land & Mineral Services, Inc. | 8/21/2018 | 1876 | 466 | 18-06815 | Fayette | Texas |
| Ledbetter Cemetery Assoc. | Taylor Land & Mineral Services, Inc. | 8/28/2018 | 1878 | 446 | 18-07301 | Fayette | Texas |
| Janet Matthijetz | Taylor Land & Mineral Services, Inc. | 8/8/2018 | 1876 | 463 | 18-06812 | Fayette | Texas |
| Carolyn Keng, et al | Taylor Land & Mineral Services, Inc. | 9/10/2018 | 1876 | 575 | 18-06841 | Fayette | Texas |
| Joan Goehring | Taylor Land & Mineral Services, Inc. | 8/10/2018 | 1878 | 442 | 18-07298 | Fayette | Texas |
| Robin Zapalac | Taylor Land & Mineral Services, Inc. | 8/28/2018 | 1878 | 469 | 18-07307 | Fayette | Texas |
| Christine Dyer Jervis & Jon H. Jervis | Taylor Land & Mineral Services, Inc. | 8/28/2018 | 1878 | 471 | 18-07309 | Fayette | Texas |
| Christine Jervis | Taylor Land & Mineral Services, Inc. | 8/28/2018 | 1878 | 470 | 18-07308 | Fayette | Texas |
| Lillian Dyer Trust | Taylor Land & Mineral Services, Inc. | 8/28/2018 | 1878 | 444 | 18-07299 | Fayette | Texas |
| Robert Reid, et ux | Taylor Land & Mineral Services, Inc. | 8/31/2018 | 1878 | 445 | 18-07300 | Fayette | Texas |

| Lessor | Lessee | Lease Date | Book # | Page # | Instrument | County | State |
|---|---|---|---|---|---|---|---|
| Curtis Moore | Taylor Land & Mineral Services, Inc. | 9/10/2018 | 1878 | 447 | 18-07302 | Fayette | Texas |
| Erma Webster | Taylor Land & Mineral Services, Inc. | 9/10/2018 | 1882 | 739 | 18-08244 | Fayette | Texas |
| Hubert Silva and wife Ruby | Taylor Land & Mineral Services, Inc. | 10/4/2018 | 1878 | 449 | 18-07303 | Fayette | Texas |
| Rita Clay | Taylor Land & Mineral Services, Inc. | 10/5/2018 | 1878 | 450 | 18-07304 | Fayette | Texas |
| Larry L. Woytek, et ux | Taylor Land & Mineral Services, Inc. | 9/20/2018 | 1882 | 740 | 18-08245 | Fayette | Texas |
| Kenneth Lehmann | Taylor Land & Mineral Services, Inc. | 9/10/2018 | 1882 | 741 | 18-08246 | Fayette | Texas |
| Kitchens Real Estate Partnership, | Taylor Land & Mineral Services, Inc. | 9/20/2018 | 1882 | 742 | 18-08247 | Fayette | Texas |
| Herbert Jackson | Taylor Land & Mineral Services, Inc. | 9/20/2018 | 1882 | 735 | 18-08241 | Fayette | Texas |
| Luis Flores | Taylor Land & Mineral Services, Inc. | 11/5/2018 | 1882 | 738 | 18-08243 | Fayette | Texas |
| Wayne Navarro and Joyce Navarro | Taylor Land & Mineral Services, Inc. | 8/5/2018 | 1876 | 462 | 18-06811 | Fayette | Texas |
| Providence Minerals, Ltd. | Taylor Land & Mineral Services, Inc. | 1/14/2019 | 1887 | 659 | 19-00723 | Fayette | Texas |
| Charles Weerts | Taylor Land & Mineral Services, Inc. | 6/13/2018 | 1876 | 468 | 18-06817 | Fayette | Texas |
| Michael Weerts | Taylor Land & Mineral Services, Inc. | 6/13/2018 | 1876 | 467 | 18-06816 | Fayette | Texas |
| Penelope Carter | Taylor Land & Mineral Services, Inc. | 9/11/2018 | 1876 | 888 | 18-06935 | Fayette | Texas |
| Theodora Boehm | Taylor Land & Mineral Services, Inc. | 9/11/2018 | 1876 | 890 | 18-06936 | Fayette | Texas |
| Ledbetter Volunteer Fire Dept. | Taylor Land & Mineral Services, Inc. | 9/6/2018 | 1882 | 730 | 18-08239 | Fayette | Texas |
| Casey Smith, et al | Taylor Land & Mineral Services, Inc. | 9/10/2018 | 1876 | 577 | 18-06842 | Fayette | Texas |
| Carolyn Keng | Taylor Land & Mineral Services, Inc. | 1/14/2018 | 1882 | 734 | 18-08240 | Fayette | Texas |
| Casey Smith & Jamie Manning | Taylor Land & Mineral Services, Inc. | 1/14/2018 | 1882 | 736 | 18-08242 | Fayette | Texas |
| Christine Dyer Jervis, et al | Taylor Land & Mineral Services, Inc. | 8/28/2018 | 1878 | 451 | 18-07305 | Fayette | Texas |
| JRJ Land & Cattle, et al | Taylor Land & Mineral Services, Inc. | 8/28/2018 | 1878 | 467 | 18-07306 | Fayette | Texas |
| Donald Smith | Taylor Land & Mineral Services, Inc. | 11/5/2018 | 1885 | 551 | 19-00243 | Fayette | Texas |
| Gwen Bryant | Taylor Land & Mineral Services, Inc. | 11/5/2018 | 1885 | 555 | 19-00245 | Fayette | Texas |
| Marcia G. Roberson | Taylor Land & Mineral Services, Inc. | 11/5/2018 | 1885 | 553 | 19-00244 | Fayette | Texas |
| Lillie S. Jones | Taylor Land & Mineral Services, Inc. | 11/5/2018 | 1886 | 794 | 19-00518 | Fayette | Texas |
| Monica Baker | Taylor Land & Mineral Services, Inc. | 11/5/2018 | 1886 | 792 | 19-00517 | Fayette | Texas |
| Ronald Smith | Taylor Land & Mineral Services, Inc. | 11/5/2018 | 1886 | 796 | 19-00519 | Fayette | Texas |
| Dorothy Moore | Taylor Land & Mineral Services, Inc. | 1/11/2019 | 1887 | 658 | 19-00722 | Fayette | Texas |
| Triumph Missionary Baptist Church | Taylor Land & Mineral Services, Inc. | 10/5/2018 | 1886 | 799 | 19-00521 | Fayette | Texas |

