**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 23-90739 (DRJ) |
| **ALPINE SUMMIT ENERGY** | § | |
| **PARTNERS, INC.** *et al.*, | § | Chapter 11 |
| | § | |
| Debtors.[1] | § | |

**RESERVATION OF RIGHTS AND LIMITED OBJECTION OF MATRIX
REVOLUTION, LLC & P&B MINERALS MANAGEMENT LLC**
[Relates to Dkt. No. 5]

Matirx Revolution, LLC and P&B Minerals Management LLC (collectively, "Matrix"), respectfully file this reservation of rights and limited objection with respect to the *Debtors' Emergency Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 363, 363, 364, & 507 and Fed. R. Bankr. P. 2002, 4001, and 9014 (I) Approving Postpetition Financing; (II) Allowing Use of Cash Collateral; (III) Granting Liens and Providing Superpriority Administrative Expense Status; (IV) Granting Adequate Protection; (V) Modifying Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief*, at Dkt. No. 5 (the "DIP Motion").

**RESERVATION OF RIGHTS & LIMITED OBJECTION**

1.      Matrix is a royalty and working interest owner with respect to certain wells debtor Ironroc Energy Properties ("Ironroc") operates (collectively, the "Matrix Interests").[2]

2.      Matrix generally does not oppose the relief sought in the DIP Motion.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification number, are Alpine Summit Energy Partners, Inc. (3755), HB2 Origination, LLC (6760), Ageron Energy II, LLC (1436), Ironroc Energy Partners LLC (9801), Ageron Ironroc Energy, LLC (N/A), Alpine Summit Energy Investors, Inc. (4428), and Alpine Carbon, LLC (N/A). The location of the Debtors' service address is: 3322 West End Ave, Suite 450, Nashville, TN 37203.

[2] The Matrix interests include royalty and working interests in the Gonzo B 4H, Gonzo B 5H, and Grover A 1H wells, and royalty interests in the Constantine 1H, Constantine 2H, Beaker B 3H, and Statler 1H wells.

1

3.     Matrix further understands from the pleadings and representations of counsel that the Debtors are not seeking to use any non-debtor property interests, including any production attributable to non-debtor royalty and working interest holders and proceeds of the same, as Cash or DIP Collateral (as those terms are defined in the DIP Motion).

4.     However, there remains ambiguity as to how the Debtors intend to adequately segregate these non-debtor interests from the Cash and DIP Collateral.  Matrix understands that proceeds of its production, along with the production of other non-debtor working and royalty interest holders, is paid into an operating account held by a Debtor.  It is unclear whether the DIP Lender is asserting a lien on this account or whether proceeds attributable to sources other than non-debtor working or royalty interests are commingled within any such account.  Further, the Debtors failed to account for and transfer to Matrix (and similarly situated royalty and working interest holders) pre-petition production proceeds owed on account of their interests.[3]  In addition, while the DIP Motion excludes "Other Cash" and "Non-DIP Borrower Assets" from the Cash and DIP Collateral subject to the adequate protection package proposed for the DIP Lender, these terms, read literally, are defined to include only assets of affiliates of the non-debtors (and proceeds of the same).[4]  The interests of non-debtor entities unaffiliated with the Debtors are not afforded the benefit of a similar explicit carve-out.

5.     To avoid any confusion as to what interests may constitute Cash or DIP Collateral now or subsequently, and to protect the non-estate property interests of working and royalty interest holders unaffiliated with the Debtors, Matrix respectfully requests

---

[3] Supplemental Royalty/WI Motion (defined below), and supporting declaration of Coley Brown.

[4] DIP Motion, at p. 5-7.

clarification that any interests of such working and royalty interest holders do not constitute Cash or DIP Collateral and otherwise are unaffected by the final order.  Matrix further requests confirmation that any proceeds attributable to non-debtor interests will remain appropriately segregated from proceeds of the Debtors' interests.  Matrix objects to entry of a final DIP order that includes the use of non-debtor working and royalty interest property and proceeds as Cash or DIP Collateral.  Inclusion of the following language within any final order would address Matrix's concern:

> For the avoidance of doubt, any property interests of Matrix Revolution, LLC and/or P&B Minerals Management, LLC (collectively, "Matrix"), including any royalty and working interests and production attributable to the same (including proceeds of such production), do not constitute Cash or DIP Collateral and otherwise are not affected by this Order.  Further, Any production or related proceeds attributable to non-debtor royalty and/or working-interests received by the Debtors shall be segregated and/or otherwise remain identifiable by the Debtors as non-estate property of the applicable royalty and/or working interest holder.

6.     The DIP Motion also has some ambiguity as to whether the Debtors are seeking to prime liens of parties other than "Vendors."  To the extent the Debtors are seeking to prime any liens of non-vendor working interest and royalty interest holders that constitute Permitted Prior Liens (as defined in the DIP Motion), Matrix objects to such relief unless and until the Debtors can demonstrate that Matrix is adequately protected.  As set forth below, Matrix has a perfected statutory lien on any production (and proceeds) attributable to its interests.[5]

---

[5] Matrix also has perfected security interests under recorded memorandums of joint operating agreements.  Based on the Debtors' pleadings and representations to date, the leases and related interests subject to liens under the joint operating agreements appear to have been assigned to non-debtor affiliates.  Matrix reserves all rights with respect to any such liens.

