```
                    UNITED STATES BANKRUPTCY COURT
                  SOUTHERN DISTRICT OF TEXAS (HOUSTON)

                                       .
IN RE:                                 .  Case No. 23-90739
                                       .  Chapter 11
ALPINE SUMMIT ENERGY                   .
PARTNERS, INC., et al.,                .  515 Rusk Street
                                       .  Houston, TX 77002
              Debtors.                 .
                                       .  Monday, July 24, 2023
. . . . . . . . . . . . . . . .        .  12:00 p.m.
```

TRANSCRIPT OF EMERGENCY MOTION - DEBTORS EMERGENCY MOTION FOR
ENTRY OF (A) AN ORDER (I) APPROVING BIDDING PROCEDURES FOR THE
 SALE OF THE DEBTORS ASSETS, (II) APPROVING BID PROTECTIONS,
  (III) SCHEDULING CERTAIN DATES WITH RESPECT THERETO, (IV)
   APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (V)
 APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT PROCEDURES, AND
 (B) AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO DEFINITIVE
                 PURCHASE AGREEMENTS [137];
       EMERGENCY MOTION , MOTION TO COMPEL (I) DEBTOR IRONROC
  ENERGY PARTNERS, LLC TO EXECUTE TEXAS RAILROAD COMMISSION
 CHANGE OF OPERATOR FORM, (II) REQUIRING DEBTORS TO TURNOVER
  WELL, LAND, LEASE, AND ACCOUNTING FILES, AND (III) RELATED
                      RELIEF [153]
            BEFORE THE HONORABLE DAVID R. JONES
            UNITED STATES BANKRUPTCY COURT JUDGE

TELEPHONIC APPEARANCES CONTINUED.

Audio Operator:          Courtroom ECRO Personnel

Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46048
                         (855) 873-2223
                         www.accesstranscripts.com

     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
TELEPHONIC APPEARANCES (Continued):


For the Debtors:              Porter Hedges LLP
                              By:  ERIC MICHAEL ENGLISH, ESQ.
                                   M. SHANE JOHNSON, ESQ.
                                   HEATHER HATFIELD, ESQ.
                                   JAMES KEEFE, ESQ.
                                   HARRIS STAMEY, ESQ.
                              1000 Main Street, 36th Floor
                              Houston, TX 77002

                              (713) 226-6612

For the Ad Hoc
Committee of Drilling         Quinn Emanuel Urquhart & Sullivan
Partnership Claimants         By:  BENJAMIN I. FINESTONE, ESQ.
and Development of            51 Madison Avenue, 22nd Floor
Partnership Claimant          New York, NY 10010
Committee:
                              (212) 849-7000

For Bank7, an Oklahoma
Banking Corporation:          Jackson Walker LLP
                              By:  BRUCE J. RUZINSKY, ESQ.
                              1401 McKinney Street, Suite 1900
                              Houston, TX 77010
                              (713) 752-4200

                              Jackson Walker LLP
                              By:  MICHAEL S. HELD, ESQ.
                              2323 Ross Avenue, Suite 600
                              Dallas, TX 75201
                              (214) 953-6000

For Knight Energy
Services:                     Dore Rothberg Law, P.C.
                              By:  MITCHELL AYER, ESQ.
                                   CONNOR SMITH, ESQ.
                              16224 Park Ten Place Drive
                              Suite 700
                              Houston, TX 77084
                              (281) 829-1555

