## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| **ALPINE SUMMIT ENERGY PARTNERS, INC.**, *et al.*, | § | Case No. 23-90739 (MI) |
|  | § |  |
|  | § | (Jointly Administered) |
| Debtors. [1] | § |  |
| **ALPINE SUMMIT FUNDING, LLC,** | § |  |
|  | § |  |
| Plaintiff, | § | Adv. No. 23-03213 |
|  | § |  |
| v. | § |  |
|  | § |  |
| **ALPINE SUMMIT ENERGY PARTNERS, INC.**, *et al.*, | § |  |
|  | § |  |
| Defendants. | § |  |
|  | § |  |

### DEBTORS' PRELIMINARY REPLY AND REQUEST FOR CONFERENCE IN CONNECTION WITH *ALPINE SUMMIT FUNDING, LLC'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) ENFORCING THE AUTOMATIC STAY AGAINST ALPINE SUMMIT FUNDING, (II) AWARDING THE DEBTORS' ATTORNEYS' FEES AND EXPENSES, AND (III) GRANTING RELATED RELIEF* [ADV. DKT. NO. 70]

Debtors HB2 Origination, LLC, Ironroc Energy Partners, LLC, Ageron Ironroc Energy, LLC, Alpine Carbon, LLC, Ageron Energy II, LLC, Alpine Summit Energy Partners, Inc., and Alpine Summit Energy Investors, Inc. (collectively, the "**Debtors**") file this preliminary reply and request for a status conference (the "**Preliminary Reply**") in connection with *Alpine Summit*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification number, are Alpine Summit Energy Partners, Inc. (3755), HB2 Origination, LLC (6760), Ageron Energy II, LLC (1436), Ironroc Energy Partners LLC (9801), Ageron Ironroc Energy, LLC (N/A), Alpine Summit Energy Investors, Inc. (4428), and Alpine Carbon, LLC (N/A). The location of the Debtors' service address is: 3322 West End Ave, Suite 450, Nashville, TN 37203. The Debtors' petition is Case No. 23-90739 (the "**Main Case**"). This matter is Case No. 23-03213 (the "**Adversary Case**").

*Funding, LLC's Objection to Debtors' Motion for Entry of an Order (I) Enforcing the automatic Stay against Alpine Summit Funding, (II) Awarding the Debtors' Attorneys' Fees and Expenses, and Granting Related Relief* [Adv. Dkt. No. 70][2] (the "**Objection**") filed by Plaintiff Alpine Summit Funding, LLC ("**ASF**") in response to the *Debtors' Motion for Entry of an Order (I) Enforcing the automatic Stay against Alpine Summit Funding, (II) Awarding the Debtors' Attorneys' Fees and Expenses, and Granting Related Relief* [Adv. Dkt. No. 28] (the "**Motion to Enforce**") in the adversary proceeding styled *Alpine Summit Funding, LLC, Alpine Summit Energy Partners, Inc., et al*, Adv. Proc. No. 23-03213 (Bankr. S.D. Tex. Sept. 23, 2023) (the "**Adversary Proceeding**").  In support of this Preliminary Reply, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      On January 5, 2024, the Court calendared the Motion to Enforce for hearing on January 22, 2024.  Shortly thereafter, counsel to ASF asked the Debtors to confirm that ASF's deadline to object to the Motion to Enforce would be January 12, 2024, and the Debtors agreed. However, the Debtors had begun deliberating over whether to continue to prosecute the Motion to Enforce in light of the Court's decisions at the December 18, 2023 and January 4, 2024 conferences.  The Debtors determined to file a more comprehensive motion seeking fees and costs in connection with ASF's misconduct, and to withdraw the Motion to Enforce so as not to make the Court hear (and the parties litigate) the same issues twice.

2.      On January 10, 2024, Debtors' counsel called ASF's counsel to inform ASF that the Debtors would likely withdraw the Motion to Enforce.  The Debtors made this call as a courtesy so that ASF would not continue working on an objection that could soon become moot.  Debtors'

---

[2] "**Adv. Dkt. No.**" refers to the docket of *Alpine Summit Funding, LLC, v. Alpine Summit Energy Partners, Inc., et al*, Adv. Proc. No. 23-03213 (Bankr. S.D. Tex. Sept. 23, 2023).  "**Dkt. No.**" refers to the main bankruptcy docket of *In re Alpine Summit Energy Partners, Inc.*, No. 23-90739 (Bankr. S.D. Tex. July 5, 2023).

counsel also informed ASF's counsel that in the unlikely event that the Debtors determined not to withdraw the Motion to Enforce, the Debtors would agree to extend ASF's objection deadline to avoid any prejudice to ASF. After this phone call, Debtors' counsel emailed ASF's counsel to reiterate these points in writing.[3]

3.      ASF's counsel did not respond to Debtors' counsel's email. Instead, ASF rushed to file the Objection before the Debtors could withdraw the Motion to Enforce—filing it a full day ahead of the deadline ASF had negotiated just a few days earlier. ASF has since told the Debtors that it believes that the Debtors cannot "properly" withdraw the Motion to Enforce, and that ASF will not withdraw the Objection even if the Debtors withdraw the Motion to Enforce.[4]

4.      ASF's rush to file the Objection before the Motion to Enforce could be withdrawn is an abuse of the Court's docket. ASF has cited no authority that would prevent the Debtors from declining to prosecute ***their*** motion.[5] To the extent ASF has tried to block the Debtors from withdrawing the Motion to Enforce by rushing to "join issue," such a manufactured dispute is a willful waste of the Court's and the estates' resources.

