United States Bankruptcy Court
Southern District of Texas

**ENTERED**
April 24, 2024
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 23-90739 |
| ALPINE SUMMIT ENERGY | § | |
| PARTNERS, INC., *et al.*, | § | |
| Debtors. | § | Jointly Administered |
| | § | CHAPTER 11 |

### MEMORANDUM OPINION

Absent a recoupment right, ARM owes Debtor Ageron a balance of $438,042.32 under a gas sales contract. ARM has withheld payment of that amount based on its alleged recoupment rights arising from an alleged indemnity Ageron owes to ARM. Because ARM elected for early termination remedies under its contract with Ageron, it is not entitled to the indemnity. ARM is ordered to make the payment owed to Ageron.

### BACKGROUND

**I.  FACTUAL BACKGROUND**

**A.  Contract Terms**

On March 10, 2022, ARM and Ageron Energy II, LLC ("Ageron") (one of the Debtors) entered into the *Base Contract for Sale and Purchase of Natural Gas*, as well as *2006 NAESB Contract Special Provisions* and *the Transaction Confirmation*. These three documents are located at ECF No. 1133-2. Ageron is the seller and ARM is the buyer.

The warranty of good title is found in Section 8.2 of the Base Contract, which states:

> Seller warrants that it will have the right to convey and will transfer good and merchantable title to all Gas sold

hereunder and delivered by it to Buyer, free and clear of all liens, encumbrances, and claims.

The indemnity at issue is found in Section 8.3, which states:

Seller agrees to indemnify Buyer and save it harmless from all losses, liabilities or claims including reasonable attorneys' fees and costs of court ("Claims"), from any and all persons, arising from or out of claims of title, personal injury (including death) or property damage from said Gas or other charges thereon which attach before title passes to Buyer.

In the event of a default, Section 10.3 provides the non-defaulting party the option of designating an early termination date. Section 10.3 states:

If an Event of Default has occurred and is continuing, the Non-Defaulting Party shall have the right, by Notice to the Defaulting Party, to designate a Day, no earlier than the Day such Notice is given and no later than 20 Days after such Notice is given, as an early termination date (the "Early Termination Date") for the liquidation and termination pursuant to Section 10.3.1 of all transactions under the Contract, each a "Terminated Transaction". On the Early Termination Date, all transactions will terminate, other than those transactions, if any, that may not be liquidated and terminated under applicable law ("Excluded Transactions"), which Excluded Transactions must be liquidated and terminated as soon thereafter as is legally permissible, and upon termination shall be a Terminated Transaction and be valued consistent with Section 10.3.1 below. With respect to each Excluded Transaction, its actual termination date shall be the Early Termination Date for purposes of Section 10.3.1.

The parties elected to have Early Termination Damages apply in the event of an Early Termination Date under Section 10.3.1. ECF No. 1133-2 at 4. Section 10.3.1 in relevant part states:

> As of the Early Termination Date, the Non-Defaulting Party shall determine, in good faith and in a commercially reasonable manner, (i) the amount owed (whether or not then due) by each party with respect to all Gas delivered and received between the parties under Terminated Transactions and Excluded Transactions on and before the Early Termination Date and all other applicable charges relating to such deliveries and receipts (including without limitation any amounts owed under Section 3.2), for which payment has not yet been made by the party that owes such payment under this Contract and (ii) the Market Value, as defined below, of each Terminated Transaction.

The Non-Defaulting Party's remedies with respect to the occurrence of an Early Termination Date are set out in Section 10.6, which states:

> The Non-Defaulting Party's remedies under this Section 10 are the sole and exclusive remedies of the Non-Defaulting Party with respect to the occurrence of any Early Termination Date. Each party reserves to itself all other rights, setoffs, counterclaims and other defenses that it is or may be entitled to arising from the Contract."

### B.   Lien Notices and Alleged Indemnity

On July 5, 2023, Alpine Summit Energy Partners, Inc., and six of its affiliates, including Ageron, each filed for chapter 11. ECF No. 1133-1 at 1.