VOL I 3 3 0 PG 0 5 3 2

| Lessor | Lessee | Lease Date | Book # | Page # | Instrument | County | State |
|---|---|---|---|---|---|---|---|
| Clifton Painter, et ux | Taylor Land & Mineral Services, Inc. | 1/17/19 | 1886 | 801 | 19-00522 | Fayette | Texas |
| Ledbetter Landmark, LLC | Taylor Land & Mineral Services, Inc. | 10/23/2018 | 1886 | 788 | 19-00516 | Fayette | Texas |
| Ray George & Rita Gillum | Texian Mineral & Royalty, LLC | 10/1/17 | 1222 | 709 | 2018-00428 | Lee | Texas |
| Jeffrey Blume and Sandra R. Blume | Texian Mineral & Royalty, LLC | 11/8/2017 | 1222 | 706 | 2018-00427 | Lee | Texas |
| Jeffrey Blume and Sandra R. Blume | Texian Mineral & Royalty, LLC | 11/8/2017 | 1850 | 937 | 18-01468 | Fayette | Texas |
| Jeffrey Blume and Sandra R. Blume | Texian Mineral & Royalty, LLC | 11/8/2017 | 1850 | 934 | 18-01467 | Fayette | Texas |
| Jeffrey Blume and Sandra R. Blume | Texian Mineral & Royalty, LLC | 11/8/2017 | 1850 | 940 | 18-01469 | Fayette | Texas |
| Solis Family Properties, L.P. | Texian Mineral & Royalty, LLC | 9/6/2017 | 1851 | 350 | 18-01561 | Fayette | Texas |
| Ronald Holle, and wife Dorothy | Todd Weiss | 11/3/2017 | 1223 | 1041 | 2018-00754 | Lee | Texas |
| Fulton Quien Sabe Ranches LP | Beland Energy LLC | 4/19/2018 | 1866 | 179 | 18-04762 | Fayette | Texas |
| Marlene Schmidt Waak | Beland Energy LLC | 4/19/2018 | 1859 | 672 | 18-03468 | Fayette | Texas |
| Cindy Randermann | Taylor Land & Mineral Services, Inc. | 9/20/2018 | 1239 | 307 | 2018-04091 | Lee | Texas |
| Gaylynn Lawrence | Taylor Land & Mineral Services, Inc. | 9/20/2018 | 1239 | 309 | 2018-04093 | Lee | Texas |
| Chase Lawrence | Taylor Land & Mineral Services, Inc. | 9/20/2018 | 1239 | 311 | 2018-04095 | Lee | Texas |
| Thomas Wrinkle, et ux | Taylor Land & Mineral Services, Inc. | 9/7/2018 | 1237 | 551 | 2018-03700 | Lee | Texas |
| Rita Wrinkle | Taylor Land & Mineral Services, Inc. | 9/7/2018 | 1237 | 552 | 2018-03701 | Lee | Texas |
| Marshall Bennett | Taylor Land & Mineral Services, Inc. | 8/20/2018 | 1239 | 315 | 2018-04099 | Lee | Texas |
| Donna Phillips | Taylor Land & Mineral Services, Inc. | 9/10/2018 | 1239 | 314 | 2018-04098 | Lee | Texas |
| Jesus Delarosa | Taylor Land & Mineral Services, Inc. | 10/2/2018 | 1239 | 696 | 2018-04201 | Lee | Texas |
| Hector Chairez | Taylor Land & Mineral Services, Inc. | 8/15/2018 | 1239 | 697 | 2018-04202 | Lee | Texas |
| Jose Perez | Taylor Land & Mineral Services, Inc. | 8/15/2018 | 1239 | 698 | 2018-04203 | Lee | Texas |
| Rojelio S. Torres, et ux | Taylor Land & Mineral Services, Inc. | 9/19/2018 | 1239 | 312 | 2018-04096 | Lee | Texas |
| Candy Clark | Taylor Land & Mineral Services, Inc. | 8/2/2018 | 1239 | 695 | 2018-04200 | Lee | Texas |
| Jennifer McCormick | Taylor Land & Mineral Services, Inc. | 8/15/2018 | 1239 | 693 | 2018-04198 | Lee | Texas |
| Jon Ray, et ux | Taylor Land & Mineral Services, Inc. | 8/28/2018 | 1239 | 310 | 2018-04094 | Lee | Texas |
| Norris Fuchs | Taylor Land & Mineral Services, Inc. | 9/19/2018 | 1239 | 308 | 2018-04092 | Lee | Texas |
| Stephen Cornwell | Taylor Land & Mineral Services, Inc. | 9/20/2018 | 1239 | 306 | 2018-04090 | Lee | Texas |
| John E. Prewitt | Taylor Land & Mineral Services, Inc. | 10/9/2018 | 1239 | 694 | 2018-04199 | Lee | Texas |
| Jose Alvarez | Taylor Land & Mineral Services, Inc. | 8/20/2018 | 1239 | 313 | 2018-04097 | Lee | Texas |
| Ray Maass, et ux | Taylor Land & Mineral Services, Inc. | 8/28/2018 | 1239 | 305 | 2018-04089 | Lee | Texas |