7.     Finally, while the Debtors are seeking authority to pay prepetition amounts owed to royalty and working interest holders like Matrix,[6] as of the date of this filing, the Debtors' request for such authority has not been fully granted and Matrix has not received payment for certain prepetition production attributable to its royalty and working interests.  Until Matrix is paid on account of prepetition obligations owed to it, Matrix retains an automatically perfected priority lien on any proceeds of its working and royalty interests.[7]  Such perfected lien attaches to any production attributable to Matrix's interest both prior to and after severance, and further continues to attach to any proceeds.[8]  "Proceeds" is defined broadly and can constitute subsequent advances or other value a debtor received on account of such proceeds.[9]  Such lien continues uninterrupted until the obligations are paid, including with respect to any commingled proceeds.[10]

8.     Accordingly, pending approval of the Supplemental Motion and payment of any prepetition royalty and working interest obligations owed to Matrix, Matrix respectfully requests adequate protection in the form of replacement liens and superpriority administrative expense claims under Bankruptcy Code section 364(c), solely to the extent of any diminution in value of Matrix's interest in Cash or DIP Collateral, if any.  Inclusion of the following language within any final order would address Matrix's concern:

---

[6] *See Debtors' Emergency Supplemental Motion for Entry of a Supplemental Order (I) Authorizing Debtors to Honor Prepetition Obligations to Holders of Royalty Interests and Overriding Royalty Interests and (II) Granting Related Relief*, at Dkt. No. 166 (the "Supplemental Royalty/WI Motion").

[7] Tex. Prop. Code §§ 67.002 & 67.004, 67.005(b), & 67.007.

[8] *Id*., at §§ 67.002.

[9] *See Garner v. Knoll, Inc. (In re Tusa-Expo Holdings, Inc.*), 811 F.3d 786 (5th Cir. 2016) (holding that security interest in accounts receivable and proceeds continued uninterrupted through a subsequent cash sweep).  Further, in a persuasive opinion, retired U.S. Bankruptcy Court Judge Hale applied the UCC's broad definition of "proceeds" and the teachings of *Garner v. Knoll* to an Oklahoma statute upon which the Texas statute is based to find that the liens of oil gas interest holders continued uninterrupted through a lender's re-advancement of swept proceeds.  *See White Operating Company v. Bank of America, N.A.,* Adv. No. 16-03158 (Bankr. N.D. Tex. Mar. 28, 2019) [Dkt. No. 122].

[10] Tex. Prop. Code §§ 67.002(b)-(c) & (f) & 67.005.

Any liens of Matrix that were valid, perfected and non-avoidable immediately prior to the Petition Date or that are perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b) constitute Permitted Prior Liens that shall not be subject to any priming provision of this Order.  Further, subject to payment of any valid obligations owed to Matrix pursuant to the Debtors' motions for entry of orders authorizing payments of certain prepetition royalty and working interests at Dkt. Nos. 12 & 166, with respect to any Cash or DIP Collateral that constitutes proceeds of production attributable to Matrix's royalty and working interests, Matrix shall receive as adequate protection of its interest in such Cash or DIP Collateral, replacement liens on the Cash or DIP Collateral to the same extent, validity, and priority as any Permitted Prior Lien of Matrix, and an administrative expense claim under Bankruptcy Code section 364(c), in each case, solely to the extent of any diminution of Matrix's interest in such Cash or DIP Collateral, if any.

### EXTENSION OF OBJECTION DEADLINE & RESERVATION OF RIGHTS

9.     Based on the parties' continued discussions regarding a consensual resolution of Matrix's concerns and in an effort to avoid unnecessary filings, counsel for the Debtors and Matrix agreed to an extension of any objection deadline for Matrix until and through July 31, at noon.  To the extent Court approval is necessary for the agreed extension, Matrix respectfully hereby requests such approval.

10.     Matrix reserves all rights to make any other objections at any hearing on the DIP Motion.

### PRAYER

For the reasons set forth herein, Matrix respectfully requests the Court to include within any final order approving the DIP Motion provisions: (i) confirming that any interest of non-debtor working and royalty interest holders does not constitute Cash or DIP Collateral and will be adequately segregated; (ii) preserving the priority of any Permitted Prior Liens of Matrix consistent

with appliable law; (iii) granting Matrix adequate protection as set forth herein; and (v) granting

Matrix any other relief to which it may be entitled at law or in equity.

*** *Remainder of Page Intentionally Left Blank* ***

Dated: July 28, 2023
Houston, Texas

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

By: */s/ Bob B. Bruner*
Bob B. Bruner (SBT 24062637)
William R. Greendyke (SBT 08390450)
Maria Mokrzycka (SBT 24119994)
1301 McKinney Street, Suite 5100
Houston, TX 77010
Telephone: (713) 651-5151
Email: bob.bruner@nortonrosefulbright.com
Email: william.greendyke@nortonrosefulbright.com
Email: maria.mokrzycka@nortonrosefulbright.com

*Counsel for Matrix Revolution, LLC and P&B*
*Minerals Management LLC*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 28, 2023, a true and correct copy of the foregoing document was filed and served via the Court's electronic case filing and noticing system to all parties registered to receive electronic notices in this matter.

/s/ Bob B. Bruner
Bob B. Bruner