For Magnolia Oil & Gas
Operating LLC:                Liskow Lewis
                              By:  MICHAEL D. RUBENSTEIN, ESQ.
                              1001 Fannin Street, Suite 1800
                              Houston, TX 77002
                              (713) 651-2953
```

| For Paleo Oil Company, LLC: | Sanders PLLC<br>By:  MICHAEL C. SANDERS, ESQ.<br>5850 San Felipe, Suite 500<br>Houston, TX 77057<br>(713) 493-7547 |
|---|---|
| For Cameron International Inc., et al.: | MehaffyWeber, P.C.<br>By:  HOLLY HAMM, ESQ.<br>2615 Calder Avenue, Suite 800<br>Beaumont, TX 77702<br>(409) 835-5011 |
| For Husch Blackwell LLP: | Husch Blackwell LLP<br>By:  LYNN HAMILTON BUTLER, ESQ.<br>111 Congress Avenue, Suite 1400<br>Austin, TX 78701<br>(512) 479-9758 |
| For Legacy Energy Services: | Pennell Law Firm PLLC<br>By:  KEVIN PENNELL, ESQ.<br>19 Briar Hollow Lane, Suite 110<br>Houston, TX 77027<br>(713) 965-7568 |
| For Dallas Petroleum Group, LLC: | O'ConnorWechsler PLLC<br>By:  ANNIE CATMULL, ESQ.<br>4400 Post Oak Parkway, Suite 2360<br>Houston, TX 77027<br>(713) 562-6336 |
| For the United States Trustee: | Office of the United States Trustee<br>By:  CHRISTOPHER R. TRAVIS, ESQ.<br>515 Rusk Street, Suite 3516<br>Houston, TX 77002<br>(202) 590-7962 |
| For U.S. Securities & Exchange Commission: | U.S. Securities & Exchange Commission<br>By:  JOLENE WISE, ESQ.<br>175 West Jackson Boulevard, Suite 1450<br>Chicago, IL 60604-2710 |
| For Haliburton Energy Services, Inc.: | Weycer Kaplan Pulaski & Zuber, P.C.<br>By:  JEFF CARRUTH, ESQ.<br>24 Greenway Plaza #2050<br>Houston, TX 77046<br>(713) 341-1158 |

| | |
|---|---|
| For CommerceOne Bank: | Christian & Small LLP<br>By:  DAN SPARKS, ESQ.<br>1800 Financial Center<br>505 North 20th Street<br>Birmingham, AL 35203<br>(205) 250-6670 |
| For San Roman Ranch<br>Mineral Partners,<br>Ltd.: | Uloth, P.C.<br>By:  JAMES ULOTH, ESQ.<br>5080 Spectrum Drive, Suite 1000 East<br>Addison, TX 75001-4648<br>(469) 791-0411 |
| For Grappler Pressure<br>Pumping, LLC: | Bonds Ellis Eppich Schafer Jones LLP<br>By:  AARON GUERRERO, ESQ.<br>420 Throckmorton Street, Suite 1000<br>Fort Worth, TX 76102<br>(817) 405-6914 |
| For Aldonsa, Inc.<br>d/b/a Oilfield<br>Instrumentation USA: | Gordon Arata<br>By:  ARMISTEAD LONG, ESQ.<br>400 East Kaliste Saloom Road<br>Suite 4200<br>Lafayette, LA 70508-8517<br>(337) 237-0132 |
| For Craig Perry: | Law office of Sesha Kalapatapu<br>By:  SESHA KALAPATAPU, ESQ.<br>1001 Texas Avenue<br>Houston, TX 77002<br>(832) 398-1771 |
| For Razorback Direct<br>Oilfield Solutions &<br>Services LLC: | The Law Office of H. Kent Aguillard<br>Attorney at Law<br>By:  H. KENT AGUILLARD, ESQ.<br>141 South Sixth Street<br>Eunice, LA 70535<br>(337) 457-9331 |
| For Ageron Energy, LLC<br>and Chapman<br>Engineering, Inc.: | Law Offices of William B. Kingman<br>P.C.<br>By:  WILLIAM KINGMAN, ESQ.<br>3511 Broadway Street<br>San Antonio, TX 78209<br>(210) 829-1199 |

| | |
|---|---|
| For AES Drilling Fluids, LLC: | Phillips Murrah, P.C.<br>By:  CLAYTON D. KETTER, ESQ.<br>101 North Robinson Avenue, Suite 1300<br>Oklahoma, OK 73102<br>(405) 235-4100 |
| For Kuvare Insurance Services LP: | Orrick Herrington & Sutcliffe LLP<br>By:  RANIERO D'AVERSA, ESQ.<br>51 West 52nd Street<br>New York, NY 10019-6142<br>(212) 506-5000 |
| For Border Well Services, Inc.: | Jordan & Ortiz P.C.<br>By:  SHELBY A. JORDAN, ESQ.<br>500 North Shoreline Boulevard<br>Suite 804<br>Corpus Christi, TX 78401<br>(361) 884-5678 |
| For the Official Committee of Unsecured Creditors: | Reed Smith LLP<br>By:  PAUL MOAK, ESQ.<br>     OMAR J. ALANIZ, ESQ.<br>1221 McKinney Street, Suite 2100<br>Houston, TX 77010<br>(713) 469-3800 |
| For Goldston Oil Corporation: | Eversheds Sutherland (US) LLP<br>By:  MARK D. SHERRILL, ESQ.<br>1001 Fannin Street #3700<br>Houston, TX 77002<br>(713) 470-6106 |
| For Dos Caminos: | Bracewell LLP<br>By:  WILLIAM A. WOOD III, ESQ.<br>711 Louisiana Street, Suite 2300<br>Houston, TX 77002-2770<br>(713) 223-2300 |
| For Charter Pipe: | Gray Reed<br>By:  MICHEAL BISHOP, ESQ.<br>1601 Elm Street, Suite 4600<br>Dallas, TX 75201<br>(214) 954-4135 |

```
For DrilTech, LLC:        Kean Miller LLP
                          By:  MICHELLE V. FRIERY, ESQ.
                          Pennzoil South Tower
                          711 Louisiana Street, Suite 1800
                          Houston, TX 77002
                          (713) 844-3000

For Rocking W Energy      McGinnis Lochridge LLP
Services:                 By:  CHRIS HALGREN, ESQ.
                          609 Main Street, Suite 2800
                          Houston, TX 77002
                          (713) 615-8500

Also Present:             STEPHANIE MCKERNAN, ESQ.