5.      It is not only ASF's actions in filing the Objection that are improper. The Objection is a thinly disguised, improper motion for reconsideration of the Court's prior decisions and ASF's on-the-record positions. Indeed, of the 33 pages in the Objection, only six address whether ASF should pay any sanctions in connection with its admitted stay violations. The remaining 27 pages

---

[3] This email is attached to ASF's Objection. *See* Obj. Ex. A.

[4] The correspondence in which ASF set forth this position is attached as **<u>Exhibit A</u>**.

[5] Courts in this Circuit appear to allow parties to withdraw motions any time before the court has ruled. *Cf. Carter v. H2R Rest. Holdings, LLC*, 2016 WL 8116145 at *1 (N.D. Tex. Dec. 15, 2016) ("If the plaintiff moves to withdraw the motion before the court has ruled on the dismissal, [her] motion is [ordinarily] considered timely."). Here, the Debtors sought to withdraw the Motion to Enforce well in advance of any ruling—indeed, before any objection had been filed and any hearing had been held.

go count-for-count through the Original Complaint to argue that ASF did not, in fact, violate the stay, as the Court held and ASF conceded.

6.      ASF asserts that it is entitled to belatedly seek reconsideration of the Court's ruling, and reverse its prior concessions, because it has "newly-appointed co-counsel," Orrick, Herrington & Sutcliff LLP ("**Orrick**").  Obj. ¶ 4.   This assertion is meritless for at least three reasons.

7.      *First*, it is well-established that there is no "new counsel" exception to the rules. *See, e.g.*, *McCurdy v. Kernan*, 2021 WL 5822868, at *1 (E.D. Cal. Dec. 8, 2021) ("A party does not get the proverbial second bite at the apple simply because it obtains new counsel during the course of the litigation.").

8.      *Second*, there is nothing "new" about Orrick's role in this case.  Orrick, as counsel to the ASF lenders, has effectively co-counseled this case with Cole Schotz since its filing.  Orrick has been copied on virtually every email, invited to virtually every phone call, and attended the court hearings.  There is even an Orrick listserve, #AlpineEnergyABS@orrick.com, that has been copied on virtually every email to the Debtors regarding this adversary proceeding.  It is all but certain that Orrick has reviewed and approved every filing ASF has made, and signed off on every litigation position ASF has taken, or not taken.

9.      *Third*, the Objection states that its "purpose . . . is to correct the statements made by ASF's counsel at the December 18 status conference[.]"  Obj. ¶ 3.  But ASF cannot "correct the record" nearly a month after the fact.  Additionally, by cherry-picking one incident, ASF ignores—and seeks to elide—the full record of the Court's rulings and ASF's concessions:

- On December 18, 2023, the Court asked ASF, "So tell me why you own the claims you sued on, Counsel?"  Dec. 18, 2023, Hr'g Tr at 6:11-12.  In response, counsel to ASF unequivocally conceded on the record that ASF had brought

claims that belonged to the Debtors' estates. *See id.* at 8:10-14 (Mr. Geoghan: "And it was a – it was an error to assert the – to the extent the claims are property of the estate, which some of them, now having seen the motion appear today, it was an error.  It was a clear error, and that's – I do say *mea culpa*.").  Counsel to ASF also informed the Court that ASF "intend[s] to make an amendment to fix" the fact that "certain of the claims [] were alleged [] in error[.]"  *Id.* at 8:16-18.  Based on these statements, the Court ordered ASF to "re-file [ASF's] complaint by December 29th to be a complaint that [ASF is] willing to defend as being claims that [ASF] own[s]."  *Id.* at 9:2-4.

- In the weeks following the December 18 hearing, ASF did not seek to challenge the Court's statements or retract this concession.  To the contrary, on December 29, 2023, ASF filed an amended complaint that removed all of the claims and causes of action that the Debtors had challenged as stay violations.