On or about June 14, 2023, ARM received lien notices alleging that liens existed against gas that ARM purchased from Ageron. The alleged liens were under Chapter 67 of the Texas Property Code. ECF No. 1133-1 at 1. The liens related to labor performed and materials

furnished to the Debtors on certain of the Debtors' oil and gas properties. ECF No. 1133-1 at 1. The lien notices reflect a total claim amount of $651,804.36. ECF No. 1133-4 at 2.

On November 8, 2023, ARM obtained a general release of claims from the lien claimants for a sum of $16,000, which ARM paid. ECF No. 1133-1 at 3.

ARM has outstanding payment obligations to Ageron that it is currently suspending in the amount of $438,042.32 under a theory of recoupment. ECF No. 1133-1 at 3. ARM alleges it incurred that same amount arising from the lien claims, with $422,042.32 in indemnifiable attorneys' fees and costs and $16,000.00 in settling the claims. ECF No. 1133-1 at 3.

## II. PROCEDURAL BACKGROUND

ARM sought relief from the automatic stay to serve its post-rejection termination notice on Ageron. ECF No. 790 at 2. Ageron objected, arguing ARM violated the automatic stay by withholding the payment it owed. ECF No. 876 at 2. Ageron filed a motion to enforce the automatic stay against ARM. ECF No. 1024. Ageron also requested damages from ARM, including attorneys' fees and court costs, as well as sanctions for ARM's allegedly willful violation of the automatic stay. ECF No. 1024 at 25.

The Court modified the stay to allow ARM to serve its notice. ECF No. 1811. ARM served its termination notice "pursuant to section 10.3 of the Agreement" on Ageron on March 14, 2024, and filed a copy with the Court at ECF No. 1850-1. ARM set March 15, 2024, as the Early Termination Date. *Id.*

ARM continues to suspend the payment "pending this Court's decision regarding the . . . Motion to Enforce." ECF No. 1133-1 at 4.

## LEGAL STANDARD

### I. RECOUPMENT

Recoupment "is a doctrine of an intrinsically defensive nature founded upon an equitable reason, inhering the same transaction, why the plaintiff's claim in equity and good conscience should be reduced." *Pennsylvania R. Co. v. Miller*, 124 F.2d 160, 162 (5th Cir. 1941). Under the doctrine of recoupment, "a defendant is entitled to claim, by way of deduction, all just allowances or demands accruing to him in respect of the same transaction that forms the ground of the action." *Pennsylvania R. Co.,* 124 F.2d at 162.

"We have held that the trustee of a bankruptcy estate 'takes the property subject to the rights of recoupment.' In other words, to the extent that a party is entitled to recoupment of funds, 'the debtor has no interest in the funds.'" *In re U.S. Abatement Corp.*, 79 F.3d 393, 398 (5th Cir. 1996) (quoting *In re Holford*, 896 F.2d 176, 179 (5th Cir. 1990)). "[A] recoupment is not subject to the automatic stay of section 362(a)[.]" *In re Holford*, 896 F.2d at 179.

### II. VIOLATION OF THE AUTOMATIC STAY

The automatic stay prohibits any party from committing "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" or "any act to collect, assess, or recover a claim against the debtor." 11 U.S.C. §§ 362(a)(3) and (a)(6).

"[T]o establish an actionable violation of the automatic stay, the [Debtor] must establish: (1) that [the Creditor] knew of the existence of the stay; (2) that [the Creditor]'s actions were willful; and (3) that [the Creditor]'s actions violated the automatic stay." *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 355 (5th Cir. 2008) (citation omitted).

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## DISCUSSION

### I. RECOUPMENT

Whether ARM has a right to recoupment depends on two issues. First, whether the attorneys' fees are covered by the indemnity. Second, whether the indemnity is an available remedy under the Early Termination Date provisions of the contract.