Exhibit A – Page 9 of 19

VOL 1330 PG 0534

| Lessor | Lessee | Lease Date | Book # | Page # | Instrument# | County | State |
|---|---|---|---|---|---|---|---|
| Christine Dyer Jervis, et al | Beland Energy, LLC | 2/20/2018 | 1857 | 841 | | Fayette | Texas |
| Devon Energy Production Co., L.P. | Matrix Revolution, LLC | 1/31/2019 | 1890 | 620 | | Fayette | Texas |
| Devon Energy Production Co., L.P. | Matrix Revolution, LLC | 1/31/2019 | 1246 | 986 | | Lee | Texas |
| Donald M. Ward | Paleo Oil Company LLC | 7/26/2018 | 1233 | 1041 | 2018-02832 | Lee | Texas |
| Gary D. Ward | Paleo Oil Company LLC | 7/26/2018 | 1233 | 855 | 2018-02801 | Lee | Texas |
| Wesley Ward | Paleo Oil Company LLC | 7/26/2018 | 1233 | 856 | 2018-02802 | Lee | Texas |
| State of Texas (MF120226) | Paleo Oil Company LLC | 1/21/2020 | 1929 | 886 | | Fayette | Texas |
| Betty C. Cook | Taylor Land & Mineral Services, Inc. | 5/23/2020 | 1946 | 808 | | Fayette | Texas |
| Bonnie Orsak & husband, Daniel | Taylor Land & Mineral Services, Inc. | 5/8/2018 | 1872 | 826 | | Fayette | Texas |
| Wilbert Otto Dernehl, Jr. | Taylor Land & Mineral Services, Inc. | 5/8/2018 | 1872 | 827 | | Fayette | Texas |
| Billy Jack Albers, et al | Taylor Land & Mineral Services, Inc. | 5/28/2018 | 1874 | 83 | | Fayette | Texas |
| David Schulz | Taylor Land & Mineral Services, Inc. | 11/12/2019 | 1924 | 410 | | Fayette | Texas |
| Jason R. Adams | Taylor Land & Mineral Services, Inc. | 10/24/2019 | 1924 | 414 | | Fayette | Texas |
| Jena Adams Tally | Taylor Land & Mineral Services, Inc. | 10/24/2019 | 1924 | 413 | | Fayette | Texas |
| Ginger Faye Ebner | Taylor Land & Mineral Services, Inc. | 5/24/2018 | 1872 | 830 | | Fayette | Texas |
| Reagie Ebner & wife, Michele Ebner | Taylor Land & Mineral Services, Inc. | 8/5/2018 | 1872 | 828 | | Fayette | Texas |
| Valgene Ebner | Taylor Land & Mineral Services, Inc. | 5/15/2018 | 1872 | 829 | | Fayette | Texas |
| Chovanec Management Trust | Todd Weiss | 12/7/2017 | 1850 | 669 | | Fayette | Texas |
| Alice Kuehn Sparks | Polaris E&P, LLC | 12/6/2017 | 1220 | 217 | 2017-04149 | Lee | Texas |
| Angela Davis | HB2 Origination, LLC | 8/10/2019 | 1257 | 388 | 2019-03081 | Lee | Texas |
| Angela R. Fulcher | Taylor Land & Mineral Services, Inc. | 6/19/2018 | 1233 | 726 | 2018-02769 | Lee | Texas |
| Billy Elizondo, et ux | Taylor Land & Mineral Services, Inc. | 9/19/2018 | 124] | 98 | 2018-04614 | Lee | Texas |
| Candy Clark | Taylor Land & Mineral Services, Inc. | 8/20/2018 | 1239 | 695 | 2018-04200 | Lee | Texas |
| Carrot D. McGehee | Texian Mineral & Royalty, LLC | 5/30/2018 | 1233 | 692 | 2018-02761 | Lee | Texas |
| Chase Lawrence | Taylor Land & Mineral Services, Inc. | 9/20/2018 | 1239 | 311 | 2018-04095 | Lee | Texas |
| Cindy Randermann | Taylor Land & Mineral Services, Inc. | 9/20/2018 | 1239 | 307 | 2018-04091 | Lee | Texas |
| Elroy E. Kuehn | Polaris E&P, LLC | 12/5/2017 | 1219 | 1091 | 2017-04104 | Lee | Texas |
| Gary Gerdes | Taylor Land & Mineral Services, Inc. | 6/13/2018 | 1233 | 689 | 2018-02759 | Lee | Texas |
| Gary Gerdes | Taylor Land & Mineral Services, Inc. | 6/13/2018 | 1233 | 691 | 2018-02760 | Lee | Texas |
| Gary W. Gerdes | Paleo Oil Company, LLC | 10/12/2018 | 1241 | 99 | 2018-04615 | Lee | Texas |