                          WILLIAM LODAN
```

1          (Proceedings commence at 12:00 p.m.)

2          THE COURT:  All right.  Good afternoon, everyone.

3    Please be seated.

4          UNIDENTIFIED:  Good afternoon.

5          ELECTRONIC VOICE:  Conference muted.

6          THE COURT:  All right.  Good afternoon, everyone.

7    This is Judge Jones.  The time is twelve o'clock noon.  Today

8    is July the 24th, 2023.  This is the docket for Houston, Texas.

9    On the noon docket, we have the jointly-administered cases

10   under Case Number 23-90739, Alpine Summit Energy Partners, Inc.

11         Folks, please don't forget to record your electronic

12   appearance.  It's a quick trip to the website, a couple of

13   mouse clicks, applies to even those folks who are in the

14   courtroom this afternoon.  It is the way we note your official

15   appearance.  For those folks in the courtroom, if you choose to

16   speak, could you please make sure you come to the lectern to

17   speak.  That's simply the only place we have a camera, and we

18   want you to both be seen and be heard.

19         For those folks who are on GoToMeeting, I have

20   activated the hand-raising feature.  If you know you're going

21   to be speaking, if you would give me a "five star" on your

22   telephone?  I'll get you unmuted.  You can, of course, change

23   your mind at any time.

24         Either way, first time that you speak, if you would

25   please state your name and who you represent the first time you

1   step up to the mic?  Serves as a good point of reference for

2   the court reporters in the event that a transcript request is

3   made.

4          Finally, we are recording this afternoon using

5   CourtSpeak and we will get the audio up on the docket shortly

6   after the conclusion of the hearing.  All right.  Again, folks,

7   who are on GoToMeeting, if you know you're going to be

8   speaking, "five star" on your phone.

9          All right.  Mr. English, good afternoon.

10          MR. ENGLISH:  Good morning, Your Honor -- afternoon,

11  as it is.  Eric English from Porter Hedges, on behalf of the

12  debtors.  I'm joined by several of my colleagues today:  Shane

13  Johnson, Heather Hatfield, and Harris Stamey.  We're here on

14  bidding procedures and we're ready to proceed with that.

15          Another party has filed an emergency motion to compel

16  the debtors to transfer operatorship over some assets.  The

17  debtors oppose hearing that today on an emergency basis and

18  oppose that motion.  I will tell you, there are discussions

19  going on in the hall as we speak about possibly adjourning that

20  or resolving it in some way.  We'll have to report to you on

21  whether that occurs or not.

22          THE COURT:  I got it.  It's -- there are a number of

23  questions, but I'll keep them to myself until you tell me that

24  it's an issue.

25          MR. ENGLISH:  Okay.

1          THE COURT:  With respect to the bid procedures, I

2   know that it looks like you were making progress on certain

3   issues, not on others.  Could you just tell me, as of noon,

4   where are we?

5          MR. ENGLISH:  So as of noon, Your Honor, I think

6   we've resolved all of the objections that we've received --

7          THE COURT:  Okay.

8          MR. ENGLISH:  -- except for the ones filed by the

9   parties that are -- that filed the emergency motion to compel

10  operatorship.  There was one objection that was filed this

11  morning that I think raises similar or duplicate issues to

12  those that we've already resolved, but I don't think that we

13  have technically gotten a sign-off from that objecting party on

14  those.

15          THE COURT:  Was that the pleading that Ms. Catmull

16  filed?

17          MR. ENGLISH:  Correct.

18          THE COURT:  All right.  Ms. Catmull, it -- are you

19  aware of all of the agreements that have been made, and if you

20  are, do they resolve your issue?

21          MS. CATMULL:  I am aware of the redlined order, which

22  I have reviewed.

23          THE COURT:  Okay.

24          MS. CATMULL:  I agree that it resolves several of the

25  issues.  There is an outstanding -- there's at least one

1   outstanding issue, which I'll try to -- seems like we might be

2   able to wordsmith around it.  So I'm going to try doing that in

3   the background while the proceeding goes.

4           THE COURT:  Okay.  So you've got somebody to talk to?

5           MS. CATMULL:  Well, just briefly, I've been talking

6   to Mr. Johnson right before the hearing started.

7           THE COURT:  I got it.  So if the two of you, as well

8   as anyone else -- do you need to step out in the hallway?  Just

9   go.  Just be quiet, but go.

10          MS. CATMULL:  I appreciate that, Your Honor.

11          THE COURT:  All right.  Thank you.  All right.  So,

12  Mr. English, so you think you've got it down to one objecting

13  party?

14          MS. CATMULL:  Yeah.  It's two of -- there are two

15  parties that have joined that emergency motion, Paleo and

16  Prominence, but they're raising the same issues.

17          THE COURT:  All right.  And who's taking the lead for

18  that argument today?

19          MR. SANDERS:  Good afternoon.  Michael Sanders for

20  Paleo Oil Company.

21          THE COURT:  All right.  Thank you, Mr. Sanders.  I've

22  read what you filed, and I appreciate you made your legal

23  objection.  What, practically, are you complaining about?

1          MR. SANDERS:  Probably the practical thing is the not

2  getting clarity on -- well, two things.  One is -- and I've

3  gotten comfort on this -- but the reason why we filed it --

4          THE COURT:  Sure.

5          MR. SANDERS:  -- was the potential for our

6  operator -- or our lien under the joint operating agreement

7  being wiped out.  And we've gotten comfort now that they're not

8  trying to do that today.  That's going to be as part of the

9  sale objection.

10         The other is to really just trying to get some

11  clarity on exactly what it is they think they are selling.  But

12  I think that our discussions regarding the other issues that we

13  have, the -- including our emergency motion, that we're going

14  to get it all resolved in one agreement.

15         THE COURT:  Okay.  And so how can I help that

16  process?  Or -- and your answer may be stay out of it and I

17  would understand that as well.

18         MR. SANDERS:  I need to confer with either

19  Mr. English or somebody on his team.  They -- right before we

20  came into the courtroom, they were going to go huddle up and

21  discuss the latest terms that were on the table.

22         THE COURT:  Got it.  And Mr. English, is that a

23  Mr. Johnson issue or is that you?

24         MR. ENGLISH:  It's Mr. (indiscernible) issue.  He's

25  on the phone with the clients in the conference room, now.

```
 1              THE COURT:  Okay.  I didn't mean to leave him out.
 2              MR. ENGLISH:  Yeah, no.  No problem.  What we were
 3   planning to do was to try to get through the bid procedures
 4   piece while the discussions on that motion go forward on trying
 5   to get that resolved.  I know that they have bid procedures
 6   objections as well.  They're really separate issues.  But if --
 7   you know --
 8              THE COURT:  But you heard him.  He told you, he said
 9   if you resolve one, you're going to resolve them all.  Did I
10   mishear you --
11              MR. ENGLISH:  Right.
12              THE COURT:  -- Mr. Sanders?
13              MR. SANDERS:  No, you did not mishear me, Your Honor.
14              THE COURT:  Okay.  All right.  He's just told you
15   he's going to hang tight until he tries to -- you know, if he
16   can -- and I don't know whether he can or not -- if he can
17   reach a resolution on everything.  Otherwise, he's going to be
18   a thorn in the side until the bitter end.
19              MR. ENGLISH:  Right, I understand.  I just know that
20   we have limited time today, and I don't want to delay the
21   proceedings --
22              THE COURT:  No, understood.
23              MR. ENGLISH:  -- and I hope that that comes together
24   shortly.  It may, but I haven't seen anyone running into the
25   courtroom yet telling me that.
```