- On January 4, 2024, the Court held a hearing regarding ASF's amended complaint.  At this hearing, the Court repeatedly summarized its prior ruling as to the original complaint, and ASF's concession that certain claims in that complaint had violated the automatic stay: "We had a hearing, and I told you to amend by a date certain because you had violated the rules and asserted claims you didn't own and you acknowledged you had."  *See* Jan. 4, 2024 Hr'g Tr. at 7:2-5; *see also id.* at 20:16-22 ("[ASF] had originally filed a complaint asserting causes of action not owned by the plaintiff . . . Counsel was aware of the law, acknowledges awareness of the law, and said he just missed it when it was time to review and sign the pleadings.").  The Court further stated that it had "ordered

[ASF] to amend" the Original Complaint to remove the counts that violated the stay. *Id.* at 7:7-8. ASF did not challenge the Court's characterization of the facts or seek to retract its concession. To the contrary, counsel to ASF replied, "Your Honor, I understand what you're saying. I'm just saying I do not believe at all that we broke pending – the pending proceeding rule."). *Id.* at 7:10-12.

- Finally, on January 8, 2024, the Debtors and ASF held a meet-and-confer at which they discussed, among other things, a joint proposed form of order regarding the January 4 hearing. ASF approved, and jointly submitted with the Debtors, a proposed order barring ASF from continuing to prosecute the original complaint "[f]or the reasons set forth in the Court's bench ruling on December 18, 2023[.]"[6]

10.     To distract from this record, ASF accuses the Debtors of "seek[ing] to mislead the Court." Obj. ¶ 7. This accusation is both false and unseemly. Indeed, as the Objection acknowledges, the Debtors explained where the Complaint was poorly pleaded, such that it was unclear whether a given claim constituted a stay violation. *See, e.g.*, Obj. ¶ 27-28 (citing the Debtors' motion to dismiss to show that "the Debtors submit that ASF's primary contention—that the stolen funds are not estate property—is incongruous with a fraudulent transfer violation[.]"). ASF's subsequent concessions regarding these claims resolved the ambiguity and confirmed that ASF had asserted estate causes of action, in violation of the stay. ASF now tries to reverse its prior on-the-record positions, yet argues that it is somehow the Debtors who have misled the Court.

---

[6] *See Notice of Filing of Proposed Order Regarding (A) Debtor Defendants' Emergency Motion to (I) Strike Portions of the Amended Complaint and (II) Amend the Court-Ordered Briefing Schedule Related Thereto; and (B) Debtor Defendants' Motion for Entry of an Order Authorizing Debtor Defendants to File Under Seal Debtor Defendants' Emergency Motion to (I) Strike Portions of the Amended Complaint and (II) Amend the Court-Ordered Briefing Schedule Related Thereto* [Adv. Dkt. No. 63] (the "**Proposed Order**").

11.    The Debtors do not believe that their estates should be required to expend resources litigating the arguments that are improperly raised in the Objection.  Moreover, ASF's rush to file the Objection calls into question its motivations.  With ASF's motion for leave to file a second amended complaint looming, the Debtors fear that ASF is attempting to re-open the door to asserting claims that this Court has ruled—and ASF has conceded—are improper.

12.    The Debtors' estates have already expended substantial resources responding to improper pleading by ASF.  The Debtors therefore request a status conference in connection with this Preliminary Reply to determine whether the Court will allow ASF to make, and require the Debtors to respond to, the position-reversing arguments in the Objection.  Moreover, the Debtors have had only a handful of days, spread mostly over a holiday weekend, to respond to the Objection.  If the Court allows the Objection to go forward as pleaded, the Debtors respectfully request that the Court amend the schedule in connection with the Motion to Enforce to allow the Debtors 14 days from the hearing to respond to the Objection.

## **BACKGROUND**

13.    On September 23, 2023, ASF filed the complaint [Adv. Dkt. No. 1] (the "**Original Complaint**").  On December 11, 2023, the Debtors filed a motion to dismiss the Original Complaint [Adv. Dkt. No. 26] on the grounds that, among other things, certain of the claims sought to usurp estate causes of action and thus violated the automatic stay.  The Debtors also filed a motion to extend the automatic stay to the individual defendants [Adv. Dkt. No. 27] and the Motion to Enforce.

14.    On December 18, 2023, the Court held a Rule 16 conference, at which ASF conceded that it had asserted claims that belonged to the Debtors' estates.  *See* Dec. 18, 2023, Hr'g Tr. at 8:10-14 (Mr. Geoghan: "And it was a – it was an error to assert the – to the extent the claims are property of the estate, which some of them, now having seen the motion appear today, it was

an error.  It was a clear error, and that's – I do say *mea culpa*.").  Counsel to ASF also informed

the Court that "we do understand that certain of the claims that were alleged are in error, and we

intend to make an amendment to fix that."  *Id.* at 8:16-18. Based on these statements, the Court

ordered ASF to "re-file [ASF's] complaint by December 29th to be a complaint that [ASF is]

willing to defend as being claims that [ASF] own[s]."  *Id.* at 9:2-4.

15.     On December 29, 2023, ASF filed the amended complaint [Adv. Dkt. No. 42] (the

"**Amended Complaint**").  During the interim between the December 18, 2023 conference and the

filing of the Amended Complaint, ASF took no action to retract its concession that it had violated

the automatic stay or to challenge the Court's ruling.  To the contrary, ASF removed from the

Amended Complaint all of the claims and causes of action that the Debtors had identified as stay

violations.