#### A. Attorneys' Fees Were Indemnifiable

ARM asserts the lien claims constitute claims to title. ECF No. 1133-1 at 5. ARM argues its attorneys' fees were incurred "specifically in response to the Lien Notices" and are therefore indemnifiable by Ageron under Section 8.3. ECF No. 1133-1 at 5. "[A]ll of the fees 'arise from or out of' the [lien] claims[.]" ECF No. 1133-1 at 5.

Section 8.3 of the Agreement provides for an indemnity owed by Seller to Buyer for "reasonable attorneys' fees and costs of court . . . arising from or out of claims to title[.]" ECF No. 1133-2.

ARM alleges that Ageron's failure to indemnify ARM was a breach of Section 8.2, which constitutes an Event of Default under Section 10.2(x) of the Agreement. ECF No. 1850-1 at 4. ARM alleges "Ageron II is the Defaulting Party, and ARM is the Non-Defaulting Party." *Id.* As a result, ARM set March 15, 2024, as the Early Termination Date pursuant to Section 10.3. *Id.*

We decline to find whether each invoice submitted by ARM at ECF No. 1133-8 is in fact indemnifiable. For the purposes of this decision, we need only decide whether the contract indemnity provision

covers attorneys' fees that were triggered by the lien notices. The contract does cover those fees.

The lien claims triggered the indemnity, and Ageron's failure to eliminate the liens triggered the Early Termination Date.

### B. Indemnity is Not Available as Early Termination Date Remedy

Because the indemnity and the Early Termination Date were triggered by the lien claims, ARM's ability to pursue the indemnity is governed by Section 10.6 of the Agreement. Under Section 10.6, ARM elected for the remedies under Section 10 to be its "sole and exclusive remedies . . . with respect to the occurrence of any Early Termination Date." ECF No. 1133-2.

Section 10 of the contract does not provide for the Section 8.3 indemnity. *See* ECF No. 1133-2. By electing to early terminate the Agreement under Section 10.3, ARM gave up any ability it may have had to withhold the payment it owes to Ageron under a theory of recoupment.

## II. VIOLATION OF THE AUTOMATIC STAY

Ageron argues the Debtors are entitled to damages under § 105(a) of the Bankruptcy Code. 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."). Ageron asserts ARM willfully violated "the automatic stay by freezing funds to which the Debtors are entitled and to which ARM does not have a legitimate recoupment claim[.]" ECF No. 1024 at 25.

"It is undisputed that [ARM] knew of the existence of the stay and that it acted willfully and intentionally when it" froze the payment. *See Campbell*, 545 F.3d at 355. "The only legitimate issue is whether [ARM]'s actions violated the stay." *See id.* ARM's actions did not violate the stay. Ageron's request is denied.

### A.    No Violation Before Early Termination Date

From the time it withheld the payment until the Early Termination Date, ARM's conduct did not violate the automatic stay.

The parties each point the Court to the Supreme Court's holding in *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16 (1995). *See* ECF No. 908 at 16; ECF No. 1024 at 9. In *Strumpf*, the petitioner bank placed an administrative hold on part of the respondent debtor's bank account so as to preserve the bank's right of setoff. The Supreme Court, in finding that the administrative hold was not a stay violation, explained:

> Finally, we are unpersuaded by respondent's additional contentions that the administrative hold violated §§ 362(a)(3) and 362(a)(6). . . . Respondent's reliance on these provisions rests on the false premise that petitioner's administrative hold took something from respondent, or exercised dominion over property that belonged to respondent. That view of things might be arguable if a bank account consisted of money belonging to the depositor and held by the bank. In fact, however, it consists of nothing more or less than a promise to pay, from the bank to the depositor, . . . and petitioner's temporary refusal to pay was neither a taking of possession of respondent's property nor an exercising of control over it, but merely a refusal to perform its promise.

*Strumpf*, 516 U.S. at 21 (citations omitted).