| Lessor | Lessee | Lease Date | Book # | Page # | Instrument | County | State |
|--------|--------|-----------|--------|--------|-----------|--------|-------|
| Gold Endeavor Development, LLC | Taylor Land & Mineral Services, Inc. | 7/6/2018 | 1234 | 486 | 2018-03028 | Lee | Texas |
| Harold Pieratt, et ux | Taylor Land & Mineral Services, Inc. | 6/25/2018 | 1233 | 693 | 2018-02762 | Lee | Texas |
| Hector Chairez | Taylor Land & Mineral Services, Inc. | 8/15/2018 | 1239 | 697 | 2018-04202 | Lee | Texas |
| Irma R. De la Cruz | HB2 Origination, LLC | 8/10/2019 | 1257 | 391 | 2019-03084 | Lee | Texas |
| Jared Wolfe, et ux | GeoSouthern Energy Partners, LP | 2/21/2017 | 1205 | 382 | 2017-01014 | Lee | Texas |
| Jennifer N. McCormick | Taylor Land & Mineral Services, Inc. | 8/15/2018 | 1239 | 693 | 2018-04198 | Lee | Texas |
| Jesus Delarosa | Taylor Land & Mineral Services, Inc. | 10/2/2018 | 1239 | 696 | 2018-04201 | Lee | Texas |
| Jetta X-2, L.P. | Paleo Oil Company, LLC | 11/1/2018 | 1241 | 121 | 2018-04621 | Lee | Texas |
| Jetta X-2, L.P. | Paleo Oil Company, LLC | 11/1/2018 | 1879 | 773 | 2018-07583 | Lee | Texas |
| John E. Prewett, et ux | Taylor Land & Mineral Services, Inc. | 10/9/2018 | 1239 | 694 | 2018-04199 | Lee | Texas |
| John Ray, et ux | Taylor Land & Mineral Services, Inc. | 8/28/2018 | 1239 | 310 | 2018-04094 | Lee | Texas |
| Jose Alvarez | Taylor Land & Mineral Services, Inc. | 8/20/2018 | 1239 | 313 | 18-04097 | Lee | Texas |
| Jose Perez | Taylor Land & Mineral Services, Inc. | 8/15/2018 | 1239 | 698 | 2018-04203 | Lee | Texas |
| Kenneth E, Carey, et ux | HB2 Origination, LLC | 8/10/2019 | 1257 | 392 | 2019-03085 | Lee | Texas |
| Kenneth Wayne Rethke | Beland Energy, LLC | 2/26/2018 | 1228 | 94 | 2018-02833 | Lee | Texas |
| Larry Eslick, et ux | HB2 Origination, LLC | 6/3/2019 | 1254 | 1113 | 2019-02488 | Lee | Texas |
| Lee County Water Supply | Taylor Land & Mineral Services, Inc. | 9/11/2018 | 1241 | 96 | 2018-04613 | Lee | Texas |
| Marion M. Hawkins | HB2 Origination, LLC | 6/13/2019 | 1255 | 926 | 2019-02683 | Lee | Texas |
| Marion M Hawkins | HB2 Origination, LLC | 6/13/2019 | 1255 | 925 | 2019-02682 | Lee | Texas |
| Marshall Bennett | Taylor Land & Mineral Services, Inc. | 8/20/2018 | 1239 | 315 | 2018-04099 | Lee | Texas |
| Martin E. Janczak, et ux | GeoSouthern Energy Partners, LP | 3/7/2017 | 1205 | 364 | 2017-00997 | Lee | Texas |
| Mary Beth Sledge | HB2 Origination, LLC | 8/10/2019 | 1257 | 1050 | 2019-03218 | Lee | Texas |
| Metro Container, LLC | HB2 Origination, LLC | 1/24/2020 | 1267 | 1 | 2020-00506 | Lee | Texas |
| Michael S. Janczak, et ux | GeoSouthern Energy Partners, LP | 3/7/2017 | 1207 | 894 | 2017-01498 | Lee | Texas |

| Lessor | Lessee | Lease Date | Book # | Page # | Instrument | County | State |
|---|---|---|---|---|---|---|---|
| Norberto Lara Jr. | HB2 Origination, LLC | 8/10/2019 | 1257 | 389 | 2019-03082 | Lee | Texas |
| Norris Fuchs | Taylor Land & Mineral Services, Inc. | 9/19/2018 | 1239 | 308 | 2018-04092 | Lee | Texas |
| Nutshell, Inc. | Taylor Land & Mineral Services, Inc. | 6/19/2018 | 1233 | 727 | 2018-02770 | Lee | Texas |
| Nutshell, Inc. | GeoSouthern Energy Partners, LP | 3/1/2017 | 1205 | 384 | 2017-01016 | Lee | Texas |
| Placke Family Ltd, | TMRX Petroleum, LLC | 7/30/2018 | 1235 | 958 | 2018-03344 | Lee | Texas |
| Plainview Petroleum | HB2 Origination, LLC | 1/15/2020 | 1266 | 572 | 2020-00384 | Lee | Texas |
| Rafael Salazar | Taylor Land & Mineral Services, Inc. | 10/2/2018 | 1241 | 100 | 2018-04616 | Lee | Texas |
| Ray Maass, et ux | Taylor Land & Mineral Services, Inc. | 8/28/2018 | 1239 | 305 | 18-04089 | Lee | Texas |
| Rick Fulcher, Sr., et ux | GeoSouthern Energy Partners, LP | 3/1/2017 | 1205 | 383 | 2017-01015 | Lee | Texas |
| Rojelio S. Torres, et ux | Taylor Land & Mineral Services, Inc. | 9/19/2018 | 1239 | 312 | 2018-04096 | Lee | Texas |
| Roy T. Locke | HB2 Origination, LLC | 8/10/2019 | 1257 | 387 | 2019-03080 | Lee | Texas |
| Ruth A. Placke Life Estate and Ramp Farm, Ltd. | TMRX Petroleum, LLC | 7/30/2018 | 1235 | 960 | 2018-03346 | Lee | Texas |
| Shirley Kuehn Adkins | Polaris E&P, LLC | 12/6/2017 | 1220 | 605 | 2017-04221 | Lee | Texas |
| Stephanie DeAngelo | HB2 Origination, LLC | 8/10/2019 | 1258 | 329 | 2019-03265 | Lee | Texas |
| Stephen Cornwell, et ux | Taylor Land & Mineral Services, Inc. | 8/20/2018 | 1239 | 306 | 18-04090 | Lee | Texas |
| Susan Strauch | HB2 Origination, LLC | 8/10/2019 | 1257 | 390 | 2019-03083 | Lee | Texas |
| Texas Osage Royalty Pool, Inc. | Paleo Oil Company, LLC | 3/15/2018 | 1228 | 490 | 2018-01765 | Lee | Texas |
| The Sipes Living Trust | Taylor Land & Mineral Services, Inc. | 9/19/2018 | 1241 | 95 | 2018-04612 | Lee | Texas |
| Timothy & Carolyn McGhee | HB2 Origination, LLC | 6/3/2019 | 1254 | 1116 | 2019-02489 | Lee | Texas |
| Tower Rock Royalties | HB2 Origination, LLC | 1/15/2020 | 1266 | 571 | 2020-00383 | Lee | Texas |
| Vance T. Bradford | Taylor Land & Mineral Services, Inc. | 7/6/2018 | 1234 | 484 | 2018-03026 | Lee | Texas |
| Warner A. Mize | Texian Mineral & Royalty, LLC | 7/10/2017 | 1216 | 913 | 2017-03315 | Lee | Texas |
| William Placke | TMRX Petroleum, LLC | 7/30/2018 | 1235 | 959 | 2018-03345 | Lee | Texas |
| Union Pacific Railroad Company | Paleo Oil Company LLC | 10/1/2018 | 1240 | 375 | 2018-04394 | Lee | Texas |