```
 1              THE COURT:  Okay.  So then what I anticipate you're
 2    going to do is you're just going to put on your case with
 3    respect to the bid procedures themselves, subject to any
 4    objections that folks want to make or any cross that people
 5    want to conduct.  Right?
 6              MR. ENGLISH:  Correct.
 7              THE COURT:  Okay.  Makes perfect sense to me.
 8    Mr. Sanders, any objection?  Seems like that gives you maximum
 9    flexibility.
10              MR. SANDERS:  That -- no objection to that.
11              THE COURT:  Okay.  All right.
12              MR. SANDERS:  Thank you, Your Honor.
13              MR. ENGLISH:  So, Your Honor, the way we had planned
14    to proceed was to have Mr. Johnson walk through the changes to
15    the order that have been filed and the resolutions to the
16    objections, and then we will get to our evidence, which I think
17    will be very quick.
18              THE COURT:  So let me -- wait a minute.  Have there
19    been changes in addition to what is reflected on the docket in
20    the redline?
21              MR. ENGLISH:  There will be at least one change.
22              THE COURT:  So that's the change that I'm interested
23    in.  The other -- the redline issues, I got.  The only -- I'm
24    sorry.  Go ahead.  So the only issue -- and if you've worked it
25    out, terrific.  It seemed like the timing got a little tight
```

1  right there in the middle with respect to the, you know, one

2  day, four days.  You know, I didn't see practically how that

3  worked.  But if you've gotten everybody to agree I'm not sure

4  that I really have much of a voice in that, if -- because it's

5  everyone else that suffers the being cramped for time.

6         MR. ENGLISH:  It's a tight timeline, no doubt.  And

7  we're sort of forced into that timeline for various reasons.  I

8  think we have gotten to a place -- we did extend it and make it

9  clear that that would be a minimum of four days.  And

10  everyone --

11         THE COURT:  So that kind of solves my problem.  That

12  solves my problem.  I just didn't want folks having to evaluate

13  what technically, you could file at 11:59 --

14         MR. ENGLISH:  Right.

15         THE COURT:  -- and then be required to figure it all

16  out and file an objection the very next day.

17         MR. ENGLISH:  Right.

18         THE COURT:  So if you've made a tweak that makes it

19  four days, I'm perfectly comfortable with that.

20         MR. ENGLISH:  Right.  We have, Your Honor.  I think

21  that satisfies the objections that were raised on that point.

22         THE COURT:  Okay.

23         MR. ENGLISH:  The other thing that's not in the

24  redline is that we have agreed to make the ad hoc group of

1  drilling partnership investors -- those are Mr. Finestone's

2  clients --

3          THE COURT:  Right.

4          MR. ENGLISH:  -- they're going to be added to the

5  definition of consultation so --

6          THE COURT:  Makes perfect sense to me.  And do we

7  have anybody from Quinn that's here, just to acknowledge that

8  that is agreed to?

9          MR. ENGLISH:  I think we do.

10          THE COURT:  All right.  I was just giving you the

11  opportunity to take the podium.

12          MR. VAN DER HANN:  Thank you, Your Honor.

13          THE COURT:  Yes, sir.

14          MR. VAN DER HAHN:  Devin van der Hahn of Quinn

15  Emanuel, appearing with my colleagues Ben Finestone and Ari

16  Roytenberg.  They're virtual today, Your Honor.  We are happy

17  to join the party, join in all the fun of being a consultation

18  party.  We're glad to the debtors for making us one.  And we do

19  submit -- or sorry, we do support the relief as it's proposed

20  in the redline order.

21          THE COURT:  All right.  Surely, thank you.

22          MR. VAN DER HAHN:  Thank you.

23          THE COURT:  All right.  Mr. English, so that's the

24  only thing that's not reflected in the red line?

1          MR. ENGLISH:  Yeah, that and whatever we might agree

2    to with Ms. Catmull.

3          THE COURT:  As long as you announce that I'm fine.  I

4    assume that everyone else who has wanted to has had an

5    opportunity to review the redline.  I assume if I could get

6    through it, all of you incredibly smart people have done so as

7    well.

8          All right.  So you want to just jump right to the

9    evidence?

10          MR. ENGLISH:  Sure.  Heather Hatfield from our office

11    is going to handle that.

12          THE COURT:  Great.  Thank you.  Ms. Hatfield?

13          MS. HATFIELD:  Good afternoon, Your Honor.  Heather

14    Hatfield with Porter Hedges for the debtors.  I believe as we

15    stand here right now, that we still have the Paleo objections

16    pending.

17          THE COURT:  Do you want to check, just since a bunch

18    of folks came back in the room?

19          MS. HATFIELD:  Do you mind if I just take a minute?

20          THE COURT:  Not at all.

21          MS. HATFIELD:  Thank you, Your Honor.  Been advised,

22    but it looks like there's a deal, so this should go much faster

23    than I think we thought.  Mr. Sanders just --

24          THE COURT:  Let me ask, are the parties in a position

25    where they can announce the agreement that has been reached

1   just so that everyone who's interested can hear?  And are we

2   going to accomplish this by an announcement on the record, a

3   stipulation, or are we going to tweak the order?

4          MR. ADAMS:  Yes.  And good afternoon, Your Honor.

5   Chris Adams on behalf of Paleo Oil.  At this --

6          THE COURT:  Just so that you know, you took my

7   parking space.  I like the new car.

8          MR. ADAMS:  I left the one at the end where you

9   normally park.

10          THE COURT:  I -- well, someone took that.  It's okay.

11   But it's a pretty car.

12          MR. ADAMS:  Thank you.  I think we've got a

13   resolution.  Part of the resolution is withdrawing the

14   objection to the bid procedures.  I think we're comfortable

15   there.  And yes, we're ready to read something into the record.

16   I'll let Mr. English do that.

17          THE COURT:  Mr. English?

18          MR. ENGLISH:  Okay.  I'm going to --

19          MR. ULOTH:  Your Honor?  Doug Uloth, on behalf of San

20   Roman Ranch.  I think this might be an appropriate time to jump

21   in.  And I wasn't sure whether to do so by raising my hand or

22   just talking.  But not to interrupt, Mr. English, if I'm

23   allowed to have a few minutes of the Court's time?

24          THE COURT:  Certainly.

1          MR. ULOTH:  Okay.  One of the things that we are

2    concerned about is we have reached an -- a resolution of the

3    limited objection that San Roman has raised.  San Roman is the

4    lessor on what we believe to the bulk of the assets that are in

5    the south Texas sale.  And the resolution of that issue is just

6    to kick the can down the road.

7          San Roman has asserted its right to what is called a

8    hard consent that requires that San Roman give consent to any

9    assignment of the lease to anyone, no reasons, any reasons.

10   And so we've raised that as an issue.  We have, with the

11   bidding procedures that lead to a successful bidder, as being

12   something that we can functionally detail.

13         And there is a disagreement between ourselves and the

14   debtors as to whether we can enforce those rights.  We think we

15   can.  We are reserving the right to raise that, and it is

16   somewhat of a concern to us that, you know, that will come at

17   the end of the day after a lot of efforts we put into this, and

18   everyone gets down to where, you know, they're wanting to

19   resolve it.  And if we're kicking that can down the road,

20   that's fine with us.  But we are wanting to be very clear that

21   in doing so, we're not waiving the right to raise all of our

22   rights under the lease.

23         THE COURT:  So, Mr. Uloth, I totally got it.  Excuse

24   me.  It makes sense to me to see, number one, whether you even

25   want to raise the objection based upon who the successful party