16.     On January 4, 2024, the Court held an emergency hearing regarding the Amended

Complaint, where it ordered that the Amended Complaint be stricken in its entirety.  *See* Jan. 4,

2024 Hr'g Tr. at 21:12-17.  The Court also reiterated that ASF could not proceed on its Original

Complaint.  *Id.* at 22:13-15 (The Court: "I'm throwing out the existing first amended complaint

and I'm not allowing the original complaint[.]").  The Court recited the procedural history of the

case, noting that ASF "had originally filed a complaint asserting causes of action not owned by

the plaintiff . . . Counsel was aware of the law, acknowledges awareness of the law, and said he

just missed it when it was time to review and sign the pleadings."  *Id.* at 20:16-22.  ASF's counsel

again did not challenge the Court's ruling regarding the automatic stay violations, and in fact

argued that ASF had not violated only the pending proceeding rule:

> The Court: We had a hearing, and I told you to amend by a date certain because
> you had violated the rules and asserted claims you didn't own and you
> acknowledged you had.  You took advantage of that by then taking a deposition.

And not just amending for what I had granted you leave to amend for, and in fact ordered you to amend for . . .

Mr. Geoghan: Your Honor, I understand what you're saying.  I'm just saying I do not believe at all that we broke pending – the pending proceeding rule.

*Id.* at 7:2-12.

17.     At the end of the January 4, 2024 hearing, the Court instructed the Debtors to file a written order consistent with the Court's ruling.  *Id.* at 22:1-2.  On January 5, 2024, Debtors sent the Proposed Order to ASF's counsel for review.  The email correspondence regarding the Proposed Order included the attorneys at Orrick.

18.     On January 8, 2024, counsel to the Debtors and counsel to ASF, including attorneys from Orrick, met and conferred regarding the Proposed Order.  ASF confirmed that the form of Proposed Order was acceptable to ASF.  Accordingly, the Debtors filed the Proposed Order later that day.  The Proposed Order provided, among other things, that "[f]or the reasons set forth in the Court's bench ruling on December 18, 2023 [Adv. Dkt. No. 34], the Court bars Plaintiff Alpine Summit Funding, LLC ('ASF') from continuing to prosecute the Complaint [Adv. Dkt. No. 1]." Proposed Order at 7.  The notice submitted with the Proposed Order also states that the Proposed Order is "in form and substance acceptable to the Debtor Defendants and Plaintiff,' and that "[t]he Debtor Defendants and ASF have jointly consented to the filing of this notice."  *Id.* at 2.

19.     At the January 8 meet-and-confer, counsel to ASF asked the Debtors to confirm that the objection deadline for the Motion to Enforce would be January 12, 2024.  The Debtors agreed.  However, the Debtors had begun deliberating over whether to continue to prosecute the Motion to Enforce in light of the Court's decisions at the December 18, 2023 and January 4, 2024 conferences.  The Debtors determined to file a more comprehensive motion seeking fees and costs in connection with ASF's misconduct, and to withdraw the Motion to Enforce so as not to make the Court hear (and the parties litigate) the same issues twice.

20.     On January 10, 2024, Debtors' counsel called ASF's counsel to inform ASF that the Debtors would likely withdraw the Motion to Enforce.  The Debtors made this call as a courtesy so that ASF would not unnecessarily continue working on an objection that could become moot.  Debtors' counsel also informed ASF's counsel that, in the unlikely event that the Debtors determined not to withdraw the Motion to Enforce, the Debtors would agree to extend ASF's objection deadline to avoid any prejudice to ASF.  After this phone call, Debtors' counsel emailed ASF's counsel to memorialize the conversation.  *See* Obj. Ex. A.

21.     ASF's counsel did not respond to the Debtors' email.  Instead, ASF rushed to file the Objection to the Motion to Enforce approximately 12 hours later—a full day ahead of the deadline ASF had negotiated just a few days earlier.  In subsequent correspondence, ASF has told the Debtors that it believes that the Debtors cannot "properly" withdraw the Motion to Enforce, and that ASF will not withdraw the Objection even if the Debtors withdraw the Motion to Enforce.[7]

22.     The Objection primarily seeks to reverse ASF's previous concessions and to challenge the Court's previous rulings regarding ASF's stay violations.  *See* Obj. ¶ 3 ("The purpose of this Objection is to correct the statements made by ASF's counsel at the December 18 status conference and explain to the Court why ASF did not, in fact, violate the automatic stay.").  ASF asserts that it is "entitled" to re-open these issues because its argument is through "newly-appointed co-counsel."  *Id.* ¶ 4.

---

[7] *See* Ex. A.