While *Strumpf* is a setoff case, and ARM seeks recoupment, we find instructive *Strumpf's* distinction between a bank account and property of the debtor. Here, ARM does not withhold property of the estate, but rather—as Ageron puts it— "funds to which the Debtors are entitled." ECF No. 1024 at 9. The payment ARM owes to Ageron is "nothing more or less than a promise to pay[.]" *See Strumpf*, 516 U.S. at 21.

This framing comports with recoupment law. The Fifth Circuit has held "a recoupment is not subject to the automatic stay of section 362(a)[.]" *In re Holford*, 896 F.2d at 179. Additionally, "the trustee of a bankruptcy estate 'takes the property subject to the rights of recoupment.'" *In re U.S. Abatement Corp.*, 79 F.3d at 398 (quoting *In re Holford*, 896 F.2d at 179).

ARM's "temporary refusal to pay was neither a taking of possession of [Ageron]'s property nor an exercising of control over it, but merely a refusal to perform its promise." *See Strumpf,* 516 U.S. at 21. ARM's conduct before the Early Termination Date was not a stay violation.

### B. No Violation After Early Termination Date

Nor was ARM's conduct after the Early Termination Date a stay violation.

Generally, the "automatic stay has no effect on actions that are expressly allowed under the Bankruptcy Code." *Campbell*, 545 F.3d at 356.

> [T]he automatic stay serves to protect the bankruptcy estate from actions taken by creditors outside the bankruptcy court forum, not legal actions taken within the bankruptcy court. The filing of a Proof of Claim before a bankruptcy court . . . is the logical equivalent of a request for relief from the automatic stay, which cannot itself constitute a violation of the stay . . . .

*In re Sammon*, 253 B.R. 672, 681 (Bankr. DSC. 2000) (quoted in *Campbell*, 545 F.3d at 356).

In the Fifth Circuit, certain actions taken before the bankruptcy court, and subject to its decision, are not stay violations. For example, "[t]he Bankruptcy Code allows creditors to assert any claim, even if that claim is contingent, unmatured, or disputed. . . . A debtor may object to the claim; the bankruptcy court then determines whether to allow the

claim." *Campbell*, 545 F.3d at 356. Those "actions [are] permitted by the Bankruptcy Code and [do] not violate the automatic stay." *Id.* at 356–57.

Here, ARM presented a non-frivolous defense to payment, namely that its alleged indemnity is recoupable. ARM repeatedly stated its intent to withhold the payment pursuant to the Court's determination. We find this to be "the logical equivalent of a request for relief from the automatic stay, which cannot itself constitute a violation of the stay[.]" *See In re Sammon,* 253 B.R. at 681. Therefore, ARM's retention of the payment "pending further order of the Court" is not in violation of the automatic stay. *See In re Young*, 193 B.R. 620, 628 (Bankr. D.D.C. 1996).

The Court finds further support for this reasoning in the Fifth Circuit's *In re U.S. Abatement Corp.* holding. "In other words, to the extent that a party is entitled to recoupment of funds, 'the debtor has no interest in the funds.'" *In re U.S. Abatement Corp.*, 79 F.3d at 398 (quoting *In re Holford*, 896 F.2d at 179).

Inherent in the words "to the extent that a party is entitled to recoupment of funds" is the reality that, in exercising the defense of recoupment, a dispute is very likely to arise. And until the Court resolves that dispute, there is no certainty as to whether "a party is entitled to recoupment of funds[.]" *Id.* Therefore, until that time—and "to the extent" the party *is* entitled to recoupment—the debtor has no interest in the funds. *Id.*

ARM did not violate the automatic stay. The payment was not Ageron's property, nor did Ageron have an interest in the funds. It merely holds a right to payment from ARM. Because ARM merely awaited this Court's order, even after the Early Termination Date came and passed, its actions were not in violation of the stay.

ARM must immediately pay to Ageron the total amount it owes and currently suspends. Ageron is not entitled to damages.

## CONCLUSION

A separate order will be issued.

SIGNED 04/24/2024

Marvin Isgur
United States Bankruptcy Judge