VOL 1 3 3 0 PG 0 5 3 b

VOL 1330 PG 0537

| Lessor | Lessee | Lease Date | Instrument | County | State |
|---|---|---|---|---|---|
| Moehlman, Shirley J. H. Klaus | Gasper Rice Resources, Ltd. | 6/6/2005 | 055017 | Austin | Texas |
| Canik, Gilbert E. et al | Gasper Rice Resources, Ltd. | 6/4/2005 | 055016 | Austin | Texas |
| Huff, Judith | Carr Resources, Inc. | 8/9/2016 | 163829 | Austin | Texas |
| Horlen, Gale Huff | Carr Resources, Inc. | 8/9/2016 | 163828 | Austin | Texas |
| Barnett, Sandra F., Individually and as Independent Executrix of the Est. of James G. Barnett, deceased | Carr Resources, Inc. | 10/24/2011 | 120533 | Austin | Texas |
| Bettis, Laurie Beth Hegemeyer et al | Carr Resources, Inc. | 8/23/2016 | 165104 | Austin | Texas |
| Huff, Judith | Carr Resources, Inc. | 8/9/2016 | 163829 | Austin | Texas |
| Horlen, Gale Huff | Carr Resources, Inc. | 8/9/2016 | 163828 | Austin | Texas |
| Geisler, Evelyn | Gasper Rice Resources, Ltd. | 6/1/2005 | 055015 | Austin | Texas |
| Barry, Jyirildean M. and Alice Ann Barry | Carr Resources, Inc. | 2/5/2015 | 151302 | Austin | Texas |
| Platte, Ernest | Gasper Rice Resources, Ltd. | 7/1/2005 | 055020 | Austin | Texas |
| Pfeffer, Gloria Luedke | Gasper Rice Resources, Ltd. | 6/30/2005 | 055463 | Austin | Texas |
| Pfeffer, Woody Dean | Gasper Rice Resources, Ltd. | 7/7/2005 | 055957 | Austin | Texas |
| Potter, Verbean Gale Pfeffer et al | Carr Resources, Inc. | 1/20/2015 | 151304 | Austin | Texas |
| Pfeffer, Gary Dale | Gasper Rice Resources, Ltd. | 9/6/2005 | 056711 | Austin | Texas |
| Pfeffer, DuWayne | Carr Resources, Inc. | 2/11/2015 | 151307 | Austin | Texas |
| Pilcik, Bruce et ux | Gasper Rice Resources, Ltd. | 5/31/2005 | 054274 | Austin | Texas |
| Mertz, Daniel Charles | Gasper Rice Resources, Ltd. | 6/23/2005 | 055459 | Austin | Texas |
| Bass, Kevin Douglas | Carr Resources, Inc. | 4/17/2014 | 142366 | Austin | Texas |
| Lahrmann, Russell Paul et ux, Lisa R. | Gasper Rice Resources, Ltd. | 7/20/2005 | 055956 | Austin | Texas |
| Lahrmann, Lloyd, Ind.& as Trustee | Gasper Rice Resources, Ltd. | 7/20/2005 | 055958 | Austin | Texas |
| Kaase, Mary Ann and Angeline Ann Kaase | Gasper Rice Resources, Ltd. | 4/23/2008 | 083182 | Austin | Texas |
| Algar Land & Mineral Trust | Carr Resources, Inc. | 11/6/2014 | 150227 | Austin | Texas |
| Pomykal, Norman | Carr Resources, Inc. | 5/23/2011 | 112720 | Austin | Texas |
| Kacir Wheeler, LLC | Carr Resources, Inc. | 7/21/2017 | 174147 | Austin | Texas |
| Kacir, Sidney | Carr Resources, Inc. | 8/15/2011 | 114167 | Austin | Texas |
| Skrabanek, Dorothy | Carr Resources, Inc. | 12/23/2011 | 120531 | Austin | Texas |
| Fite, Gloria Ruth Schiller | Carr Resources, Inc. | 5/23/2011 | 112719 | Austin | Texas |

| Pomykal, Gayle | Carr Resources, Inc. | 5/23/2011 | 112721 | Austin | Texas |

| Lessor | Lessee | Lease Date | Instrument | County | State |
| --- | --- | --- | --- | --- | --- |
| Wood, William Ronnie et al | Carr Resources, Inc. | 4/22/2014 | 142372 | Austin | Texas |
| Schiller, Edward W. | Carr Resources, Inc. | 8/15/2011 | 114168 | Austin | Texas |
| Kacir, Kyle A. | Carr Resources, Inc. | 8/18/2011 | 114165 | Austin | Texas |
| Kacir, Karl W. | Carr Resources, Inc. | 8/22/2011 | 114166 | Austin | Texas |
| Kacir, Kent C. | Carr Resources, Inc. | 8/22/2011 | 114976 | Austin | Texas |
| Moody, Katherine | Carr Resources, Inc. | 6/18/2014 | 143319 | Austin | Texas |
| Alvarado, Karen | Carr Resources, Inc. | 8/3/2018 | 184902 | Austin | Texas |
| Farrow, Gayle | Carr Resources, Inc. | 12/14/2018 | 190440 | Austin | Texas |
| Bethke, Karen | Carr Resources, Inc. | 12/14/2018 | 190441 | Austin | Texas |
| Pilcik, Bruce R. et ux | Carr Resources, Inc. | 5/23/2011 | 112716 | Austin | Texas |
| Pilcik Bronson Ray et ux | Carr Resources, Inc. | 5/23/2011 | 112717 | Austin | Texas |
| Wallace, Ava Margaret | Carr Resources, Inc. | 5/24/2017 | 173314 | Austin | Texas |
| Kuehn, Edwin A. et ux | Carr Resources, Inc. | 5/30/2011 | 112718 | Austin | Texas |
| King, Hurley O. et ux | Carr Resources, Inc. | 5/30/2011 | 112723 | Austin | Texas |
| Mahon, Jerry et ux | Carr Resources, Inc. | 1/11/2019 | 190442 | Austin | Texas |
| Mahon, Jerry et ux | Carr Resources, Inc. | 5/2/2017 | 172282 | Austin | Texas |
| Crathers, Mable Dean | Carr Resources, Inc. | 5/23/2011 | 112724 | Austin | Texas |
| King, Willie Mae | Carr Resources, Inc. | 3/31/2014 | 142365 | Austin | Texas |
| King, Howard Jr. | Carr Resources, Inc. | 5/31/2017 | 173312 | Austin | Texas |
| Parker, Ora Nell | Carr Resources, Inc. | 3/31/2014 | 142363 | Austin | Texas |
| Mays, Shirleen | Carr Resources, Inc. | 3/31/2014 | 142362 | Austin | Texas |
| King, Derry Lewis | Carr Resources, Inc. | 3/31/2014 | 142358 | Austin | Texas |
| Henry, Merlean | Carr Resources, Inc. | 3/31/2014 | 142359 | Austin | Texas |
| Hall, Mable | Carr Resources, Inc. | 3/31/2014 | 142360 | Austin | Texas |
| Taylor, Genette | Carr Resources, Inc. | 3/31/2014 | 142361 | Austin | Texas |
| King, Willie Mae | Carr Resources, Inc. | 3/31/2014 | 142365 | Austin | Texas |
| Brown, Marilyn et al | Carr Resources, Inc. | 4/14/2014 | 142368 | Austin | Texas |
| Eben, Clarence | Gasper Rice Resources, Ltd. | 7/26/2005 | 055023 | Austin | Texas |
| Bass, Kevin Douglas | Carr Resources, Inc. | 9/2/2014 | 144408 | Austin | Texas |