```
 1   is.  And two, I -- it makes some sense that we don't want to

 2   figure out whether your contract has -- you know, has authority

 3   over me or I have authority over your contract.  And I get the

 4   smarts in waiting just to see how that's going to play out.  I

 5   appreciate your announcement on the record, and I absolutely

 6   agree you haven't waived anything.  Does that work for you?

 7            MR. ULOTH:  Thanks, Your Honor.

 8            THE COURT:  Okay.

 9            MR. ULOTH:  Yes, it does.  And we hope we won't ever

10   have to deal with it.  And that's the whole plan with reaching

11   this deferral agreement.

12            THE COURT:  No.  Makes perfect sense to me.  It does.

13            All right, Mr. English?

14            MR. ENGLISH:  Okay.  Your Honor, I'm going to read to

15   you what I think are terms to resolve the Paleo emergency

16   motion today, with the caveat that some discussions were

17   happening while I was at the podium.  I think I understand

18   where that has led, but Mr. Adams will help me if I stumble.

19            THE COURT:  Yeah, he'll kick you if you get it wrong,

20   yeah.

21            MR. ENGLISH:  Yeah, I'm sure.  The hearing on that

22   motion won't go forward today, by agreement.  It will be reset

23   to a date not later than August 4th.  I would note that we have

24   a hearing set for August 2nd in this case.
```

1          THE COURT:  Wait.  Just once you've got -- once you

2   all -- all the parties that are going to participate have their

3   calendars in front of them, just plug Mr. Alonzo into a text

4   string or an email and just say, hey, here's what we're looking

5   at.  If you can give him -- again, not going to put a stopwatch

6   on you, but if you can give him some idea of how much time it's

7   going to take, you know, he'll give you options, and he's got

8   the ability to just give you that time.  So just when you're

9   ready, reach out to him.

10          MR. ENGLISH:  Thank you.

11          THE COURT:  Mm-hmm.

12          MR. ENGLISH:  The next point, the debtors will abate

13   their objection to that motion.  Parties in interest, including

14   Bank7, Kuvare, and the creditors' committee will have an

15   opportunity to file objections to the motion to compel by

16   July 31st.  If there are no objections filed by that date, the

17   debtors' objection to that motion will be withdrawn, and the

18   Court can enter the order.

19          THE COURT:  Okay.  So if no one objects other than

20   the debtors, the debtor is going to withdraw its objection, and

21   you guys will just upload -- you'll just do a certificate of

22   counsel, and that way I'll see it?

23          MR. ENGLISH:  Correct.

24          THE COURT:  Okay.

1          MR. ENGLISH:  If there is an objection, obviously --

2    that's the hearing date that we were just talking about -- the

3    hearing would go forward on that date.

4          THE COURT:  And so if someone else files an

5    objection, do the debtors then get to pursue their objection?

6          MR. ENGLISH:  I think the way we've thought about

7    it -- and Mr. Moak can correct me, is that the debtors'

8    objection would remain in existence, but it could be prosecuted

9    effectively by another, by the creditors' committee.

10          THE COURT:  But effectively, you're granting standing

11   to the Committee if there's an objection.

12          MR. ENGLISH:  For that limited purpose.

13          THE COURT:  I got it.

14          MR. MOAK:  Your Honor, Paul Moak.  I'm here with Omar

15   Alaniz, with Reed Smith on behalf of the Committee.

16          THE COURT:  Sure.  Okay.

17          MR. MOAK:  That's exactly right.  We asked the debtor

18   not to withdraw the objection, but allow us to pursue it.  And

19   to be entirely candid with Your Honor, we spent the weekend and

20   way, way too much time with Mr. Adams over the weekend trying

21   to get to this resolution, because at the end of the day, it

22   may not be worth the fight.  I mean, the operatorship may not

23   be worth the fight, but we need a week or so to evaluate that.

24          THE COURT:  I got it.  Yeah, it makes good sense to

25   me.  All right.

1          And Mr. Adams, that's consistent with everything

2    that -- I know you were getting it piecemeal, but that's the

3    deal?

4          MR. ADAMS:  That is the deal.

5          THE COURT:  Okay, fair enough.  Then I'll accept.

6    Oh, there's one point.  My apologies.

7          MR. ENGLISH:  There's actually -- sorry.  There are a

8    couple more points.  The debtors are agreeing to pay monies

9    that are owed from production to Paleo and Prominence and their

10   affiliates.  We need to work through the mechanics of the

11   timing of when we can do that, and some of that -- some of

12   those proceeds we don't think we've received yet, but we're

13   committing to work through that point.

14         THE COURT:  Okay.  Are their current monies in

15   suspense or this is just a we're going to pay from whatever

16   source we have?  No suspense?

17         MR. ENGLISH:  I don't think there's any suspense on

18   this.

19         MR. ADAMS:  Yeah.  So it'd be, going forward, the

20   agreement is that once they have the money and they have the

21   ability under the budget to pay, they will pay within three

22   days.

23         THE COURT:  I got it.  Okay.

24         MR. ENGLISH:  A couple more, if the Court does not

25   enter the order granting this motion that turns over the

1    operatorship, the debtors will agree to an order that

2    authorizes the product purchasers to pay Prominence, Paleo, and

3    their affiliates their portion of production revenues directly.

4         THE COURT:  Okay.  And -- just so -- I want to make

5    sure I understand that.  So let me just pick a division -- and

6    I -- you know, I've read it.  But this means nothing.  What if

7    I said I grant the motion as to properties in which the debtor

8    no longer has an interest, but I deny the motion as to any

9    property in which they do have an interest.  Is that a denial

10   such that this takes place, or is it -- was it an all or

11   nothing and we didn't contemplate a partial?  And again, not

12   trying to make it harder, I just want to understand what you

13   all have agreed to.

14        MR. ADAMS:  That didn't come up specifically, Judge,

15   but what I would imagine is, you know, the last paragraph being

16   we go through all this, we lose, the Court doesn't order it,

17   the Court -- the debtor would not object to us requesting the

18   Court then, for an order directing the production to be paid to

19   us.  Yes.

20        THE COURT:  I got it.  So if there's any part of it

21   that you don't win, then -- I'm sorry.

22        MR. ADAMS:  In any part of it, I imagine, then the

23   Court could -- we could ask the Court to direct that the

24   production proceeds be paid to us directly if we're not

25   operating.