## ARGUMENT

I.     **ASF's attempt to reverse its prior concessions and challenge the Court's rulings is untimely and improper.**

A.     **ASF is judicially estopped from reversing its prior positions.**

23.     The doctrine of judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Ergo Sci., Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996).  This doctrine helps avoid internal inconsistency, prevents parties from "playing fast and loose" with the courts, and "prohibits parties from deliberately changing positions based upon the exigencies of the moment." *Id.*  The Supreme Court has refused to "establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001).  Instead, different factors "may inform the doctrine's application in specific factual contexts." *Id.*

24.     When weighing judicial estoppel, courts in the Fifth Circuit consider the following factors: "the party's position must be 'plainly inconsistent with [its] prior position'; the party must have convinced 'a court [to] accept[] the prior position'; and the party must not have 'act[ed] inadvertently.'" *Krutz v. Huntington Ingalls Inc.*, 2021 WL 5893981, at *5 (E.D. La. Apr. 22, 2021) (quoting *United States v. Farrar*, 876 F.3d 702, 709 (5th Cir. 2017)).  The Supreme Court has identified as an additional factor "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Pohl v. Berryhill*, 2018 WL 4677895, at *4 (W.D. Tex. June 20, 2018), *R&R adopted*, 2019 WL 1313450 (W.D. Tex. Jan. 4, 2019) (quoting *Zedner v. United States*, 547 U.S. 489, 504 (2006)).  Above all, application of the doctrine should be "guided by a sense of fairness" and the facts of the particular dispute. *Abreu v. Zale Corp.*, 2013 WL 1949845, at *5 (N.D. Tex. May 13,

2013) (citing *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011)).  The decision to apply judicial estoppel is within the court's broad discretion.  *New Hampshire*, 532 U.S. at 751 (judicial estoppel "is intended to prevent improper use of judicial machinery" and is "invoked by a court at its discretion") (citation omitted).

25.     Here, all of the factors that courts consider when applying judicial estoppel have been met.  ASF seeks to assert that it did not violate the automatic stay, which is "plainly inconsistent" with its prior position.  Additionally, ASF was not forced to assert that it had violated the stay.  Rather, the Court asked ASF, "So tell me why you own the claims you sued on, Counsel?" Dec. 18, 2023, Hr'g Tr. at 6:11-12.  In response, ASF willfully and unequivocally conceded that it had brought claims that belonged to the estate.  *See id.* at 8:10-14 (Mr. Geoghan: "And it was a – it was an error to assert the – to the extent the claims are property of the estate, which some of them, now having seen the motion appear today, it was an error. It was a clear error, and that's – I do say mea culpa."); *see also id.* at 8:16-18 ("[W]e do understand that certain of the claims that were alleged are in error, and we intend to make an amendment to fix that.").  Based on these statements, the Court ordered ASF to "re-file [ASF's] complaint by December 29th to be a complaint that [ASF is] willing to defend as being claims that [ASF] own[s]."  *Id.* at 9:2-4.  Moreover, ASF has not alleged, and cannot allege, that it acted inadvertently.  Indeed, until it filed the Objection **24 days** after the December 18 status conference, ASF never sought to reverse or correct its position.

26.     To the contrary, ASF continued to assert this position repeatedly.  ASF removed from its Amended Complaint all of the claims that the Debtors had challenged as stay violations. During the January 4, 2024 hearing, the Court repeated its December 18, 2023 ruling and ASF's acknowledgment thereof.  *See* Jan. 4, 2024 Hr'g Tr. at 7:2-5 ("We had a hearing, and I told you

to amend by a date certain because you had violated the rules and asserted claims you didn't own and you acknowledged you had."); *see also id.* at 20:16-22 ("[ASF] had originally filed a complaint asserting causes of action not owned by the plaintiff . . . Counsel was aware of the law, acknowledges awareness of the law, and said he just missed it when it was time to review and sign the pleadings.").  ASF's counsel did not challenge the Court's recitation of prior events or its understanding of ASF's position regarding the stay violations.  To the contrary, ASF's counsel replied, "Your Honor, I understand what you're saying.  I'm just saying I do not believe at all that we broke pending – the pending proceeding rule."  *Id.* at 7:10-12.  Finally, on January 8, 2024, ASF approved, and jointly submitted with the Debtors, the Proposed Order disallowing ASF from continuing to prosecute the Original Complaint "[f]or the reasons set forth in the Court's bench ruling on December 18, 2023[.]"  *See* Proposed Order at 7.

27.     Under Fifth Circuit law, "the district court, as a matter of federal procedure, is entitled to rely on statements made by counsel in open court," including "reliance on statements made by counsel in open court disavowing specific claims."  *Ergo Sci.*, 73 F.3d at 599–600 (holding that the district court did not abuse its discretion by concluding a party no longer had an interest in property based on the statements of counsel answering the Court's direct questions and then sitting silently while the Court reiterated the party's legal stance). The Court should follow this precedent and apply judicial estoppel here.  Allowing ASF to reverse its prior positions gives it an unfair advantage and imposes an unfair prejudice on the Debtors.  As discussed above, the Debtors—and ASF—have proceeded throughout this Adversary Proceeding in accordance with ASF's concession and the Court's ruling.  To allow ASF to reverse course at this late date would require the Debtors to expend substantial resources re-litigating issues that have been decided and affirmed repeatedly.