**Part IV: Second Asset Purchase Agreement Leases**

**AI SAN ROMAN UNIT LEASES**

Recorded in the Official Records of Webb County, Texas.

| Lessor | Lessee | Recording | Date |
|---|---|---|---|
| San Roman Ranch Mineral Partners, Ltd. | Ageron Energy II, LLC | 5123/855 | 9/23/21 |

**SAMPSON-MUELLER A 4H LEASES**

Recorded in the Official Records of Fayette County, Texas.

| Lessor | Lessee | Recording | Date |
|---|---|---|---|
| Vestrine S. Mueller, et al | Humble Exploration | 129/976 | 11/30/78 |
| Charles B. Boone, et ux | Humble Exploration Company, Inc. | 129/76 | 10/19/78 |
| Charles B. Boone | Browning Oil Company | 343/535 | 10/20/92 |
| Hartford H. Prewett, et al | Justin Exploration | 263/797 | 6/16/87 |
| Hartford W. Prewett | W.H. Heatley | 283/303 | 3/20/89 |
| Clarence Chovanec, et ux | Marathon Oil Company | 351/16 | 1/22/93 |
| Monroe H. Becker, et ux | Marathon Oil Company | 348/649 | 1/22/93 |
| Ewald P. Mueller | Marathon Oil Company | 348/646 | 1/22/93 |
| Buckthorn Interests, LLC, et al | HB2 Origination, LLC | 2028/685 | 11/15/21 |

**STATLER UNIT LEASES**

Recorded in the Official Records of Fayette County, Texas, or Lee County, Texas, as is indicated below:

| Lessor | Lessee | County | Recording | Date |
|---|---|---|---|---|
| Penelope Carter | Taylor Land & Mineral Services, Inc. | Fayette | 1876/888 | 9/11/18 |
| Theodora Boehm | Taylor Land & Mineral Services, Inc. | Fayette | 1876/890 | 9/11/18 |
| Janet Matthijetz | Taylor Land & Mineral Services, Inc. | Fayette | 1876/463 | 8/8/18 |

VOL 1330 PG 0540

| Lessor | Lessee | County | Recording | Date |
|---|---|---|---|---|
| Carolynn Keng, et al | Taylor Land & Mineral Services, Inc. | Fayette | 1876/575 | 9/10/18 |
| Casey Smith, et al | Taylor Land & Mineral Services, Inc. | Fayette | 1876/577 | 9/10/18 |
| Texas Osage Royalty Pool Inc | Paleo Oil Company LLC | Fayette | 1876/459 | 8/15/18 |
| Jetta-X2, LP | Paleo Oil Company LLC | Fayette | 1879/773 | 11/1/18 |
| Larry L. Woytek, et ux | Taylor Land & Mineral Services, Inc. | Fayette | 1882/740 | 9/20/18 |
| Jason R. Adams | Taylor Land & Mineral Services, Inc. | Fayette | 1924/414 | 10/24/2019 |
| Jena Adams Tally | Taylor Land & Mineral Services, Inc. | Fayette | 1924/413 | 10/24/2019 |
| David Schulz. | Taylor Land & Mineral Services, Inc. | Fayette | 1924/410 | 11/12/2019 |
| Billy Jack Albers, et al | Taylor Land & Mineral Services, Inc. | Fayette | 1874/83 | 5/28/2018 |
| Ronald Holle, and wife Dorothy | Todd Weiss | Lee | 1223/1041 | 11/3/17 |
| Ray George & Rita Gillum | Texian Mineral & Royalty, LLC | Lee | 1222/709 | 10/1/17 |
| Jeffrey Blume and Sandra R. Blume | Texian Mineral & Royalty, LLC | Fayette | 1850/931 | 11/8/17 |
| Jeffrey Blume and Sandra R. Blume | Texian Mineral & Royalty, LLC | Fayette | 1850/934 | 11/8/17 |
| Jeffrey Blume and Sandra R. Blume | Texian Mineral & Royalty, LLC | Fayette | 1850/937 | 11/8/17 |
| Wayne Navarro and Joyce Navarro | Taylor Land & Mineral Services, Inc. | Fayette | 1876/462 | 8/5/18 |
| Fulton Quein Sabe Ranches | TMRX Petroleum, LLC. | Lee & Fayette | 1232/1147 1866/179 | 4/19/18 |
| Marlene Schmidt Waak | TMRX Petroleum, LLC. | Lee & Fayette | 1228/0095 1859/672 | 4/19/18 |
| William E. Budnik | Paleo Oil Company LLC | Lee | 1233/1046 | 7/19/2018 |
| Stanley Budnik | Paleo Oil Company LLC | Lee | 1233/1054 | 7/19/2018 |
| Jerry L. Schafer | Paleo Oil Company LLC | Lee | 1233/1050 | 7/19/18 |
| Ginger Faye Ebner | Taylor Land & Minerals Services, Inc. | Fayette | 1872/830 | 5/24/2018 |
| Texas Osage Royalty Pool | Paleo Oil Company LLC | Fayette | 1874/610 | 5/24/18 |
| Charles Weerts | Taylor Land & Mineral Services, Inc. | Fayette | 1876/467 | 6/13/18 |
| Michael Weerts | Taylor Land & Mineral Services, Inc. | Fayette | 1876/468 | 6/13/18 |
| Keith Arthur Weerts | Taylor Land & Mineral Services, Inc. | Fayette | 1920/369 | 11/8/19 |
| Providence Minerals, Ltd. | Taylor Land & Mineral Services, Inc. | Fayette | 1887/659 | 1/14/19 |
| Willfred G. Foehr, et ux | Taylor Land & Mineral Services, Inc. | Fayette | 1876/465 | 8/10/18 |
| Taylor Land & Mineral Services, Inc. | Paleo Oil Company LLC | Fayette | 1878/476 | 10/15/18 |