```
 1              THE COURT:  I got it.  Okay.

 2              MR. ENGLISH:  And I think that's how we understood it

 3   as well, Your Honor, or so I'm told.

 4              THE COURT:  That's perfect.  Okay.

 5              MR. ENGLISH:  The -- there's some state court

 6   litigation that's been commenced by Paleo, and I don't recall

 7   if Prominence is part of that or not.  But that litigation will

 8   be abated immediately.  It's a litigation against certain

 9   individuals and nondebtor entities that's currently pending in

10   state court.  That's going to be stayed immediately until

11   November 1st.

12              THE COURT:  So let me ask this:  Have the parties --

13   and again, you know, the state court system sometimes is a

14   mystery to me -- is this something that you're going to ask me

15   to -- you're going to give me an agreed stay order so that it

16   gets done?  Or you -- everybody confident that the state court

17   will honor that request?  And again, not trying to get

18   involved, but I also want to make it easy if you all have found

19   common ground.

20              MR. ADAMS:  Yeah.  We had a little shift --

21              THE COURT:  I got you.

22              MR. ADAMS:  -- that Mr. English wasn't privy to, but

23   the agreement would be that it would be withdrawn without

24   prejudice.
```

```
 1              THE COURT:  Oh, the lawsuit is going to be dismissed
 2   without prejudice?
 3              MR. ADAMS:  Yes.
 4              THE COURT:  I got it.  Well, that makes it easy
 5              MR. ADAMS:  Until November, and then we have the
 6   ability to refile it if we want.  Now, the agreement is that we
 7   would refile it in bankruptcy court, but if the Court
 8   determines -- because right now, the primary defendant is a
 9   nondebtor, right now.  If the Court determines that it doesn't
10   have jurisdiction, then that doesn't preclude us from then
11   being able to refile it in state court.
12              THE COURT:  Okay?  Mr. English?
13              MR. ADAMS:  (Indiscernible).
14              MR. ENGLISH:  That's correct, Your Honor.
15              THE COURT:  All right.  Is that everything?
16              MR. ENGLISH:  As far as I know, Your Honor.
17              MR. ADAMS:  I sent my last meal at -- email last
18   night at, like, 12:06, Judge, so --
19              THE COURT:  Got it.  That's late for you.
20              MR. ADAMS:  It's not late for Ms. Adams, but rather
21   late for me.
22              THE COURT:  All right.  Then, with that, I'll accept
23   the agreement as a settlement agreement announced on the
24   record.  I'll find it binding on the parties, subject to
25   interpretation by me if there is any term that the parties do
```

1  not agree when they get to its implementation.  Does that work

2  for everybody?

3          MR. ENGLISH:  It does for the debtors.

4          THE COURT:  Sure.  Thank you.  Mr. Ayer.  Sorry, my

5  apologies.

6          MR. AYER:  Night Energy -- can you hear me now?

7       THE COURT:  Yes, sir, loud and clear.

8          MR. AYER:  Okay.  Yeah.  This is Mitchell Air with

9  Knight Energy Oil Services, another twelve oil and gas.  And

10  this was the first we heard about a payment to -- in regards to

11  this.  And I don't have any idea if my clients have liens

12  against that or what we're agreeing to.  And I just wondered if

13  I could have a day to see what actually they're looking for.

14          THE COURT:  So you don't need it, Mr. Ayer, because

15  the agreement was that they would apply to me for an order.  So

16  you're going to have notice and opportunity for hearing.

17          MR. AYER:  Oh, okay.  Okay.  That does -- I -- I'm --

18  I didn't understand that, but it's good to be paranoid.  All

19  right.  Thanks.

20          THE COURT:  Absolutely.  Ms. Friery, I know that you

21  raised your hand earlier.  My apologies.

22          Ms. Friery, had you hit "five star"?  There you go.

23  Yes, ma'am?

24          MS. FRIERY:  Can you hear me?

25          THE COURT:  Yes, ma'am.  Thank you for checking.

1          MS. FRIERY:  Great.  I -- Michelle Friery for

2    DrilTech, LLC.  Just -- earlier we were talking about reserving

3    rights.  I -- we just -- our client wanted to reserve its right

4    to seek payment of a secured claim through the sale proceeds

5    and that was all.  Otherwise, we would -- we agree to all the

6    changes made in the order.

7          THE COURT:  So I -- thank you.  It reiterates the

8    point for everyone who's not accustomed to seeing me every day.

9    I -- to the extent that something is not being explicitly tried

10   and it is a sale hearing issue, you don't need to say I reserve

11   my rights.  We haven't tried it.  You'll have the ability to

12   stand up and make all of those objections at the sale hearing.

13   And Ms. Friery, thank you for reminding me.  I should have done

14   that earlier.

15         MS. FRIERY:  That's great.  Thanks, Judge.

16         THE COURT:  All right.  Mr. English?

17         MR. ENGLISH:  Your Honor, I think what we have left

18   is the evidence in support of the bid procedures.  I think that

19   will go quickly and I'll turn it over to Ms. Hatfield.

20         THE COURT:  All right, thank you.  Ms. Hatfield, is

21   it now easier?

22         MS. HATFIELD:  Yes, Your Honor.  Thank you.  We move

23   to admit the declaration of Daniel Crowley, which is at Docket

24   Number 171-1.

1           THE COURT:  Any objection to the admission of

2   Mr. Crowley's declaration found at 171-1?

3           All right, it's admitted.

4       (ECF Number 171-1 admitted into evidence)

5           THE COURT:  Anyone wish to cross-examine Mr. Crowley?

6   Yes, ma'am?

7           MS. CATMULL:  Thank you, Your Honor.  My guess is I'm

8   going to work out the issues, so if the Court will allow, I'd

9   like to reserve the right to cross-examine if we don't get to

10  agreed language.  But we've been very constructive just in the

11  last ten minutes, so I think we will.

12          THE COURT:  Okay.  So if I forget about you and I

13  start saying, okay, where's the order?  Catch my attention and

14  just make sure I understand where you are.

15          MS. CATMUll:  Great.  Thank you, Your Honor.

16          THE COURT:  All right.  So with that, Mr. Crowley,

17  I'm going to ask -- where is Mr. Crowley?  He's right there.

18  Mr. Crowley, don't leave.  And we'll -- hopefully won't have to

19  call you, but in the event that we do, we certainly will.  All

20  right.

21          MS. HATFIELD:  Subject to that caveat, we don't --

22  we're not going to introduce any additional evidence today.

23          THE COURT:  All right, thank you.  All right,

24  Mr. English?