28.     Moreover, the Debtors are on the verge of having to respond to a **_second_** amended complaint.  The Debtors reasonably believed that the issues in the Adversary Proceeding had been properly narrowed by the litigation that has occurred to date.  The Debtors should not be faced with the prospect of expending more of the estates' resources re-litigating a settled issue.

**B.      ASF waived the arguments raised in the Objection.**

29.     "[W]aiver is the intentional relinquishment or abandonment of a known right." *Biziko v. Van Horne*, 981 F.3d 418, 420 n.1 (5th Cir. 2020) (internal citation omitted).  "Waiver may be established by showing that a party intentionally conducted himself inconsistent with claiming a right."  *In re Cherry*, 341 B.R. 581, 590 (Bankr. S.D. Tex. 2006).  More specifically, "a litigant waives a legal claim by initially raising the claim and then explicitly abandoning it later."  *See Bannister v. Knox Cty. Bd. of Educ.,* 49 F.4th 1000, 1011 (6th Cir. 2022) (applying the "intentional abandonment" standard for waiver in the appellate context).

30.     At the December 18, 2023 conference, ASF's counsel knowingly and willfully admitted it had brought claims that belonged to the Debtors' estates.  As set forth in detail above, ASF's subsequent actions—and inaction—confirmed its waiver.  That waiver should be enforced. *See, e.g.*, *Fout v. EQT Prod. Co.*, 2018 WL 1595870, at *4 (N.D.W. Va. Apr. 2, 2018) (holding that a plaintiff waived its remaining claims in the case where it expressly agreed during a status conference that there was only one issue remaining in a civil action); *Harris v. Dall. Indep. Sch. Dist.*, 435 F. App'x 389, 396 (5th Cir. 2011) (holding that plaintiff waived its argument in a motion to compel where it withdrew the motion and stated on the record that "the discovery dispute at issue appears resolved"); *Phillips v. Travelers Cas. & Sur. Co. of Am.*, 2012 WL 3779294, at *2 (S.D. Tex. Aug. 30, 2012) (citing *Marlin v. Moody Nat'l Bank, N.A.,* 248 F. Appx. 534, at *6 (5th Cir. 2007)) ("An appellant waives an argument that is the opposite of the argument he made to the bankruptcy court.").

### C.   ASF's attempt to alter the Court's ruling through the Objection is an improper circumvention of appropriate procedure.

31.     The Fifth Circuit has found that "any motion that draws into question the correctness of a judgment is functionally a motion under Civil Rule 59(e), whatever its label." *Harcon Barge Co. v. D & G Boat Rentals, Inc.*, 784 F.2d 665, 669 (5th Cir. 1986); *see also Sims v. City of Madisonville*, 2015 WL 5283268, at *1 (S.D. Tex. Sep. 9, 2015) ("A motion seeking reconsideration of an order or judgment is generally considered a motion to alter or amend under Rule 59(e) if it seeks to change the order."); *see also Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 n.2 (5th Cir. 2012) (a motion asking the court to reconsider a prior ruling is typically evaluated "as a motion to amend [a] judgment under Rule 59(e)."). Moreover, a motion seeking to amend an existing order under Rule 59(e), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9023, cannot be used to raise arguments which "could have been raised previously" before judgment was issued. *McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018). Such motions are considered an "extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).[8]

32.     As Fifth Circuit precedent makes clear, the Objection is a thinly veiled, as well as improper, motion for reconsideration. At the December 18 conference, the Court effectively dismissed with prejudice all claims that were the property of the estate and left no opportunity for ASF to re-assert those claims in any subsequent complaint. *See* Dec.18, 2023 Hr'g Tr. at 9:2-4 (COURT: "I'm going to require that you re-file your complaint by December 29th to be a complaint that you're willing to defend as being claims that you own . . . ."); *see also* Jan. 4, 2024

---

[8] Additionally, Federal Rule of Civil Procedure 59(e) provides that "[a] motion for a new trial or to alter or amend a judgment shall be filed, and a court may on its own order a new trial, no later than 14 days after entry of judgment." Fed. R. Bankr. P. 9023. The Objection was filed 24 days after the December 18, 2023 conference—far outside the prescribed time to seek reconsideration or amendment of an order.

Hr'g Tr. at 7:5-8 ("You took advantage of that by then taking a deposition.  And not just amending for what I had granted you leave to amend for, and in fact ordered you to amend for.").

33.     If ASF sought to have the Court reconsider its order, the procedurally proper route for ASF to have taken would have been to file a motion for reconsideration under Rule 59(e).  It failed to do so, and instead repeatedly doubled down on its agreement with the Court's decision.  ASF cannot reverse course now.  *McClendon*, 892 F.3d at 781 (Rule 59(e) "does not permit consideration of arguments that could have been raised previously.").