Exhibit A – Page 16 of 19

| Lessor | Lessee | County | Recording | Date |
|---|---|---|---|---|
| Thomas Lowery | Taylor Land & Mineral Services, Inc. | Fayette | 1876/464 | 8/5/18 |
| Hugo Rodriguez, et ux | Taylor Land & Mineral Services, Inc. | Fayette | 1878/439 | 8/27/18 |
| Ledbetter Volunteer Fire Dept. | Taylor Land & Mineral Services, Inc. | Fayette | 1878/440 1882/730 | 9/6/18 |
| Union Pacific Railroad Company | Paleo Oil Company LLC | Fayette | 1878/433 | 10/1/18 |
| State of Texas (MF120225) | Paleo Oil Company LLC | Lee | 1266/1160 | 1/21/202 |
| Christine Dyer Jervis and Jon H. Jervis | Taylor Land & Mineral Services, Inc. | Fayette | 1878/471 | 8/28/18 |
| Robert Reid, et ux | Taylor Land & Mineral Services, Inc. | Fayette | 1878/445 | 8/31/18 |
| Clinton Painter, et ux | Taylor Land & Mineral Services, Inc. | Fayette | 1886/801 | 1/7/18 |
| Maida Lucio | Taylor Land & Mineral Services, Inc. | Fayette | 1924/412 | 11/12/19 |
| Taylor Land & Mineral Services, Inc. | Paleo Oil Company LLC | Fayette | 1878/473 | 10/15/18 |
| Bruce Burleson | Taylor Land & Mineral Services, Inc. | Fayette | 1882/723 | 8/13/18 |
| Carol Timme | Taylor Land & Mineral Services, Inc. | Fayette | 1882/724 | 10/10/18 |
| Dorothy Rather | Taylor Land & Mineral Services, Inc. | Fayette | 1882/725 | 10/9/18 |
| Ledbetter Cemetery Assoc. | Taylor Land & Mineral Services, Inc. | Fayette | 1878/446 | 8/28/18 |
| Joan Goehring | Taylor Land & Mineral Services, Inc. | Fayette | 1878/442 | 8/10/18 |
| Robin Zapalac | Taylor Land & Mineral Services, Inc. | Fayette | 1878/469 | 8/28/18 |
| Christine Jervis | Taylor Land & Mineral Services, Inc. | Fayette | 1878/470 | 8/28/18 |
| Lillian Dyer Trust | Taylor Land & Mineral Services, Inc. | Fayette | 1878/444 | 8/28/18 |
| Curtis Moore | Taylor Land & Mineral Services, Inc. | Fayette | 1878/447 | 9/10/18 |
| Erma Webster | Taylor Land & Mineral Services, Inc. | Fayette | 1882/739 | 9/10/18 |
| Hubert Silva and wife Ruby | Taylor Land & Mineral Services, Inc. | Fayette | 1878/449 | 10/4/18 |
| Rita Clay | Taylor Land & Mineral Services, Inc. | Fayette | 1878/450 | 10/5/18 |
| Kenneth Lehmann | Taylor Land & Mineral Services, Inc. | Fayette | 1882/741 | 9/10/18 |
| Kitchens Real Estate Partnership, Ltd. | Taylor Land & Mineral Services, Inc. | Fayette | 1882/742 | 9/20/18 |
| Herbert Jackson | Taylor Land & Mineral Services, Inc. | Fayette | 1882/735 | 9/20/18 |
| Luis Flores | Taylor Land & Mineral Services, Inc. | Fayette | 1882/738 | 11/5/18 |
| Carolynn Keng | Taylor Land & Mineral Services, Inc. | Fayette | 1882/734 | 1/14/18 |
| Casey Smith & Jamie Manning | Taylor Land & Mineral Services, Inc. | Fayette | 1882/736 | 1/14/18 |
| Christine Dyer Jervis, et al | Taylor Land & Mineral Services, Inc. | Fayette | 1878/451 | 8/28/18 |