1          MR. ENGLISH:  Your Honor, I think we've gone through

2    everything that we intended to.  There is the one pending

3    objection that was filed this morning, and I don't -- it sounds

4    like that's not quite resolved.  So I'm not sure if we ought to

5    proceed to hear those issues and determine them or --

6          THE COURT:  So let's do this -- let me first check.

7    Is there anyone else that needed to raise an issue, wish to be

8    heard for any reason?

9          All right.  Then, let's do that.  And let me say

10   this:  I've spent a lot of time, more than I normally do with

11   bid procedures, because you've got a difficult process to work

12   your way through.  This is going to be very tedious and quite

13   frankly, hard.  I hope that it is a vigorous auction.  I hope

14   that it is one that we've created something where we generate

15   some interest.  I don't have concerns, at least from what I've

16   heard, Mr. English, with the process.

17         There may be issues at the sale itself.  I got all of

18   that.  Everybody's raised the 363(f) issue.  Everyone has

19   raised, you know, every issue that you would have at 363(f)

20   sale.  We'll deal with those when we see what the problems

21   really are.  And we're not going to know that until we actually

22   go through the auction process.

23         So I don't have concerns, subject to hearing whatever

24   objection may be remaining.  So let me do this:  It is -- I

25   have 12:27.  Why don't we take ten minutes?  Why don't we take

 1  ten minutes, get everybody that you need to out in the hall and

 2  see if Ms. Catmull has resolved her issues or not.  But ten

 3  minutes, no more.  So let's come back at 12:40.  I'm not going

 4  to step down, but please feel free to come and go as you think

 5  appropriate.

 6        And if we need to put Mr. Crowley up, then we will.

 7  If we need to have just argument, we will.  And if you've

 8  resolved it with some additional language that you're going to

 9  add to the order or announcements you're going to make on the

10  record, we can do that at that time as well.  All right?

11        MR. ENGLISH:  Understood.  Thank you.

12        THE COURT:  Thank you, folks.  Folks on GoToMeeting,

13  I'll be back on at 12:40 Central time.

14     (Recess taken at 12:28 p.m.)

15     (Proceedings resumed at 12:40 p.m.)

16        THE COURT:  All right, we are back on the record in

17  the jointly-administered cases under Case Number 23-90739,

18  Alpine Summit Energy Partners, Inc.  Mr. Johnson?

19        MR. JOHNSON:  Good afternoon, Your Honor.  Shane

20  Johnson from Porter Hedges, on behalf of the debtors.  I was

21  able to speak with Ms. Catmull and what we've agreed to to

22  resolve the remaining dispute -- and it may be easier for Your

23  Honor to pull up the redline -- at least, I'm looking at the

24  red line, so it might be easier -- at Docket Number 214-1.

25        THE COURT:  Sure.

1          MR. JOHNSON:  And Page 10 of 48 if you're looking

2   at --

3          THE COURT:  Give me a second.  It takes a moment to

4   load.

5          MR. JOHNSON:  Okay.

6          THE COURT:  It goes to San Diego, then back to Rhode

7   Island and then back to Texas before I can look at.  All right

8   10 of 48?

9          MR. JOHNSON:  Yes.  10 of 48.

10         THE COURT:  Okay.

11         MR. JOHNSON:  And then you go into Subsection E,

12  dispute resolution.  There is a sentence that starts kind of in

13  the middle, "to the extent a cure objection remains unresolved,

14  the contract may be conditionally assumed and assigned."  If

15  Your Honor sees that sentence, we're just going to delete that

16  sentence.

17         THE COURT:  Okay.

18         MR. JOHNSON:  I don't think it's necessary.  I don't

19  think it adversely impacts anybody.  And so I believe with

20  that, Ms. Catmull's --

21         THE COURT:  Just making clear you don't gain any

22  rights by that temporary assumption.  I got that, perfect with

23  me.  So let me ask -- and first, Ms. Catmull, does that resolve

24  your issue?

25         MS. CATMULL:  It does, Your Honor.  Thank you.

1           THE COURT:  Of course.  Are parties on templating

2  giving me an amended order?  Like, what's the thought process?

3           MR. JOHNSON:  Yes, Your Honor.  We're -- so we're

4  going to need to make that deletion, and then we're going to

5  have to make the consultation party --

6           THE COURT:  Sure.

7           MR. JOHNSON:  -- addition.  So I think those are both

8  pretty quick changes.

9           THE COURT:  Agreed.

10          MR. JOHNSON:  And then get you a revised order, I

11 would expect, later today.

12          THE COURT:  Okay.  Would you just reach out to

13 Mr. Alonzo once it's been uploaded?

14          MR. JOHNSON:  Of course.

15          THE COURT:  I'll do my best to turn it as quickly as

16 I possibly can.  What are you contemplating, both of you -- in

17 terms of the auction, what are you contemplating?  And the only

18 reason I ask is that I want to give you the benefit of my

19 literally hundreds of mistakes that I made with respect to

20 auctions over course of a number of years.  What are you

21 contemplating?

22          MR. JOHNSON:  So I think -- are you asking in terms

23 of process or location, like, in-person type things?  I think

24 we're contemplating a -- an in-person auction.  I think the way

25 they've evolved these days, there's some hybrid participation.

1  I think that's probably going to be the case here as well.  I

2  think we are planning on, you know, using some procedures that

3  are kind of the ones that we've seen and seen be successful

4  before.  But I'm happy to take --

5           THE COURT:  What -- just given the nature of the

6  disputes that remain out there -- and I -- again, not requiring

7  anything, you do what you think is right.  But I would suggest

8  you consider actually having a court reporter in and actually

9  have the auction transcribed.

10          MR. JOHNSON:  100 percent.  That's what we usually

11 do.  Actually -- yeah.

12          THE COURT:  You normally do that anyway?  Okay, I got

13 it.  And it's -- I'm sorry I said anything.

14          MR. JOHNSON:  It creates problems when the auction

15 goes into those late hours sometimes, but we've managed to make

16 it work.

17          THE COURT:  They're going to be certain things that

18 you're going to get pieces of things, and just to make sure you

19 keep the pieces straight, I just think that's a really good

20 thing.

21          MR. JOHNSON:  100 percent agree.

22          THE COURT:  But again, I didn't mean to intrude, I --

23 you already had thought of it, so anyway.

24          MR. JOHNSON:  I appreciate the comment.