**D.     ASF's appointment of new counsel does not allow it to re-litigate settled issues.**

34.     Putting aside that Orrick is not "new" counsel for the reasons identified above, ASF's argument that it may re-litigate these issues because it supposedly has "new counsel" is contrary to law.  "A party does not get the proverbial second bite at the apple simply because it obtains new counsel during the course of the litigation."  *McCurdy v. Kernan*, 2021 WL 5822868, at *1-2 (E.D. Cal. Dec. 8, 2021) (declining to reconsider an issue merely because a party's prior counsel failed to raise certain arguments in the first instance); *see also Pierre v. Planet Auto., Inc.*, 2016 WL 6459617, at *4 (E.D.N.Y. Oct. 31, 2016) (disallowing the re-litigation of an issue because previous counsel failed to substantially raise the issue); *Citizens Bank, N.A. v. Baker*, 2019 WL 13198321, at *2 (W.D. Pa. Apr. 25, 2019) (declining to reconsider an issue merely because of the introduction of new counsel, where the decision to not pursue a specific litigation strategy was made by "able counsel" with a "full and fair opportunity" to do so).

35.     Contrary to ASF's contention, parties "are bound by the acts and omissions of their freely selected attorneys[.]" *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 271 (2d. Cir. 1999) (declining to "eschew application of the general rule that civil litigants are bound by the acts and

omissions of their freely selected attorneys").  ASF's attempt to avoid application of this standard is unavailing.[9]

### E.    The Debtors are entitled to attorneys' fees and costs in connection with ASF's misconduct

36.    As noted above, to avoid burdening the Court and the Debtors' estates with duplicative disputes, the Debtors intend to withdraw the Motion to Enforce and file a more comprehensive motion seeking attorneys' fees and costs in connection with all of ASF's misconduct in this Adversary Proceeding, not just its violations of the automatic stay.  However, to avoid any future argument by ASF regarding waiver, the Debtors briefly address ASF's arguments challenging the Debtors' entitlement to attorneys' fees and costs.

37.    The Court has broad powers under both Section 362(k) and 105(a) of the Bankruptcy Code to hold parties accountable for willful violations of the automatic stay.  *See* 11 U.S.C. § 362(k)(1) (a party "injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."); *see also In re Sanchez*, 372 B.R. 289, 311 (Bankr. S.D. Tex. 2007) (holding that a "Court may issue sanctions under § 105(a) for contempt of an order imposing an automatic stay[.]") (internal citations omitted).

38.    ASF makes no attempt to argue that the Original Complaint was not filed willfully, or that the claims asserted were not deliberately styled as belonging to ASF.  Instead, ASF asserts

---

[9] Moreover, to the extent ASF is attempting to use the Objection to preserve its appellate rights, those rights have been waived and cannot be revived through an improper filing.  *See F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994) ("If a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court.  If an argument is not raised to such a degree that the district court had an opportunity to rule on it, we will not address it on appeal.").  Similarly, an argument is abandoned on appeal where the party "argued the exact opposite" in the court below.  *Marlin v. Moody Nat. Bank, N.A.*, 248 F. App'x 534, 540 (5th Cir. 2007) (citing *Aldrup v. Caldera*, 274 F.3d 282, 288 (5th Cir. 2001).

that there is a "bona fide dispute" and a "fair ground of doubt" as to whether the conduct at issue violated the stay.  *See* Obj. ¶ 49.  But, as demonstrated above, there is no such dispute, as ASF has repeatedly conceded that its conduct violated the stay.

39.     ASF also cites various courts for the proposition that sanctions under § 362(k) are unavailable to a corporate debtor, like the Debtors here.  But what matters is not what courts in other districts have held but what this Court has held.  And this Court has held, as recently as last year, that § 362(k) applies to individual debtors and corporate debtors alike.  *See In re Preferred Ready-Mix LLC*, 2022 WL 16952650, at *3 (Bankr. S.D. Tex. Nov. 14, 2022) (awarding sanctions to a corporate debtor under § 362(k) "as the Fifth Circuit has noted that a corporate debtor fell within the definition of an individual"); *see also Paradise Towing, Inc. v. CIT Grp./Sales Fin., Inc.*, 368 B.R. 569, 572 (W.D. Tex. 2005) ("The Court finds that corporate creditors are clearly intended to benefit from the protection provided under section 362 and the remedy provided under subsection [k] thereof.").

## II.     If the Court allows argument on the Objection to go forward, the Court should amend the schedule in connection with the Motion to Enforce to allow the Debtors 14 days to respond.

40.     The Debtors have had only a handful of days, spread mostly over a holiday weekend, to draft this Preliminary Reply.  If the Court decides that it would like argument on the Objection to go forward, the Debtors respectfully submit that, given the many new and position-reversing arguments in the Objection, the Debtors should be allowed 14 days from the January 22, 2024 hearing to respond to the Objection.