Exhibit A – Page 17 of 19

| Lessor | Lessee | County | Recording | Date |
|---|---|---|---|---|
| Land & Cattle, et al | Taylor Land & Mineral Services, Inc. | Fayette | 1878/467 | 8/28/18 |
| Donald Smith | Taylor Land & Mineral Services, Inc. | Fayette | 1885/551 | 11/5/18 |
| Gwen Bryant | Taylor Land & Mineral Services, Inc.- | Fayette | 1885/555 | 11/5/18 |
| Marcia G. Roberson | Taylor Land & Mineral Services, Inc. | Fayette | 1885/553 | 11/5/18 |
| Lillie S. Jones | Taylor Land & Mineral Services, Inc. | Fayette | 1886/794 | 11/5/18 |
| Monica Baker | Taylor Land & Mineral Services, Inc. | Fayette | 1886/792 | 11/5/18 |
| Ronald Smith | Taylor Land & Mineral Services, Inc. | Fayette | 1886/796 | 11/5/18 |
| Dorothy Moore | Taylor Land & Mineral Services, Inc. | Fayette | 1887/658 | 1/11/19 |
| Triumph Missionary Baptist Church | Taylor Land & Mineral Services, Inc. | Fayette | 1886/799 | 10/5/18 |
| Ledbetter Landmark, LLC | Taylor Land & Mineral Services, Inc. | Fayette | 1886/788 | 10/23/18 |
| Jose Alvarez | Taylor Land & Mineral Services, Inc. | Lee | 1239/313 | 8/20/18 |
| Ronnie Blasig and Sandra Blasig | Taylor Land & Mineral Services, Inc. | Fayette | 1892/330 | 9/20/18 |
| Jessie and Walter Spates | Taylor Land & Mineral Services, Inc. | Fayette | 1924/408 | 11/4/19 |
| Porfirio Flores Jr et ux | Taylor Land & Mineral Services, Inc. | Fayette | 1924/422 | 10/24/19 |
| Benita J Thomas | Taylor Land & Mineral Services, Inc. | Fayette | 1920/375 | 10/24/19 |
| Patricia A Winkfield | Taylor Land & Mineral Services, Inc. | Fayette | 1920/374 | 10/24/19 |
| Kenneth Fillmore | Taylor Land & Mineral Services, Inc. | Fayette | 1920/373 | 10/24/19 |
| Loyel Fillmore | Taylor Land & Mineral Services, Inc. | Fayette | 1924/423 | 10/24/19 |
| Lee Johnson | Taylor Land & Mineral Services, Inc. | Fayette | 1926/305 | 10/24/19 |
| Karen Sanchez | Taylor Land & Mineral Services, Inc. | Fayette | 1924/416 | 10/24/19 |
| Patricia Ann Barnett | Taylor Land & Mineral Services, Inc. | Fayette | 1924/415 | 10/24/19 |
| Patricia B King- Boto | Taylor Land & Mineral Services, Inc. | Fayette | 1931/21 | 10/24/19 |
| Beverly Mire | Taylor Land & Mineral Services, Inc. | Fayette | 1931/22 | 10/24/19 |
| Jack E Stork | Taylor Land & Mineral Services, Inc. | Fayette | 1920/372 | 10/24/19 |
| Austin King III | Taylor Land & Mineral Services, Inc. | Fayette | 1924/421 | 11/15/19 |
| Donald Ray King | Taylor Land & Mineral Services, Inc. | Fayette | 1924/420 | 11/18/19 |
| Douglas Ulrich | Taylor Land & Mineral Services, Inc. | Fayette | 1926/304 | 12/17/19 |
| Margie Wilkerson | Taylor Land & Mineral Services, Inc. | Fayette | 1928/697 | 1/13/2020 |
| Doris Kimble | Taylor Land & Mineral Services, Inc. | Fayette | 1926/300 | 11/8/2019 |
| Dexter Brown | Taylor Land & Mineral Services, Inc. | Fayette | 1926/306 | 12/5/2019 |

Exhibit A – Page 18 of 19

| Lessor | Lessee | County | Recording | Date |
|--------|--------|--------|-----------|------|
| Clara Burke | Taylor Land & Mineral Services, Inc. | Fayette | 1926/301 | 11/8/2019 |
| Clara B Wilkerson | Taylor Land & Mineral Services, Inc. | Fayette | 1926/302 | 11/8/2019 |
| Bernice Hill | Taylor Land & Mineral Services, Inc. | Fayette | 1926/303 | 11/8/2019 |
| Henry H Hernandez et ux | Taylor Land & Mineral Services, Inc. | Fayette | 1924/406 | 4/12/2019 |
| Fayette County | HB2 Origination, LLC | Fayette | 1995/892 | 3/10/2021 |
| Nina L. Batts | HB2 Origination, LLC | Fayette | 1992/521 | 5/6/2021 |
| Maybell Lott | HB2 Origination, LLC | Fayette | 192/520 | 5/6/2021 |

**ANIMAL 2H LEASES**

Recorded in the Official Records of Lee County, Texas:

| Lessor | Lessee | Date | Recording |
|--------|--------|------|-----------|
| Gladys Marie Prine | Ironrock Webb Energy Group, LLC | 9/30/2019 | 1260/372 |
| Pearly Louise Watts Els | Ironrock Webb Energy Group, LLC | 9/30/2019 | 1260/370 |
| Linda Ruth West Stork | Ironrock Webb Energy Group, LLC | 9/30/2019 | 1260/368 |
| David Westley Stork | Ironrock Webb Energy Group, LLC | 9/30/2019 | 1260/364 |
| Amy Kate Stork | Ironrock Webb Energy Group, LLC | 9/30/2019 | 1260/366 |
| Janet Simmang | Ironrock Webb Energy Group, LLC | 9/5/2019 | 1260/362 |
| Shawna Hall Salas | Ironrock Webb Energy Group, LLC | 10/11/2019 | 1260/374 |
| Patrick Creppel | Ironrock Webb Energy Group, LLC | 9/5/2019 | 1260/360 |
| Timothy Christopher Hall | Ironrock Webb Energy Group, LLC | 10/11/2019 | 1260/376 |
| Nikki L. Alston and Kenneth W. Alston | Prominence Oil & Gas, LLC | 6/20/2021 | 1301/313 |
| Ronald Thomas Hall | Prominence Oil & Gas, LLC | 6/15/2021 | 1302/684 |

VOL 1330 PG 0543

09/20/2022 at 12:14 PM
# 2022-03954
FILED FOR RECORD
SHARON BLASIG
COUNTY CLERK
LEE COUNTY, TX

_Space above for County Recorder's Use_

# FIRST AMENDED AND RESTATED
# WELLBORE INTEREST DEED OF TRUST, MORTGAGE, ASSIGNMENT OF AS-EXTRACTED COLLATERAL, SECURITY AGREEMENT, FIXTURE FILING AND FINANCING STATEMENT

## FROM

### ALPINE SUMMIT FUNDING LLC,
as Mortgagor

## TO

### MARCUS SIMPSON,
as Trustee

## FOR THE BENEFIT OF

### UMB BANK, N.A.,
as Indenture Trustee and Mortgagee
for the benefit of itself and the Secured Parties

**Dated as of September 12, 2022**

13581964v1