```
1            THE COURT:  All good.  All right.  So you're going to
2   let me know -- you're going to let Mr. Alonzo know once the
3   order has been uploaded.  I'll turn that as quick as I can.
4   And you got your issues with respect to Mr. Adams' client.
5   Anything else we need to talk about today?  Anything else --
6            MR. JOHNSON:  I think Mr. Adams had one clarification
7   on that agreement, just to put on the record.
8            THE COURT:  Mr. Adams?
9            MR. ADAMS:  One small piece that we left out, Your
10  Honor, is we've allowed for objections to our motion through
11  July 31st.
12           THE COURT:  Right.
13           MR. ADAMS:  Specifically, we talked about the UCC,
14  the bank and Kuvare.  And one of the things that we talked
15  about, with respect to Mr. Ruzinsky's client, is that he will
16  only have the right to object to the transfer of operations on
17  wells that he has an interest in, whether it's prepetition or
18  post-petition.  And we just -- we left that off the record and
19  my client wanted to make sure that we stated it.
20           THE COURT:  I got it.  It seems to me that that's
21  just a basic standing issue, and I don't think you can
22  compromise away my right to determine standing.  So I think
23  that's just all okay.
24           But, Mr. Ruzinsky, you agree with all that?
25           MR. RUZINSKY:  I do, Your Honor.
```

1          THE COURT:  All right.

2          MR. RUZINSKY:  Thank you.

3          THE COURT:  All right.  No, thank you for doing that.

4   Anything else?

5          MR. JOHNSON:  No.  With that, I think that's -- we're

6   right.

7          THE COURT:  All right.  If things -- you know, if

8   things change, don't hesitate to reach out.  I mean, we need to

9   figure out where value lies and what's worth fighting about,

10  what's not worth fighting about.  So if things change, don't

11  hesitate to reach out.  All right?

12         MR. JOHNSON:  Understood.  Thank you.

13         THE COURT:  With that, we'll be adjourned.  Thank

14  you.

15     (Proceedings concluded at 12:45 p.m.)

16                          *  *  *  *  *

17

18

19

20

21

22

23

24

25

1                    **C E R T I F I C A T I O N**

2

3          I, Alicia Jarrett, court-approved transcriber, hereby

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter.

7

8

9

10   _____

11   ALICIA JARRETT, AAERT NO. 428      DATE: July 28, 2023

12   ACCESS TRANSCRIPTS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25