## <u>RESERVATION OF RIGHTS</u>

41.     The Debtors reserve all rights with respect to the Objection and any claims and causes of action they may hold against ASF in connection therewith.  The Debtors reserve all rights to seek further or additional relief.

## <u>CONCLUSION</u>

42.     For the foregoing reasons, the Debtors request that the Court treat the January 22, 2024 hearing as a status conference on the Motion to Enforce and, to the extent the Court requires the Debtors to respond to the new and conflicting arguments in the Objection, set an appropriate schedule for the Debtors to do so.

[*Remainder of this page left intentionally blank*]

Dated:  January 16, 2024
       Houston, Texas

**PORTER HEDGES LLP**
Eric M. English (TX 24062714)
M. Shane Johnson (TX 24083263)
Heather K. Hatfield (TX Bar No. 24050730)
M. Harris Stamey (TX Bar No. 24060650)
Jordan Stevens (TX 24106467)
1000 Main St., 36th Floor
Telephone: (713) 226-6000
Facsimile: (713) 226-6212
eenglish@porterhedges.com
sjohnson@porterhedges.com
hhatfield@porterhedges.com
hstamey@porterhedges.com
jstevens@porterhedges.com

**COUNSEL TO DEBTORS AND
DEBTORS IN POSSESSION**

*/s/ Samuel P. Hershey*
**WHITE & CASE LLP**
Charles R. Koster (TX 24128278)
609 Main Street Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Facsimile:  (713) 496-9701
Email: ckoster@whitecase.com

-and-

Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:  gregory.pesce@whitecase.com

-and-

Samuel P. Hershey (admitted *pro hac vice*)
Barrett Lingle (admitted *pro hac vice*)
Nikita Ash (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email: sam.hershey@whitecase.com
      barrett.lingle@whitecase.com
      nikita.ash@whitecase.com

**PROPOSED SPECIAL LITIGATION
COUNSEL TO DEBTORS AND
DEBTORS IN POSSESSION**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 16, 2024, I caused a copy of the forgoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Samuel P. Hershey*

Samuel P. Hershey

# EXHIBIT A

**Curtis, Lucas**

| | |
|---|---|
| **From:** | Franke, Mark <mfranke@orrick.com> |
| **Sent:** | Friday, January 12, 2024 6:19 PM |
| **To:** | Hershey, Samuel; Koster, Charles; Pesce, Gregory; Ash, Nikita; Levine, Esther; Curtis, Lucas; Lingle, Barrett |
| **Cc:** | Ayre, Jonathan; D'Aversa, Raniero; #AlpineEnergyABS; Wooten, Ryan; Batzel, Brandon; English, Eric M.; M. Harris Stamey - Porter Hedges LLP (hstamey@porterhedges.com); Hatfield, Heather K. |
| **Subject:** | [EXT] RE:  RE:  RE:  Motion to Extend the Stay - Meet and Confer |

Sam, Charlie:

Thanks for the meet and confer this morning.  We write to inform you of ASF's positions on the open items on our side coming out of the call.

- **Motion to Extend.**  We have discussed the proposed settlement of the motion to extend the stay with our client.  As we mentioned on the call to you this morning, there is a pending settlement proposal with your co-counsel at Porter Hedges proposing at a high level a general standstill on D&O litigation, subject to agreeing on a preservation protocol for discoverable material related to D&O claims and the other terms of that proposal.  We were informed today by Eric at Porter Hedges that he could not commit to getting back to us today on that and therefore we do not think we are yet in a position to agree to any standstill.  Accordingly, we will plan to lodge our objections to the motion to extend tonight.  Please understand that our client stands ready to engage on the substance of a settlement, including over the weekend.  If we can make some meaningful progress on the settlement front, we expect our client would be amenable to making a joint request at some point next week to adjourn the hearing on the motion to extend in order to give the parties more time to come to ground on a deal.

- **Motion to Enforce.**  You asked whether ASF would be amenable to withdrawing our objection lodged yesterday if the Debtors choose to withdraw the motion to enforce.  At this time, ASF's position is that it will not be withdrawing its objection, and it does not consent to the withdrawal of your motion to enforce.  If you believe it is procedurally proper to withdraw your motion notwithstanding that ASF does not consent to that withdrawal, you can feel free to do so, and such withdrawal will have whatever effect it has on ASF's objection (and ASF reserves all rights with respect to any such withdrawal or the effect thereof).  We do not intend to argue an objection to a motion that you have properly withdrawn and that is not being heard by the Court, but if your withdrawal is improper and the court keeps it on the calendar, we will be prepared to argue it on January 22.  As with the motion to extend, if the parties make meaningful progress on settlement discussions in the coming days, we expect our client would be amenable to making a joint request at some point next week to adjourn the hearing on the motion to enforce.

Kind Regards,
Mark

**Mark Franke**